

## IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

RUBY KENDRICK,           )
                                     )
                                     )
                                     )
       Plaintiffs,          )
                                     )
v.                                  )     CIVIL ACTION NUMBER:

CIVIL ACTION NUMBER:

$CV80-256$

AMERICAN GENERAL LIFE AND
ACCIDENT INSURANCE COMPANY;
AMERICAN GENERAL LIFE INSURANCE
COMPANY; INDEPENDENT LIFE AND
ACCIDENT INSURANCE COMPANY;
JAMEY SIGGERS; There may be other entities
whose true names and identities are unknown to the
Plaintiffs at this time who may be legally
responsible for the claim(s) set forth herein who
may be added by amendment by the Plaintiffs
when their true names and identities are accurately
ascertained by further discovery. Until that time,
the Plaintiffs will designate these parties in
accordance with Rule 9(h), Alabama Rules
of Civil Procedure.The word "entity" as used
herein is intended to refer to and include any
and all legal entities including individual persons,
any and all forms of partnerships, any and all types of
corporations and unincorporated associations.
The symbol by which these party Defendants
are designated is intended to include more than
one entity in the event that discovery reveals
that the descriptive characterization of the
symbol applies to more than one "entity."
In the present action, the party Defendants
which the Plaintiffs must include by descriptive
characterization are as follows: "1-50",
whether singular or plural, being the entity
that was the insurance company described
below that committed the wrongful acts
alleged in Plaintiff's Complaint, and/or the
entity on whose behalf the agent in question
was acting; "51-100", whether singular or plural,
being the person who was the insurance agent

LAW DEPARTMENT

OCT 3 0 2000

who dealt with the Plaintiffs that committed                    )
the wrongful acts alleged in Plaintiff's                        )
Complaint; "101-150", whether singular or                       )
plural, being that entity or persons, other than                )
those entities and persons described above,                     )
which is the successor in interest, or the                      )
assignee, or which undertook the duties, or                     )
assumed the liabilities of any of the entities                  )
described above.  Plaintiffs alleges that the                   )
identities of the fictitious party-Defendants are               )
otherwise unknown at this time, or, if known,                   )
their identities as proper party-Defendants are                 )
not known, but their true names will be                         )
substituted by amendment when ascertained.                      )
                                                                )
            Defendants.                                         )

# S U M M O N S

        Pursuant to Alabama Rule of Civil Procedure 4.1(c)(1), service is hereby requested by
certified mail.

        You are hereby commanded to serve this summons and a copy of the complaint in this
action upon defendant **Independent Life and Accident Insurance Company**

                NOTICE TO:  **Independent Life and Accident Insurance Company
                            c/o Marcus B. Burgh, Jr.
                            American General Center
                            Nashville, TN 37250**

        The Complaint which is attached to this Summons is important and you must take
immediate action to protect your rights.  You are required to mail or hand deliver a copy of a
written Answer, either admitting or denying each allegation in the Complaint to David M.
Cowan, MANN & COWAN, P.C., Attorney for Plaintiff, at Suite 601, 2000-B SouthBridge
Parkway, Birmingham, Alabama 35209.  THIS ANSWER MUST BE MAILED OR
DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS
SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A
JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR
OTHER THINGS DEMANDED IN THIS COMPLAINT.  You must also file the original of
your Answer with the Clerk of this Court within a reasonable time.

                                        CHARLES W. STORY
                                        Circuit Clerk
                                        5th Judicial Circuit
                                        Lafayette, Alabama 36862
                                        Clerk Lafayette Area: (334) 864-4348

DATED: 10/26/00

## IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

RUBY KENDRICK,                      )
)
     Plaintiffs,                )
)
v.                           )     CIVIL ACTION NUMBER:
)
AMERICAN GENERAL LIFE AND      )     $CV00$-$256$
ACCIDENT INSURANCE COMPANY;   )
AMERICAN GENERAL LIFE INSURANCE )
COMPANY;  INDEPENDENT LIFE AND  )
ACCIDENT INSURANCE COMPANY;   )
JAMEY SIGGERS; There may be other entities )
whose true names and identities are unknown to the )
Plaintiffs at this time who may be legally    )
responsible for the claim(s) set forth herein who  )
may be added by amendment by the Plaintiffs  )
when their true names and identities are accurately  )
ascertained by further discovery.  Until that time,  )
the Plaintiffs will designate these parties in   )
accordance with Rule 9(h), Alabama Rules   )
of Civil Procedure.The word "entity" as used  )
herein is intended to refer to and include any  )
and all legal entities including individual persons,  )
any and all forms  of partnerships, any and all types of )
corporations and unincorporated associations.  )
The symbol by which these party Defendants  )
are designated is intended to include more than  )
 one entity in the event that discovery reveals  )
that the descriptive characterization of the  )
symbol applies to more than one "entity."  )
In the present action, the party Defendants  )
which the Plaintiffs must include by descriptive  )
characterization are as follows: "1-50",  )
whether singular or plural, being the entity  )
that was the insurance company described  )
below that committed the wrongful acts  )
alleged in Plaintiff's Complaint, and/or the  )
entity on whose behalf the agent in question  )
was acting; "51-100", whether singular or plural,  )
being the person who was the insurance agent  )
who dealt with the Plaintiffs that committed  )
the wrongful acts alleged in Plaintiff's  )
Complaint; "101-150", whether singular or  )

plural, being that entity or persons, other than )
those entities and persons described above, )
which is the successor in interest, or the )
assignee, or which undertook the duties, or )
assumed the liabilities of any of the entities
described above.  Plaintiffs alleges that the
identities of the fictitious party-Defendants are
otherwise unknown at this time, or, if known,
their identities as proper party-Defendants are
not known, but their true names will be
substituted by amendment when ascertained.

                Defendants.



FILED IN OFFICE THIS

UCI 2 5 2000

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

## COMPLAINT

### PARTIES

1.      Plaintiff, Jamey Siggers, is over the age of nineteen (19) years and is a resident citizen of Chambers County, Alabama.

2.      Defendant American General Life and Accident Insurance Company is, upon information and belief, an insurance company with its principal place of business in Tennessee, and which does business by agent in Chambers County, Alabama. American General Life & Accident Insurance Company is, upon information and belief, the successor in interest to Independent Life and Accident Insurance Company . For the purpose of this Complaint, American General Life & Accident Insurance Company and those life insurance companies it has acquired are referred to collectively as " American General".

3.      Defendant Independent Life and Accident Insurance Company (hereinafter "American General") was, upon information and belief,  acquired by and is the predecessor in interest of American General Life and Accident Insurance Company, an insurance company with its principal place of business in Tennessee, and which does business by agent in Chambers County, Alabama.

4.       American General acquired several life insurance companies, including Independent Life and Accident insurance Company which, before acquisition, sold industrial life insurance policies to the Plaintiff. Defendants Independent Life and American General shall be collectively referred to herein as "American General". As the successor, parent and/or surviving entity, American General is responsible for and has assumed the liabilities of Independent Life.

5.      Defendant American General Corporation is believed to be the parent corporation for the life and accident company and is referred to herein as "American General."

-2-

6.      Defendant, Jamey Siggers (hereinafter referred to as "Agent"), is, upon information and belief, over the age of nineteen (19) years, and at all times material hereto was acting as the agent and/or employee for American General.  Further, said Defendant is a resident of the State of Alabama.

7.      There may be other entities whose true names and identities are unknown to the Plaintiff at this time who may be legally responsible for the claim(s) set forth herein who may be added by amendment by the Plaintiff when their true names and identities are accurately ascertained by further discovery. Until that time, the Plaintiff will designate these parties in accordance with Rule 9(h), Alabama Rules of Civil Procedure. The word "entity" as used herein is intended to refer to and include any and all legal entities including individual persons, any and all forms of partnerships, any and all types of corporations and unincorporated associations. The symbol by which these party Defendants are designated is intended to include more than one entity in the event that discovery reveals that the descriptive characterization of the symbol applies to more than one "entity." In the present action, the party Defendants which the Plaintiff must include by descriptive characterization are as follows: "1-50", whether singular or plural, being the entity that was the insurance company described below that committed the wrongful acts alleged in Plaintiff's Complaint, and/or the entity on whose behalf the agent in question was acting; "51-100", whether singular or plural, being the person who was the insurance agent who dealt with the Plaintiff that committed the wrongful acts alleged in Plaintiff's Complaint; "101-150", whether singular or plural, being that entity or persons, other than those entities and persons described above, which is the successor in interest, or the assignee, or which undertook the duties, or assumed the liabilities of any of the entities described above.  Plaintiff alleges that the identities of the fictitious party-Defendants are otherwise unknown at this time, or, if known, their identities as proper party-Defendants are not known, but their true names will be substituted by amendment when ascertained.

## JURISDICTION AND VENUE

8.      The events giving rise to the claims in this Complaint originated in Chambers County, Alabama. Upon information and belief, American General and fictitiously described Defendants "1-150" presently conduct business by agent in Chambers County, Alabama.  Upon information and belief, Defendants American General Life Insurance Company, Agent and fictitiously described Defendants "1-150", conducted business in Chambers County, Alabama at all times relevant to this Complaint. Defendant, Jamey Siggers is a resident citizen of Alabama.  Accordingly, this Court has personal jurisdiction over Defendants American General and the sales agents.  Venue is proper in the Circuit Court of Chambers County, Alabama as to Defendants American General and the sales agent pursuant to *Ala. Code* § 6-3-7 (1975) and Alabama Rule of Civil Procedure 82.

## NATURE OF THE CASE

9.      The Plaintiff is the owner of industrial life insurance and whole life policies issued

-3-

by Independent Life and/or American General. These policies were priced, issued and administered based upon a nationwide fraudulent and unconscionable scheme and common course of conduct described herein aimed at African-Americans like the Plaintiff.

10.    For more than fifty years, American General has maintained an outrageous, fraudulent, deceptive, unlawful and unconscionable scheme to increase its own revenues and profitability to the detriment of its African-American policy owners, by implementing uniformly misleading, deceptive and unconscionable sales, collection and policy administration practices.

11.    Industrial life insurance is a life insurance product which typically has a low face value and premium payments which are designed to appear to the policy holder to be modest. These premium payments have been historically collected on a weekly or monthly basis by American General agents.    Whole life insurance policies were also sold by American General and its agents in low face amounts with premium payments designed to appear modest. These premiums were also collected weekly.

12.    As part of its nationwide scheme, American General and its agent, Jamey Siggers, targeted minority and low income segments of the population for the sale and service of industrial life insurance products. In fact, American General charged African-American individuals more for these policies than it charged similarly situated white individuals.

13.    On the following dates, the Plaintiffs purchased from the Defendants, American General, Independent Life, and its agent, Jamey Siggers, and fictitious described Defendants "1-150", the following industrial life and/or whole life insurance weekly premium insurance policies:

| | | |
|---|---|---|
| (a) | Ruby Kendrick | |
| | 7/12/54 | 88272 |
| | 7/12/54 | 88273 |
| | 7/12/54 | 88274 |
| | 11/22/92 | 60553221 |

At the time the Plaintiff purchased these policies, and on each occasion when premiums have been collected weekly for these policies, it was represented to the Plaintiff by Jamey Siggers that the policies they were purchasing were: (I.) Valuable insurance protection designed to protect them against the cost of burial of their loved ones (ii.) Based on affordable premiums that could be paid weekly in small amounts so as to provide them the most affordable insurance coverage available to them. Further, on each occasion where premiums were collected, said Defendants failed to disclose that the premiums were race based.

14.    The Plaintiff was not shown any rate book. The Plaintiff was not shown anything that would indicate that the premiums paid by African-American policyholders were higher than

-4-

premiums paid by white policyholders. Plaintiff was not told that white policyholders paid lower premiums based solely on racial preference. Plaintiff was not shown any document which would reveal that white policyholders paid lesser premiums for the same coverage. The logical inference from the Defendants was that all policyholders paid the same premiums for the same types of policies.

15.    The Plaintiff was given no information that would have alerted them to the Defendants' discriminatory conduct with respect to premiums, cash values, and death benefits, either at the point of sale or in later years. The Plaintiff's policies do not reflect that African American citizens were charged higher premiums or that the Plaintiff would receive lower death benefits and cash values than similarly situated white citizens. The Plaintiff did not receive any annual statements or any other document which reflected the Defendants' ongoing discrimination.

16.    Since the Plaintiff's policies were issued, the Defendants have continued to act in accordance with and in furtherance of its discriminatory practices. They also continue the practice of fraudulently concealing its discriminatory practices. The Defendants have taken a number of actions to fraudulently conceal its discriminatory practices to insure that its discriminatory practices were not discovered. Although the initial decisions to discriminate against African Americans and conceal the discrimination were made in the early 1940's, American General and the Defendant, Jamey Siggers has repeatedly made the decision to continue the concealment of its discriminatory practices and have acted accordingly, as follows:

(I.)    Beginning in or about 1941, the insurance industry constructed mortality tables which used race as a factor to discriminate against African Americans.

(ii.)    The insurance industry employed these mortality tables as a pretext to charge higher premiums and to pay lower cash values and death benefits to African Americans, as compared to white policyholders.

(iii.)    These mortality tables were not disseminated or otherwise made available to African American policyholders, such as the Plaintiff, who were disadvantaged by the discriminatory tables.

(iv.)    The discriminatory mortality assumptions, in turn, were deliberately embedded in the pricing and policy design assumptions by the Defendants. Nowhere on the face of the Plaintiff's policy documents does any information appear that would reveal that the premium was based on racially discriminatory rates.

(v.)    It was impossible for African Americans who purchased a policy from the Defendants to compare their effective premium rate with the premiums charged to similarly situated white policyholders. Consequently, even if the Plaintiff had reason to inquire or investigate, they would not and could not have discovered the discriminatory and unlawful conduct of the Defendants.

      (vi.)    By design, the Plaintiff and other African American policyholders were misled so as to believe that they were paying the same nondiscriminatory rates as white policyholders. The Defendants' sales force including, Jamey Siggers, did not tell the Plaintiff, or other African American policyholders, that white policyholders paid a lower rate solely because of the color of a policyholder's skin.

     17.    American General constructed the industrial policies with small face values and charged premiums often less than $1.00 per month. American General marketed or serviced these policies through its agents, Jamey Siggers who were given exclusive territories, known as "debit routes." To effectuate the sale and administration of the industrial policies on a "debit" basis, these agents were trained to personally visit the homes of policy owners to collect the premiums and develop a personal relationship with the policy owner. This would facilitate the sale of additional insurance products in the future. American General trained these agents to market and sell these policies as "burial" protection to manipulate the emotions of prospective policyholders by instilling in, or playing on, a sense of shame in leaving their loved ones without funds to pay for a funeral at the time of their death. In designing, developing, marketing and selling these policies, at all times American General and these agents knew that they had targeted a disadvantaged segment of the population which was unsophisticated with respect to insurance and ill-equipped to understand the unfamiliar and technical language of the policies, as well as the complex actuarial methods of determining premiums. American General and these agents knew that these premiums appeared small and affordable. At the same time American General knew that these targeted, unsophisticated, prospective policyholders did not know that the small premiums would far exceed the face value of the policies over the normal life expectancy of these policyholders.

     18.    American General designed the industrial policies to create the illusion that they would provide valuable yet affordable death benefits. In reality, the policies were unconscionable products which were calculated to generate tremendous profits for American General with little attendant risk to American General and little or no economic benefit for the unsuspecting and vulnerable policyholders. American General achieved this by designing the policies to accrue little, if any, cash value for the benefit of the policyholders. Furthermore, unlike traditional whole life policies with paid up additional riders, the American General industrial policies did not provide increasing death benefits over the duration of the policies. These premiums were exorbitant in relation to the minimal death benefits actually provided to policy owners.

     19.    Given the design features of the industrial policies American General knew that virtually no transfer of risk to American General took place. American General also knew that to the extent that any risk was transferred, it was minuscule and would quickly dissipate over the life of the policies. As American General expected, the Company profits continued to expand and the minuscule risk, if any, was quickly eliminated. This process was accelerated in that mortality and interest experience improved and American General continued collecting premiums based on pricing assumptions, based on race.

     20.    Because American General industrial policies do not accrue significant cash values

and do not afford increased death benefits, they have little or no value to policyholders upon termination. As a consequence, industrial policyholders are required to continue making premium payments long after the premiums exceed the face value of the policies or face losing all of the premiums they have paid without receiving meaningful cash value or death benefits.

21.     American General trained, encouraged and knowingly allowed the Defendant, Jamey Siggers, and fictitious party defendants listed and described hereinabove, to sell multiple policies where the Plaintiff had no need for the insurance and where multiple industrial policies were used to reach a cumulative total of face value which, in the best interest of the Plaintiff should have been achieved through use of whole life products of comparable value. American General had knowledge when multiple sales to the Plaintiff occurred through its established home office issuance procedures. Nevertheless, American General maintained this practice because of the excessive profitability of the industrial life insurance products.

22.     American General is a subsidiary of American General Corporation, a publicly-traded corporation which is in the business of acquiring and "aggregating" or "consolidating" smaller life insurance companies. American General acquired these other companies as part of a conscious strategy to capture the lucrative industrial policy block of business and to extract enormous profits from it by eliminating or reducing expenses and further exploiting its financially disadvantaged policyholders. American General was motivated by its desire to increase its own profits and earnings and the trading price of its stock for the financial benefit of its high-ranking corporate executives, who reaped incentive-based compensation and stock options as part of their employment compensation.

23.     Consistent with its effort to increase profits and the value of its publicly traded stock upon acquisition of these other companies, American General intentionally cut the administration costs associated with these acquired policies knowing this worked to the detriment of its policyholders. In the above described acquisitions American General acquired industrial policies which had, for many years been serviced by agents on debit routes. In furtherance of its nationwide scheme to increase its profits and decrease its costs at the expense of policyholders, American General terminated the practice of premium collection by debit agents throughout the country without reduction of premium payments, even though the costs associated with the debit system were calculated into the premium at the time of issuance. This practice of premium collection by agents had been in place since the inception of the industrial policies and was part of the course of dealing between the policyholder and the insurance companies which American General had acquired.

24.     After acquisition of the above described insurance companies, and in furtherance of its desire to decrease costs and increase profits, American General and its agent, Jamey Siggers, and fictitious party defendants listed and described hereinabove, also began willfully, intentionally, deceptively and wrongfully causing or encouraging the lapse of many industrial policies by failing to properly credit premium payments, improperly altering established premium collection procedures, otherwise hindering the payment of premiums by the policyholders or owners of

industrial policies and failing to provide policyholders with proper notice of non-payment of premiums as required under the policies. American General has routinely engaged in this conduct with respect to policies on which the total of premiums paid far exceeds the face value of the policy, and has lapsed a substantial but as yet undetermined number of policies on which the face value of the policy has been greatly exceeded by the premium payments.

25.    American General's plan, scheme and nationwide common course of conduct was designed to and did induce thousands of existing and prospective policy owners to purchase industrial life insurance policies from American General. Plaintiff has lost and/or face losing substantial dollars in premiums paid which exceed the face value of the policies or which exceed a reasonable or appropriate total of premiums which should have been paid for their policies. In furtherance of its scheme and fraudulent course of conduct, American General deceived and induced the Plaintiff to purchase the policies by preparing, approving and training its agent, Jamey Siggers, to disseminate false and misleading verbal and written information and sales materials containing material misrepresentations and omissions of fact to the Plaintiff.

26.    The sales practices described herein have been successful for American General and its agent, Jamey Siggers. American General is believed to have earned hundreds of millions of dollars of premium income in excess of the face value of the policies or in excess of a reasonable or appropriate total of premiums which should have been paid for the industrial policies which were sold to the unsuspecting Plaintiff based upon the discriminatory scheme and conduct described herein.

27.    The premiums established and charged to Plaintiff and the class by American General for industrial life insurance policies are excessive, unfair, unconscionable, unlawful and unreasonable and were designed to and have yielded a rate of return on these life insurance products which is unreasonable.

28.    The running of the statute of limitations has been suspended with respect to any claims which the Plaintiff has brought as a result of the fraudulent and deceptive course of conduct alleged herein. American General affirmatively and fraudulently concealed its unlawful scheme and course of conduct from Plaintiff. Plaintiff had no knowledge of American General's discriminatory scheme and unlawful conduct, nor did they have any of the facts which might have led to the discovery of American General's wrongdoing until a few months before the filing of this complaint. They received notice of a national class action filed in the United States District Court for the Middle District of Tennessee on or about July 8, 2000. The applicable statute of limitations were also stayed as to the Plaintiff's claims against all defendants by the pending class action case. American General insured that the Plaintiff could not and would not discover the Defendants' unlawful discriminatory conduct due to the undisclosed and indecipherable manner in which the industrial insurance policies were designed.

-8-

## COUNT ONE
## UNJUST ENRICHMENT

29.     Plaintiff realleges and incorporates by reference the foregoing paragraphs and further aver as follows:

30.     Defendants, American General and fictitiously described Defendants "1-150", received and currently possess monies that belong to the Plaintiff, which were obtained wrongfully, through fraud and/or deceptive practices.  Specifically, American General received from the Plaintiff's premium payments which are excessive and unreasonable and are the result of overcharging.

31.     As a result of the relationships between the parties and the facts as stated above, a constructive trust should be established over the monies paid by Plaintiff, as policy premiums, to the extent the total of those premiums exceed the face value of any policy or the amount which reasonably should have been paid in premiums. Such monies are traceable to American General, which is the current possessor of such funds.

32.     As a result, the Plaintiff has conferred a benefit on American General.  American General has knowledge of this benefit and has voluntarily accepted and retained the benefit conferred on it. American General will be unjustly enriched if it is allowed to retain such funds, and, therefore, a constructive trust should be imposed on all monies wrongfully obtained by American General.

33.     The Plaintiff has been irreparably harmed and are entitled to imposition of a constructive trust as set forth above.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff demands judgment against each Defendant, named and fictitious, jointly and severally, for compensatory damages and punitive damages in an amount to be determined by a jury.

## COUNT TWO
## MONEY HAD AND RECEIVED

34.     Plaintiff realleges and incorporates by reference the foregoing paragraphs and further aver as follows:

35.     As a result of the conduct of Defendants, American General, Agent Jamey Siggers and fictitiously described Defendants "1-150", as outlined above, Defendants took possession of money which in equity and good conscience belonged to the Plaintiff or was improperly paid to the Defendants by charging a greater price for their industrial policies than was fair and reasonable.

36.     By reason of the foregoing, the Plaintiff has been damaged and seek return of all

premium payments paid in excess of the face value of the policies or in excess of what reasonably should have been paid for the policies.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff demands judgment against each Defendant, named and fictitious, jointly and severally, for compensatory damages and punitive damages in an amount to be determined by a jury.

### COUNT THREE
### FRAUD

37.    Plaintiff realleges and incorporates by reference the foregoing paragraphs and further aver as follows:

38.    Defendants, American General, Agent Jamey Siggers and fictitiously described Defendants "1-150", committed the following deceitful acts:

    a.    charging the Plaintiff an inflated premium based on their race and ethnic origin;

    b.    representing that the premium rate was based on considerations other than their race and ethnic origin;

    c.    representing that the industrial policies endow by a date certain;

    d.    representing that the small and affordable premiums provided commensurate coverage;

    e.    representing that the premiums established and charged to Plaintiff for industrial life insurance policies were fair, conscionable, lawful and reasonable.

39.    The representations described hereinabove were made intentionally, recklessly, negligently, innocently and/or by mistake.

40.    Defendants intended for Plaintiff to rely upon the misrepresentations described hereinabove, and the Plaintiff reasonably and justifiably relied on those representations to their detriment by:

    a.    entering into the industrial life insurance contract;

    b.    paying premiums for services which where not provided;

-10-

      c.       paying premiums in excess of what reasonably should have been paid for the policies;

      d.       receiving lower cash accumulation in the policies than that bargained for;

      e.       losing the value and use of their money; and

      f.       forgoing purchasing life insurance elsewhere.

41.     The material facts which the Defendants withheld, concealed and suppressed from Plaintiff include, but are not limited to, the following:

      a.       that African-American individuals where being charged more for industrial policies than similarly situated white individuals;

      b.       that the industrial policies would not accrue significant cash value for the benefit of the policyholders;

      c.       that the industrial policies would not provide increasing death benefits through paid up additional riders over the duration of the policies;

      d.       that the industrial policies would not endow by a date certain;

      e.       that over the normal life expectancy of policyholders, the small premiums would far exceed the face value of the industrial policies;

      f.       that the purchase of multiple policies was not in their best interest;

      g.      that the premiums established and charged for burial life insurance policies are excessive, unfair, unconscionable, unlawful, unreasonable and/or based on racial pricing assumptions.

42.     Defendants intended for the Plaintiff to rely upon the misrepresentations described hereinabove, and Plaintiff reasonably and justifiably relied on those representations to their detriment by:

      a.       entering into the industrial life insurance contract;

      b.       paying  premiums for services which where not provided;

      c.       paying premiums in excess of what reasonably should have been paid for the policies;

      d.       receiving lower cash accumulation in the policies than that bargained for;

e.    losing the value and use of their money; and

f.    forgoing purchasing life insurance elsewhere.

43.    Defendants' actions constituted conduct involving a pattern or practice of wrongful conduct.

44.    As a proximate result of American General, Agent Jamey Siggers, and fictitiously described Defendants "1-150" acts and omissions, Plaintiff suffered economic loss.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff demands judgment against each Defendant, named and fictitious, jointly and severally, for compensatory damages and punitive damages in an amount to be determined by a jury.

## COUNT FOUR
## SUPPRESSION OF MATERIAL FACTS

45.    Plaintiff realleges and incorporate by reference the foregoing paragraphs and further aver as follows:

46.    Defendants, American General, Agents  Jamey Siggers, and fictitiously described Defendants "1-150", while acting in the line and scope of their agency and/or employment with Defendant American General and fictitiously described Defendants "1-150" withheld, concealed, and suppressed from the Plaintiffs certain material facts which the Defendants were under a duty to communicate, based upon a confidential relationship of the parties or the facts of this particular case.

47.    The material facts which the Defendants, American General, Agents  Jamey Siggers, and fictitiously described Defendants "1-150", withheld, concealed, and suppressed from Plaintiff including, but are not limited to, the following:

(a)    the policies contained a rate and pricing structure that discriminated against African American policyholders.

(b)    the Plaintiff was charged a higher premium due to their race and ethnic origin.

(c)    the Plaintiff's insurance premiums purchased a lower death benefit due to their race and ethnic origin.

(d)    the cash value of the Plaintiff's policy would accumulate reduced cash values due to their race and ethnic origin.

48.    Defendants intended for the Plaintiff to rely upon the suppressions described

-12-

hereinabove, and Plaintiff reasonably and justifiably relied on those suppressions to Plaintiff's detriment by:

     (a)    entering into the industrial life insurance contracts;

     (b)    paying premiums on the insurance policies; and

     (c)    foregoing seeking life insurance coverage elsewhere.

49.    Defendants' actions were fraudulent, malicious, wanton, gross and/or oppressive, and were intended to injure or defraud the Plaintiff.

50.    Defendants' actions constituted conduct involving actual malice, or, in the alternative, were a part of a pattern or practice of intentional wrongful conduct.

51.    As a direct and proximate consequence of Defendants' conduct, the Plaintiffs have been injured and damaged as described herein.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff demands judgment against each Defendant, named and fictitious, jointly and severally, for compensatory damages and punitive damages in an amount to be determined by a jury.

## COUNT FIVE
## CONVERSION

52.    Plaintiff realleges and incorporate by reference the foregoing paragraphs and further aver as follows:

53.    As a result of the conduct of Defendants, American General, Agent, Jamey Siggers, and fictitiously described Defendants "1-150", as outlined above, Defendants required the Plaintiff to pay premium payments in excess of the face value of the policies or in excess of what reasonably should have been paid for the policies. These premium payments were wrongfully appropriated by Defendants for Defendants' own use and benefit. Said premium payments constitute specific money, capable of identification.

54.    Defendants have willfully exercised unlawful dominion and control over said proceeds.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff demands judgment against each Defendant, named and fictitious, jointly and severally, for compensatory damages and punitive damages in an amount to be determined by a jury.

-13-

## COUNT SIX
## BREACH OF FIDUCIARY DUTY

55.     Plaintiff realleges and incorporate by reference the foregoing paragraphs and further aver as follows:

56.     Defendants, American General, Agent Jamey Siggers, and fictitiously described Defendants "1-150", are insurance carriers. The life insurance business involves elements of public trust which subject Defendants to more stringent standards of conduct than those normally arising out of a contract.

57.     American General, Agents Jamey Siggers, and fictitious party Defendants "1-150", in connection with the sale of industrial life insurance policies, with the aid and/or under the direction of American General officers, managers and other high-level personnel, were trained to provide advice and counsel to Plaintiff on the subject of what would be in the Plaintiff's best interest with respect to the acquisition of industrial life insurance coverage.

58.     American General held its agents out as highly skilled insurance experts, creating the image of insurance expertise, possessing the special knowledge and expertise needed to interpret and understand the mechanics of the policies. American General encouraged the Plaintiff to rely on this special knowledge and expertise in purchasing the policies, and counseled Plaintiff concerning the insurance American General was selling.

59.     American General and its agents had superior knowledge to that of the Plaintiff concerning not only the insurance products available, but also whether industrial life insurance coverage was appropriate and to what extent the policyholder was at risk for paying more in premiums than the face value of the policies or than an amount which reasonably should have been paid. The relationship between American General, by and through its agent, Jamey Siggers and Plaintiff were calculated and intended by American General to cause the Plaintiff to repose confidence and trust in American General related to insurance.

60.     American General knew or should have known that the Plaintiff generally had no prior training, expertise or knowledge concerning insurance and were unsophisticated insurance consumers ill-equipped to understand the unfamiliar and technical language of the policies. Plaintiff relied solely upon the advice, recommendations and explanations of the policies provided by American General, by and through its agent, Jamey Siggers, and fictitious party Defendants "1-150".

61.     As a result of the circumstances described above, American General, by and through its agent, Jamey Siggers, and fictitious described Defendants "1-150", created a fiduciary relationship between themselves and the Plaintiff. As a result of this fiduciary relationship, the Defendants were required to do the following:

        a.      make full and fair disclosure to Plaintiff regarding the nature of the product

-14-

being sold and the financial effect of the transaction on the customer;

b.    provide any information necessary to make other representations provided not misleading;

c.    cure any prior misrepresentations;

d.    advise Plaintiff of the commissions that were being earned by the agents as a result of the transaction, the sales load and the administrative charges being earned by American General;

e.    act in a way that was beneficial to, and not detrimental to Plaintiff; and

f.    refrain from making statements or sales presentations which contained misrepresentations.

62.    These Defendants owed to the Plaintiff a duty to refrain from self-dealing and a duty of loyalty not to take unfair advantage of Plaintiff and a duty not to conceal from Plaintiff facts which were pertinent and material to the sale of insurance to them. In executing the sales scheme, described above, American General, by and through its agents, knowingly, recklessly, maliciously and with intent to defraud, concealed pertinent and material information from Plaintiff in selling coverage to them.

63.    Plaintiffs relied on American General and its agents which resulted in damages to them.

64.    As a direct and proximate cause of these Defendants' foregoing acts and/or omissions, Plaintiffs has been injured and damaged as described herein.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff demands judgment against each Defendant, named and fictitious, jointly and severally, for compensatory damages and punitive damages in an amount to be determined by a jury.

## COUNT SEVEN
## CONTINUING MISREPRESENTATIONS, SUPPRESSIONS, ETC.

65.    Plaintiff realleges and incorporate by reference the foregoing paragraphs and further aver as follows:

66.    Defendants, American General, Agent Jamey Siggers , and fictitiously described Defendants "1-150", continuously from the inception of the policies described herein until the present, engaged in a pattern or course of conduct by which said Defendants continued to perpetrate

-15-

the original frauds, misrepresentations, suppressions, deceit and fraudulent deceit against the Plaintiff as described hereinabove.

67.    The representations described hereinabove were false, and the Defendants knew that the representations were false, or, in the alternative, the Defendants acted recklessly with regard to their truth or falsity.

68.    Defendants intended for the Plaintiff to rely upon the misrepresentations and suppressions described hereinabove, and the Plaintiff reasonably and justifiably relied on those representations and suppressions to their detriment by:

    a.    entering into the industrial life insurance contract;

    b.    paying premiums for services which where not provided;

    c.    paying premiums in excess of what reasonably should have been paid for the policies;

    d.    receiving lower cash accumulation in the policies than that bargained for;

    e.    losing the value and use of their money; and

    f.    forgoing purchasing life insurance elsewhere.

69.    Defendants' actions constituted conduct involving a pattern or practice of wrongful conduct.

70.    As a proximate result of American General's and fictitiously described defendants acts and omissions, Plaintiff suffered economic loss.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff demands judgment against each Defendant, named and fictitious, jointly and severally, for compensatory damages and punitive damages in an amount to be determined by a jury.

## COUNT EIGHT
## OUTRAGE

71.    Plaintiff realleges and incorporate by reference the foregoing paragraphs and further aver as follows:

72.    The conduct of Defendants, American General, Agent Jamey Siggers, and fictitiously described Defendants "1-150", were so outrageous in character and so extreme in degree as to go

-16-

beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in civilized society.

73.    As a direct and proximate consequence of Defendants' conduct, the Plaintiff has been injured and damaged as described hereinabove.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff demands judgment against each Defendant, named and fictitious, jointly and severally, for compensatory damages and punitive damages in an amount to be determined by a jury.

DAVID M. COWAN
Attorney for Plaintiff

**OF COUNSEL:**
**MANN & COWAN, P.C.**
Suite 601
2000-B SouthBridge Parkway
Birmingham, AL 35209
(205) 879-9661

KEITH THOMAS
Attorney for Plaintiff

**OF COUNSEL:**
**R. KEITH THOMAS, L.L.C.**
P. O. Box 830899
Tuskegee, AL 36083

NICHOLAS WOOTEN
Attorney for the Plaintiff

**OF COUNSEL:**
**NICHOLAS HEATH WOOTEN &**
**ASSOCIATES, LLC**
P. O. Drawer 290
Lafayette, AL 36862

-17-

## IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

RUBY KENDRICK,       )
             )
             )
             )
  Plaintiffs,       )
             )
v.              )
             )  CIVIL ACTION NUMBER:
             )
AMERICAN GENERAL LIFE AND )  CV00-256
ACCIDENT INSURANCE COMPANY; )
AMERICAN GENERAL LIFE INSURANCE )
COMPANY;  INDEPENDENT LIFE AND )
ACCIDENT INSURANCE COMPANY; )
JAMEY SIGGERS; There may be other entities )
whose true names and identities are unknown to the )
Plaintiffs at this time who may be legally )
responsible for the claim(s) set forth herein who )
may be added by amendment by the Plaintiffs )
when their true names and identities are accurately )
ascertained by further discovery.  Until that time, )
the Plaintiffs will designate these parties in )
accordance with Rule 9(h), Alabama Rules )
of Civil Procedure.The word "entity" as used )
herein is intended to refer to and include any )
and all legal entities including individual persons, )
any and all forms  of partnerships, any and all types of
corporations and unincorporated associations. )
The symbol by which these party Defendants )
are designated is intended to include more than )
 one entity in the event that discovery reveals )
that the descriptive characterization of the )
symbol applies to more than one "entity." )
In the present action, the party Defendants )
which the Plaintiffs must include by descriptive )
characterization are as follows: "1-50", )
whether singular or plural, being the entity )
that was the insurance company described )
below that committed the wrongful acts )
alleged in Plaintiff's Complaint, and/or the )
entity on whose behalf the agent in question )
was acting; "51-100", whether singular or plural, )
being the person who was the insurance agent )

**LAW DEPARTMENT**

OCT 3 0 2000

## IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

RUBY KENDRICK,                                      )
                                                    )
                                                    )
                                                    )
            Plaintiffs,                             )
                                                    )
v.                                                  )
                                                    )
                                                    )        CIVIL ACTION NUMBER:
                                                    )
AMERICAN GENERAL LIFE AND                           )        CV 00-256
ACCIDENT INSURANCE COMPANY;                         )
AMERICAN GENERAL LIFE INSURANCE                     )
COMPANY;  INDEPENDENT LIFE AND                      )
ACCIDENT INSURANCE COMPANY;                         )
JAMEY SIGGERS; There may be other entities          )
whose true names and identities are unknown to the  )
Plaintiffs at this time who may be legally          )
responsible for the claim(s) set forth herein who   )
may be added by amendment by the Plaintiffs         )
when their true names and identities are accurately )
ascertained by further discovery.  Until that time, )
the Plaintiffs will designate these parties in      )
accordance with Rule 9(h), Alabama Rules            )
of Civil Procedure.The word "entity" as used        )
herein is intended to refer to and include any      )
and all legal entities including individual persons,)
any and all forms  of partnerships, any and all types of
corporations and unincorporated associations.       )
The symbol by which these party Defendants          )
are designated is intended to include more than     )
one entity in the event that discovery reveals      )
that the descriptive characterization of the        )
symbol applies to more than one "entity."           )
In the present action, the party Defendants         )
which the Plaintiffs must include by descriptive    )
characterization are as follows:  "1-50",           )
whether singular or plural, being the entity        )
that was the insurance company described            )
below that committed the wrongful acts              )
alleged in Plaintiff's Complaint, and/or the        )
entity on whose behalf the agent in question        )
was acting; "51-100", whether singular or plural,   )
being the person who was the insurance agent        )

LAW DEPARTMENT

OCT 3 0 2000

## IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

RUBY KENDRICK,                                    )
                                                  )
     Plaintiffs,                                )
                                                  )
v.                                                )    CIVIL ACTION NUMBER:
                                                  )
                                                  )    $CV80 - 256$
AMERICAN GENERAL LIFE AND                         )
ACCIDENT INSURANCE COMPANY;                       )
AMERICAN GENERAL LIFE INSURANCE                   )
COMPANY;  INDEPENDENT LIFE AND                    )
ACCIDENT INSURANCE COMPANY;                       )
JAMEY SIGGERS; There may be other entities        )
whose true names and identities are unknown to the )
Plaintiffs at this time who may be legally        )
responsible for the claim(s) set forth herein who )
may be added by amendment by the Plaintiffs       )
when their true names and identities are accurately )
ascertained by further discovery.  Until that time, )
the Plaintiffs will designate these parties in    )
accordance with Rule 9(h), Alabama Rules          )
of Civil Procedure.The word "entity" as used      )
herein is intended to refer to and include any    )
and all legal entities including individual persons, )
any and all forms  of partnerships, any and all types of )
corporations and unincorporated associations.     )
The symbol by which these party Defendants        )
are designated is intended to include more than   )
 one entity in the event that discovery reveals   )
that the descriptive characterization of the      )
symbol applies to more than one "entity."         )
In the present action, the party Defendants       )
which the Plaintiffs must include by descriptive  )
characterization are as follows:  "1-50",         )
whether singular or plural, being the entity      )
that was the insurance company described          )
below that committed the wrongful acts            )
alleged in Plaintiff's Complaint, and/or the      )
entity on whose behalf the agent in question      )
was acting; "51-100", whether singular or plural, )
being the person who was the insurance agent      )
who dealt with the Plaintiffs  that committed     )
the wrongful acts alleged in Plaintiff's          )
Complaint; "101-150", whether singular or         )

plural, being that entity or persons, other than )
those entities and persons described above, )
which is the successor in interest, or the )
assignee, or which undertook the duties, or )
assumed the liabilities of any of the entities )
described above.  Plaintiffs alleges that the )
identities of the fictitious party-Defendants are )
otherwise unknown at this time, or, if known, )
their identities as proper party-Defendants are )
not known, but their true names will be )
substituted by amendment when ascertained. )
)
    Defendants. )



FILED IN OFFICE THIS

OCT 2 5 2000

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

## PLAINTIFFS' FIRST INTERROGATORIES AND
## REQUEST FOR PRODUCTION TO DEFENDANTS

Pursuant to Rule 26, 33 and 34 of the Alabama Rules of Civil Procedure, the Plaintiffs request the Defendants, American General Life and Accident Insurance Company, Independent Life Insurance Company, Jamey Siggers, separately and severally, to answer in writing and under oath the following interrogatories propounded by Plaintiff:

### Definitions

As used herein:

1.    "Defendants" means American General Life and Accident Insurance Company, Independent Life Insurance Company, Jamey Siggers, and any agents, representatives, attorneys, and any other person or persons acting (or who acted) or purporting to act (or who purported to act) on their behalf.

2.    The word "person(s)" means individuals and entities, including, without limitation, sole proprietorships, firms, associations, companies, partnerships, joint ventures, corporations, trusts, estates and any other legal, business or governmental entity.

3.    · "And" and "or" shall be construed conjunctively or disjunctively as necessary to make the interrogatory or request inclusive rather than exclusive.  The use of the words "include(s)" and "including" shall be construed to mean "without limitation."

4.    The word "document(s)" is used in its customary broad sense and includes all written, typed, printed, recorded or graphic statements, communications or other matter, however produced or reproduced, and whether or not now in existence, in the possession, custody or

control of plaintiff, including without limitation:

> All writings; studies; analyses; tabulations; evaluations; reports; reviews;
> agreements; contracts; communications; letters or other correspondence;
> messages; telegrams; telexes; FAX transmissions; e-mails; cables; memoranda;
> records; notes, reports summaries, sound recordings or transcripts of personal or
> telephone conversations, meetings, conferences or interviews; telephone toll
> records; diaries; desk calendars; appointment books; forecasts; work papers;
> drawings; graphs; charts; maps; diagrams; blueprints; tables; indices; pictures;
> photographs; films; phonograph records; tapes; microfilm; microfiche; charges;
> ledgers; accounts; cost sheets; financial statements or reports; statistical or
> analytical records; minutes or records of board directors, committee or other
> meetings or conferences; reports of summaries or investigations; opinions or
> reports of consultants; appraisals; reports or summaries of negotiations; books;
> brochures; pamphlets; circulars; trade letters; press releases; newspaper and
> magazine clippings; stenographic, handwritten or any other notes; notebooks;
> projections; checks, front and back; check stubs or receipts; invoice vouchers;
> tape data sheets or data processing cards or discs or any other written, recorded,
> transcribed, punched, taped, filed or graphic matter, however produced or
> reproduced; and any other document, writing or data compilation of whatever
> description, including but not limited to any information contained in any
> computer although not yet printed out or the memory units containing such data
> from which information can be obtained or translated into reasonably usable form;
> and all drafts and non-identical copies of the foregoing.

5.     The word "identify" when used with respect to an individual means to state such individual's: (a) full name, present or last known residence and business address(es) and telephone number(s); (b) present or last known employer(s), place of employment and job title, if any; and (c) the nature (including job title, if any) and dates of any affiliation, by employment or otherwise, with any party to this litigation.

6.     The word "identify" when used with respect to a person other than an individual means (a) to state its name; (b) to describe its nature (e.g., corporation, partnership, etc.); and (c) to identify the person or persons employed by such entity with whom you have dealt concerning the subject matter of these interrogatories.

7.     The word "identify" when used with respect to a document or documents means (a) to specify the nature or type of the document (e.g., letter, memorandum, etc.); (b) to state the date, if any, appearing on the document, or if none, the date such document was prepared or received; (c) to describe in general the subject matter of the document with sufficient particularity as to enable such document to be precisely identified; (d) to identify each person who wrote, signed (or authorized the signature of) dictated or otherwise participated in the preparation of the document; (e) to identify any addresses thereof, and, if known, each person to

whom the document was distributed; (f) to state the present physical location of the document; and (g) to identify each person having possession, custody or control of the document.

## Continuing Interrogatories
## and Request for Production

These interrogatories are continuing in character as to require the filing of prompt supplementary and amended answers if further or different information or additional documents relevant to any of these interrogatories are obtained prior to trial.

## Instructions

Defendants should answer each interrogatory separately and fully, unless it is objected to, in which event the reasons for the objections should be specifically and separately stated. The answers are to be signed by Defendants and the objections, if any, are to be signed by the attorney making them. Where a complete answer to a particular interrogatory is not possible, the interrogatory should be answered to the extent possible and a statement should be made indicating why only a partial answer is given.

Answers to these interrogatories shall set forth each question in full before each answer. Separate answers shall be provided in response to each interrogatory, and, when an interrogatory has subdivisions, to each subdivision.

With respect to any interrogatory calling for the identification or listing of documents, unless otherwise indicated, you may, in lieu thereof, attach to your answers a copy of such documents segregated separately for each answer, with an identification of the interrogatory or interrogatories (or portion thereof) to which they are submitted as being responsive. In the event you elect to attach documents rather than identify them in response to any interrogatory, it is requested (a) that all documents attached be produced in the file folders and file cartons in which they have been maintained or stored, clipped, stapled or otherwise arranged in that form and manner as they were found, and (b) that you identify the person or persons in whose custody or control such files are or were maintained.

## Discovery Request

Defendants are requested, pursuant to the definitions and instructions above, to answer the following interrogatories:

## **INTERROGATORIES**

1.      Has the Defendant been correctly named in the lawsuit?  If not, please identify your correct name and, if you are a corporation, the state of incorporation and place where you principally conduct business.

2.      Does the Defendant write and has the defendant written industrial life insurance and whole life insurance in amounts less than $2,000 face value in the state of Alabama?  If so, please identify the sales structure employed by the Defendant to market, sell and service these policies sold from 1950 through the present.

3.      Does the Defendant use any other person, firm, corporation or entity to perform marketing efforts or to handle the administration of the sale, marketing or service of industrial life and whole life insurance policies in the face amount of $2,000 or less sold by the Defendants for the years 1950 to the present?  If so, please identify this person, firm, corporation or entity and their address and state with detail their involvement and efforts on your behalf.

4.      Please identify any lawsuits which have been filed against these Defendants over the past twenty years alleging breach of contract, fraud, bad faith or other wrongful conduct in regard to industrial life and/or whole life policy premiums that were priced based on racial factors with regard to the sale of these policies to African-Americans from 1941 through the present. Include in your answer the attorneys representing the parties, the jurisdiction or venue where the lawsuit was filed, and the current status of the lawsuit

5.      Is the following agent, Jamey Siggers, licensed insurance agents for the sale and servicing of industrial life and whole life insurance products for the Defendants in the State of Alabama for the years 1941 through the present?  If so, please identify the dates these persons have been agents for said companies, the current status of their licenses with these Defendants, and any disciplinary actions taken against these Agents during their tenure.

6.      Please identify the manager, director or head of actuarial services for Independent Life and American General for the years 1941 through the present with regard to the pricing, formulation of prices for industrial life and/or whole life policies in a face amount of $2,00 or less from 1941 through the present.

7.      Please state the method, amount and what, if any, mortality tables were used to calculate the industrial life and whole life insurance premiums regarding the sale or issuance of insurance to the plaintiffs, specifically identifying any formulas, actuarial tables, racial factors, gender factors, age factors or other documents or materials that were used to determine the premiums paid by the plaintiffs on the following policies:

(a)   Ruby Kendrick
7/12/54      88272
7/12/54      88273
7/12/54      88274
11/22/92    60553221

8.   Please state and identify the total premiums paid on each of the above referenced policies from the date of inception of said policies through the present by the Plaintiff and for each such policy please indicate whether any of these policies have lapsed for any reason, and if so on what date the lapse occurred and the reason for said lapse?

9.   Please identify each and every mortality and/or actuarial table used by these Defendants in the pricing of industrial life or whole life insurance policies in the face amount of $2,000 or less from 1941 through the present which contained or made reference to any racial, age or gender factor or formula.

10.   Did these Defendants use rate books from 1941 through the present for the sale of industrial life or whole life insurance policies in the face amount of $2,000 or less which used, as a factor in calculating the rates the persons race, gender, age, ethnicity or national origin?  If so, please identify which mortality tables, who with the Defendants has possession of such documents and when these Defendants ceased using these mortality tables.

11.   Please identify each and every agent who has sold, serviced and/or collected premiums on any of the policies sold to the Plaintiff identified in the preceding interrogatories including in your answer their full name, last known address, age and social security number.

12.   Please state whether these Defendants have paid any benefits of any of the policies sold to the Plaintiff to the Plaintiff's beneficiaries on any of the policies identified in the preceding interrogatories?  If so, please identify on which policies, and in what amount, these benefits were paid and who the beneficiary was who received payment.

13.   Please identify the amount of income the Defendants have derived from the selling of industrial life insurance and whole life insurance in the face amount of $2,000 or less from 1941 through the present.  The Plaintiff's interrogatories are specifically limited to gross income and net income figures.

14.   Please identify the amount of premiums which have been collected from African-American policy holders who purchased industrial life insurance or whole life insurance policies in the amount of $2,000 or less from 1941 through the present.

15.   Please identify the names and addresses of each and every person you contend is a witness to any of the allegations or events set forth in the Plaintiff's Complaint and list their

-6-

address and telephone number if known.

16.    Do you plan on calling at the trial of this case an expert witness to testify? If so, please state the names and addresses of each person you expect to call as an expert witness at the trial of this case, the subject matter on which the expert is expected to testify and the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

17.    Please identify any successor to any Defendant who is responsible for any liability related to the Plaintiff's insurance policies including their address, the date of merger or acquisition and whether a formal agreement of merger or acquisition was entered into. If a formal agreement of acquisition or merger was entered into, please identify the custodian of such documents and their address.

18.    Please identify the number of African-American policy holders who were sold industrial life insurance policies or whole life insurance policies with a face death benefit of $2,000 or less by the Defendants whereby premiums were calculated with race used as a factor in the formulation and calculation of these premiums from 1941 through the present and include in your answer the different states these policyholders reside in, and the numbers of these policyholders by state or geographic region.

19.    Does the Defendant, Jamey Siggers, have (or has he every had) errors and omissions insurance coverage from any insurance company for the allegations made by the Plaintiff in this complaint? If so, please identify the insurance company's name, address and identify the policy number of the E&O policy and include in your answer all applicable limits of coverage for the allegations made by the Plaintiff.

20.    Please identify the names and addresses of any persons, employees, officers, and/or agents who have any knowledge of the Defendants' practices of using race as a factor and formulation of premiums for industrial life or whole life insurance policies sold by these Defendants from 1941 through the present.

21.    Please identify the name and address of any person, firm, corporations, partnership or entity who has performed outside actuarial or actuarial consulting services for and on behalf of the Defendants American General and/or Independent Life regarding the pricing or premium formulation for industrial life or whole life insurance policies in the face amount of $2,000 or less from 1941 through the present.

## REQUEST FOR PRODUCTION

1.    Any and all policyholder files of the Plaintiff, including, but not limited to, underwriting files, claims files, notes, memoranda, correspondence, e-mails, electronic

memorandums, or other documents relating in any way to the policies issued or sold to the Plaintiff by the Defendants.

2.     A certified copy of the policies sold to the Plaintiff by the Defendants as identified by the following:

    (a)    Ruby Kendrick
           7/12/54      88272
           7/12/54      88273
           7/12/54      88274
           11/22/92    60553221

3.     A copy of any and all rate books used to price the hereinabove identified policies sold to the Plaintiff and which were used by agents of the Defendants in the sale or servicing of these policies.

4.     Any and all actuarial data, compilations, calculations, factors, documents, memorandums, e-mails, electronic memorandums, letters, correspondence, notices, or other documents of any way which relate to the pricing or formulation of premiums of industrial life and whole life insurance policies sold by the Defendants to the Plaintiff.

5.     A copy of any and all agreements by and between American General, Independent life and/or any outside consulting or actuarial firm regarding the pricing or premium formulation for industrial life or whole life insurance policies in the face amount of $2,000 or less from 1941 through the present.

6.     Any and all mortality tables, commissioner's standard, ordinary tables, rate books, rates, rate sheets or other documents of any kind used to calculate premiums for the sale of industrial life policies and whole life insurance policies sold by the Defendants from 1941 through the present.

7.     Any and all notices, letters, statements, tables, rate books, mortality tables, memorandums, e-mails, electronic memorandums, pamphlets, illustrations, outlines of coverage, projections, estimates or other documents used by the Defendants to formulate premiums for the sale of industrial life and/or whole life insurance policies which contained, made reference to or used race as a factor in formulating the price of these policies from 1941 through the present.

8.     All commission statements for any agent(s) on the policies sold to the Plaintiff from the inception of the sale to the date of these presence.

9.     The personnel and agency files on each agent involved in the sale or servicing of any policy sold to the Plaintiff and identified above.

      10.    A copy of any and all pamphlets, advertising materials, brochures, illustrations, outlines of coverages, projections, estimates or other documents used in the sale or marketing of industrial life or whole life insurance policies by American General or Independent Life as a marketing took in the presentation of any industrial life or whole life insurance policy sold by these Defendants from 1941 through the present.

      11.    Any and all letters, memorandum, e-mails, electronic memorandum, correspondence, notes or other documents of any kind by and between officers, agents and employees of Independent Life and/or American General regarding or concerning the use of race as a factor in formulating premiums for the sale of industrial life and whole life insurance policies.

      12.    Any and all written, recorded, audio taped or video taped statement taken by or from the Plaintiff by you, your agents, or attorneys, concerning the policies or the allegations made in the Plaintiff's complaint.

      13.    Any and all documents evidencing or relating to any complaints or lawsuits made about or concerning the use of race as a factor in calculating or pricing premiums for industrial life or whole life insurance policies sold by the Defendants American General and Independent Life from 1941 through the present.

      14.    Any and all documents or depositions taken in the class action against the Defendants pending in the United States District Court for the Middle District of Tennessee, Nashville Division, known as *Leola McNeal, et al. vs. American General Life and Accident Insurance Company*, Case No. 3:99-1157. This request specifically seeks the production of any and all documents produced in said class action, including, but not limited to, depositions that were taken and any exhibits thereto.

      15.    Any and all computer programs, software, data or other computer information used to compile any information contained in any rate book, table, mortality table, mortality rate sheet, projection or calculation used in the pricing of premiums were race is used as a factor in the sale of industrial life insurance and whole life insurance sold by the Defendants from 1941 through the present.

      16.    Any and all employment or agency contracts between the agents who sold the Plaintiff's policies identified above and/or Independent Life and/or American General.

      17.    Any and all sales or training materials or manuals used by the Defendants to train its agents in the sale of industrial life or whole life insurance policies and the use of rate books or rate calculators from 1941 to the present.

      18.    Any and all documents showing the amount of premiums paid by the Plaintiff for the policies identified hereinabove to the Defendants.

19.     Any and all complaints maintained by American General or Independent Life concerning premiums of policies sold to African-Americans from 1941 through the present as are required to be maintained by the State of Alabama Insurance Department.

20.     Any and all documents, letters, e-mails, correspondence, electronic memorandum, memorandums, or documents of any kind of American General and/or Independent Life regarding its decision to cease the debit collection of premiums of the Plaintiff's policies or similar policies sold to persons nationwide.

21.     Any and all minutes of any board of director meetings, minutes of any meetings of any sub boards, minutes of any meetings of any committees or groups within American General or Independent Life which discussed, analyzed or criticized the sale, marketing, implementation, service continuation or termination, of the Defendants' practice of using race as a factor in formulating premiums for the sale of industrial life and whole life insurance policies to African-Americans.

22.     Any and all documents from 1941 to the present which show how many industrial life or whole life insurance policies were sold in Alabama and nationwide (by state) to African-Americans who were charged more for their insurance policies than white Americans during the same time frame.

23.     Any and all guidelines, documents, or plans regarding bonuses received by the Defendants officers or executive officers for the years 1941 through the present.

24.     Any and all minutes of any compensation committee meetings concerning executive or officer bonus compensation for the years 1941 through the present.

25.     Any and all errors and omissions insurance policies, comprehensive general liability policies or insurance policies of any type or character which might provide insurance coverage to any named Defendant herein for the allegations set forth in the complaint and specifically included is a request for the copy of the declarations page with all applicable limits and amounts of insurance coverage described.

_____

DAVID M. COWAN
Attorney for Plaintiff

**OF COUNSEL:**
**MANN & COWAN, P.C.**
Suite 601
2000-B SouthBridge Parkway
Birmingham, AL 35209
(205) 879-9661

-10-

_____
KEITH THOMAS
Attorney for Plaintiff

**OF COUNSEL:**
**R. KEITH THOMAS, L.L.C.**
P. O. Box 830899
Tuskegee, AL 36083

_____
NICHOLAS WOOTEN
Attorney for the Plaintiff

**OF COUNSEL:**
**NICHOLAS HEATH WOOTEN &**
**ASSOCIATES, LLC**
P. O. Drawer 290
Lafayette, AL 36862

## JURY DEMAND

Plaintiffs hereby demand a trial by struck jury.

_____
OF COUNSEL

**PLAINTIFFS' ADDRESS:**
P.O. Box 255
LaFayette, AL 36862

-11-

**PLAINTIFFS' ADDRESS:**
P.O. Box 255
LaFayette, AL 36862

**DEFENDANTS' ADDRESSES:**

American General Life and Accident Insurance Company
c/o Marcus B. Burgh, Jr.
American General Center
Nashville, TN 37250

Independent Life and Accident Insurance Company
c/o Marcus B. Burgh, Jr.
American General Center
Nashville, TN 37250

Jamey Siggers
2418 18th Street SW
Lanett, AL 36863-3330

**PLEASE SERVE SUMMONS AND COMPLAINT, TOGETHER WITH ALL DISCOVERY,
BY CERTIFIED MAIL.**