3

4
⊙... 12/96)

# CIVIL COVER SHEET

JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required w, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use ⊃ Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**a) PLAINTIFFS**

Ruby Kendrick

RECEIVED

**DEFENDANTS**

American General Life And Accident
Insurance Company, et al.

COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 4000 NOV 29 P 3:54bers
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
David Cowan
Mann & Cowan, P.C.
2000-A SouthBridge Pkwy., Suite 601
Birmingham, AL 35209  (205) 879-9661

ATTORNEYS (IF KNOWN)
Lee E. Bains, Michael Mulvaney, J. Alan Baty
Maynard, Cooper & Gale, P.C.
1901 6th Avenue North, Suite 2400
Birmingham, AL 35203  (205) 254-1000

**BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

| | |
|---|---|
| ☐ U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) |
| ☐ U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only) AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

| | | | | | | |
|---|---|---|---|---|---|---|
| ☐ Original Proceeding | ☒ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judgment |

**NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury – Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc |
| ☐ Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 863 DWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret Inc Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | ☐ 871 IRS – Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

**CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

28 U.S.C. Section 1332, et seq.

**I. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $** greater than $75,000    CHECK YES only if demanded in complaint. JURY DEMAND: ☒ YES  ☐ NO

**II. RELATED CASE(S)** (See instructions):
**IF ANY**       JUDGE _____    DOCKET NUMBER _____

11/29/00

SIGNATURE OF ATTORNEY OF RECORD

R  FICE USE ONLY

:CEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

1900 NOV 29  P  3: 54

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA.

| | |
|---|---|
| RUBY KENDRICK, | |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) CIVIL ACTION NO. |
| | ) |
| AMERICAN GENERAL LIFE AND | ) _____ |
| ACCIDENT INSURANCE COMPANY, | ) |
| et al., | ) |
| | ) |
| **Defendants.** | ) |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1446, Defendants, American General Life and Accident Insurance Company[1] and American General Life Insurance Company (hereinafter jointly referred to as "American General"), file this Notice of Removal to remove this civil action from the Circuit Court of Chambers County, Alabama, wherein it was filed as CV-00-256, to the United States District Court for the Middle District of Alabama, Eastern Division, and shows unto this Honorable Court as follows:

1.     As detailed in this Notice of Removal, Plaintiff's claims against the sole non-diverse defendant (Jamey Siggers) are time-barred by the Rule of Repose and the statute of limitations. Plaintiff also fails to state a legally sufficient claim against the non-diverse defendant. The non-

---

[1]Defendant American General Life and Accident Insurance Company is the successor by merger to Independent Life and Accident Insurance Company ("Independent Life"), which is also named as a defendant in this civil action. Independent Life is no longer a separate corporate entity.

diverse defendant has consequently been fraudulently joined. As a result, this civil action has been properly removed based on diversity of citizenship.

2.    On or about October 25, 2000, Plaintiff Ruby Kendrick filed a Complaint in the Circuit Court of Chambers County, Alabama, in the civil action styled *Ruby Kendrick v. American General Life and Accident Insurance Company, et al.*, Civil Action No. 00-256. A true and correct copy of all process, pleadings, and orders served upon American General is attached hereto as Exhibit A.

3.    The Summons and Complaint were served upon American General on October 30, 2000. The other named defendant, Jamey Siggers, had not been served as of November 27, 2000.

4.    This action could have been filed in this Court, pursuant to 28 U.S.C. § 1332, in that there is complete diversity of citizenship between Plaintiff and the properly joined Defendant and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

## DIVERSITY OF CITIZENSHIP

5.    Upon information and belief, Plaintiff Ruby Kendrick is a citizen and resident of the State of Alabama. *See* Complaint at ¶ 1. (Paragraph 1 of Plaintiff's Complaint mistakenly identifies "Jamey Siggers" as the Plaintiff.)

6.    Defendant American General Life and Accident Insurance Company is a Tennessee corporation with its principal place of business in Nashville, Tennessee. Pursuant to 28 U.S.C. §1332(c)(1), American General Life and Accident Insurance Company is a citizen of the State of Tennessee.[2] As a result, American General Life and Accident Insurance Company is not now, and

---

[2]Prior to its merger with American General Life and Accident Insurance Company, Independent Life was a Florida corporation with its principal place of business in Jacksonville,
(continued...)

was not at the time of the filing of the Complaint, a citizen or resident of the State of Alabama within the meaning of the Acts of Congress relating to the removal of cases.

7.    Defendant American General Life Insurance Company is a Texas corporation with its principal place of business in Texas.  Pursuant to 28 U.S.C. §1332(c)(1), American General Life Insurance Company is a citizen of the State of Texas.  As a result, American General Life Insurance Company is not now, and was not at the time of the filing of the Complaint, a citizen or resident of the State of Alabama within the meaning of the Acts of Congress relating to the removal of cases.

8.    Although Defendant Jamey Siggers ("Agent Defendant") is a citizen and resident of the State of Alabama, his joinder does not preclude diversity jurisdiction because he has been fraudulently joined in this action.

9.    Diversity of citizenship is present because the only non-diverse defendant, Jamey Siggers, has been fraudulently joined.  When a defendant has been fraudulently joined, the Court should disregard his or her citizenship for purposes of determining whether a case is removable based on diversity of citizenship. *See, e.g., Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996) ("*Tapscott*"), *overruled on other grounds, Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).

10.    The Court must consider certain factors in determining whether a defendant has been fraudulently joined:  (1) "whether there is any possibility the plaintiff can establish any cause of action against the resident defendant" under either the law or the facts alleged, and (2) "whether

---

[2](...continued)

Florida.  Pursuant to 28 U.S.C. §1332(c)(1), Independent Life was a citizen of the State of Florida when it existed.  As a result, Independent Life is not now, and was not at the time of the filing of the complaint, a citizen or resident of the State of Alabama within the meaning of the Acts of Congress relating to the removal of cases.

plaintiff has fraudulently pled jurisdictional facts in order to bring the resident defendant into state court." *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989); *see also Tapscott*, 77 F.3d at 1360 n.17. The Eleventh Circuit in *Tapscott* also addressed a third type of fraudulent joinder, labeled fraudulent misjoinder by some courts. *Tapscott*, 77 F.3d at 1360. If any factor is present, the resident defendant has been fraudulently joined and should be ignored for jurisdictional purposes. *See Triggs v. John Crump Toyota*, 154 F.3d 1284, 1287 (11th Cir. 1998).

**1.    The Agent Defendant Has Been Fraudulently Joined Because Plaintiff Has Failed To Plead Specific Factual Allegations Against The Agent Defendant.**

11.    Plaintiff's Complaint is bereft of any specific allegations against the Agent Defendant. Other than a general allegation that Jamey Siggers is an agent of American General and general allegations against the "defendants," Plaintiff fails to allege any specific wrongdoing by the Agent Defendant.

12.    Plaintiff's failure to plead specific factual allegations against the Agent Defendant demonstrates that the Agent Defendant was fraudulently joined. *Lyons v. American Tobacco Co.*, 1997 WL 809677 at *5 (S.D. Ala. 1997) ("If plaintiffs were unable at the time they formulated their complaint to set forth any specific factual allegations against the [non-diverse] defendants upon which could be based any claim of fraud or breach of warranty, there can be no better admission of fraudulent joinder of these defendants. Consequently, the Court concludes that the [non-diverse] defendants have been fraudulently joined and are due to be dismissed without prejudice pursuant to Fed. R. Civ. P. 21."); *accord, Wakeland v. Brown & Williamson*, 996 F. Supp. 1213, 1221 (S.D. Ala. 1998).

-4-

13.    In dealing with a similar complaint that did not state specific allegations against the non-diverse agents, the Northern District of Alabama recently explained that such a pleading fails to satisfy applicable pleading standards so as to give rise to fraudulent joinder:

> A reading of the complaint filed by [plaintiff] fails to reveal any allegation of any specific act on the part of any identified individual defendant involving the plaintiff. . . [T]he complaint here clearly could be read to fraudulently state a jurisdictional fact; that is, that there was some conduct on the part of an individual defendant which affected the plaintiff.
>
> . . . [P]laintiff has not identified any act on the part of any individual defendant which would give rise to a cause of action. A plaintiff may not merely list a number of Alabama citizens employed by a particular company and aver that one of them must have done something wrong at some period of time and that if and when it is discovered that they have, a factual basis for the allegation will follow. Rule 8 requires more. The requirements of Rule 11 obligate plaintiff to identify the basis upon which she makes her allegations against the named individual defendants. She has never said that she purchased a policy from any of the named defendants. She has not said that she was misled by any of the named defendants. She has not said that she acted in reliance upon the representation of any individual defendant. She has not even said she had any dealings or contact with any of the named defendants.

*Hatcher v. American General Life and Accident Company*, Civil Action No. 00-PWG-2609-E at 13 (N.D. Ala. Oct. 18, 2000) (Exhibit B hereto).

14.    The federal courts have refused to permit a plaintiff to defeat a defendant's right to remove a case through the use of "ill-practice," "sham" pleadings, "manipulation," or "artifice." *Rudder v. K-Mart Corporation*, 1997 WL 907916 at *6 (S.D. Ala. 1997) ("This court agrees with the Fifth Circuit that 'jurisdictional rules may not be used to perpetrate a fraud or ill-practice upon the court by either improperly creating or destroying diversity jurisdiction.'") (citation omitted); *Tapscott*, 77 F.3d at 1360; *Calloway v. Baker Furniture Company*, 1995 WL 912708 at *1 (N.D.

Ala. 1995); *Mallard v. Prudential Insurance Company of America*, 1996 WL 170126 at *5 (M.D. Ala. 1996).

**2.     The Agent Defendant Has Been Fraudulently Joined Because Plaintiff's Claims Are Time-Barred.**

15.     In this case, the joinder of the Agent Defendant is fraudulent because any claim against the Agent Defendant is time-barred.  In *Whitlock v. Jackson National Life Insurance Company*, 32 F. Supp. 2d 1286, 1290 (M.D. Ala. 1998), the Middle District of Alabama ruled that " [i]f the only claims against a resident [non-diverse] defendant are barred by the statute of limitations, then there 'is no possibility the plaintiff can establish a cause of action against the resident defendant.'  In such a situation, the resident defendant is deemed to have been fraudulently joined." *See also Levett v. Independent Life and Accident Insurance Company*, 814 F.Supp 1053, 1058 (M.D. Ala. 1993) (denying motion to remand and holding that the non-diverse defendant was fraudulently joined because the fraud claims against him were barred by the statute of limitations); *Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F. Supp. 1213, 1222 (S.D. Ala. 1998) (holding that "[b]ecause any claim of suppression against the . . . defendants would be barred by the applicable statute of limitations, there is no possibility that plaintiffs could prevail on the claim" and the defendants were fraudulently joined); *Lyons v. The American Tobacco Co.*, 1997 WL 809677 at *5 (S.D. Ala. 1997) (denying motion to remand and ruling that the non-diverse defendants had been fraudulently joined in part because plaintiffs' fraud and common law claims "are barred by the applicable two year statute of limitations").[3]

_____

[3]*See also McDuffie v. Franklin Life Insurance* Co., Civil Action No. 99-D-1023-N at 12-13 (M.D. Ala. March 6, 2000); *Wilder v. Franklin Life Insurance Co.*, Civil Action No. 99-D-1037-E at 14 (M.D. Ala. March 27, 2000); *Goree v. Franklin Life Insurance Co.*, Civil Action No. 99-D-
(continued...)

16.    According to this precedent, the joinder of the Agent Defendant in this civil action
will not defeat American General's right of removal because that joinder is fraudulent. Plaintiff
cannot establish any cause of action against the Agent Defendant under the law or the facts alleged
because any claims against Jamey Siggers are time-barred.

> A.    Plaintiff's Racial Discrimination Claims Against The
>        Agent Defendant Are Barred By The Rule of Repose
>        And Are Invalid.

17.    Plaintiff's claims of racially discriminatory premiums, and all of Plaintiff's claims,
relating to policies issued before October 1, 1980 are barred by the Rule of Repose.[4] In the
Complaint that was filed in this case after October 1, 2000, Plaintiff failed to identify which of its
American General policies had discriminatory premiums. Plaintiff nevertheless alleges that
American General charged African-American individuals higher premiums for industrial life

---

[3](...continued)
986-N at 14-15 (M.D. Ala. April 24, 2000); *Saunders v. Franklin Life Insurance Co.*, Civil Action
No. 99-D-1077-S at 16-17 (M.D. Ala. April 27, 2000); *Smith v. Franklin Life Insurance Co.*, Civil
Action No. 99-D-1081-S (M.D. Ala. June 30, 2000); *LeBlang Motors, Ltd. v. Subaru of Am., Inc.*,
148 F.3d 680, 690 (7th Cir. 1998) (where the time to bring the cause of action had expired, the district
court was correct in dismissing non-diverse defendants as fraudulently joined); *Ritchey v. Upjohn
Drug Co.*, 139 F.3d 1313, 1320 (9th Cir. 1998) (upholding removal where claims against non-diverse
defendants were time-barred), *cert. denied*, 119 S. Ct. 407 (1998); *Yates v. Southwestern Life Ins.
Co.*, 1998 U.S. Dist. LEXIS 2001 at *3 (E.D. La. 1998) (where claims against non-diverse defendant
were time-barred, defendant was fraudulently joined and removal jurisdiction was proper); *In re
Diet Drugs*, 1999 WL 554608 at *2 (E.D. Pa. 1999) (denying motion to remand because non-diverse
defendant was fraudulently joined since plaintiffs' claim against that defendant was "barred by the
statute of limitations").

[4]American General does not concede that the premiums on any of Plaintiff's policies, which
are the subject of the complaint, were racially discriminatory. Plaintiff identified policy numbers
in the Complaint but failed to allege which ones were discriminatory.

insurance policies than it charged similarly situated white individuals. Complaint ¶¶ 12.[5]   All of

Plaintiff's claims involving such a policy issued before October 1, 1980 are barred by the Rule of

Repose.

18.    The Eleventh Circuit recently explained the operation of Alabama's Rule of Repose:

> Alabama's rule of repose is similar to a statute of limitations but
> broader in its scope.  "[T]he only element of the rule of repose is
> time.  It is not affected by the circumstances of the situation, by
> personal disabilities, or by whether prejudice has resulted or evidence
> obscured."  *Boshell v. Keith*, 418 So. 2d 89, 91 (Ala. 1982) (citations
> omitted).  The rule of repose operates as an absolute bar to claims that
> are not commenced within twenty years from the time they could
> have been.  *See id.* at 91.  As the Supreme Court of Alabama stated:
>
> > As a matter of public policy ... it has long been the settled
> > policy of this State ... that antiquated demands will not be
> > considered by the courts, and that, without regard to any
> > statute of limitations, there must be a time beyond which
> > human transactions will not be inquired into.
>
> *Snodgrass v. Snodgrass*, 176 Ala. 276, 58 So. 201, 201 (1912) (as
> quoted in *Boshell*, 418 So. 2d at 91).

*Spain v. Brown & Williamson Tobacco Corp.*, 2000 WL 1535929 at *5 (11th Cir. Oct. 18, 2000)

(emphasis added).

---

[5]Plaintiff's factual allegations of discrimination are a copy of allegations from the *McNeil* class action complaint that asserted a federal statutory discrimination claim (42 U.S.C. § 1981) against American General.  *Compare* Complaint in *McNeil v. American General* ¶¶ 11, 14, 50 and Count I (Exhibit C hereto) *with* the Complaint in this case ¶¶ 9-12 and 14-16 (Exhibit A hereto). Plaintiff's copycat allegations in this case are in reality a federal statutory discrimination claim. Plaintiff's Complaint is consequently removable based on the artful pleading doctrine and 28 U.S.C. § 1331.  *See In re Carter*, 618 F.2d 1093, 1101 (5th Cir. 1980) ("[T]he accepted rule in this circuit is that upon removal, the removal court should inspect the complaint carefully to determine whether a federal claim is necessarily presented even if the plaintiff has couched his pleading exclusively in terms of state law.  The reviewing court looks to the substance of the complaint, not the labels used in it.").

19.    Alabama's Rule of Repose "is a judicially-created doctrine that provides the outer limits of time within which an action may be maintained, regardless of whether that action is barred by the statute of limitations." *Moore v. Liberty National Life Ins. Co.*, 108 F. Supp. 2d 1266, 1274 (N.D. Ala. June 22, 2000) ("*Moore v. Liberty National*"); *see also Barrett v. Wedgeworth*, 518 So. 2d 1256, 1257 (Ala. 1987). The rule is "a substantive doctrine of the State" which "has only one element – the passage of twenty years from the moment that the actions giving rise to the claim occurred – and, if that time has elapsed, no claim can be pursued." *Moore v. Liberty National*, 108 F. Supp. 2d at 1275; *see also, Tierce v. Ellis*, 624 So. 2d 553, 554 (Ala. 1993).

20.    Alabama's Rule of Repose is intended to bar ancient, stale claims like Plaintiff's claims in this case. The Alabama Supreme Court explained the rule as follows:

> Th[e] principle of repose or prescription is similar to a statute of limitations, but not dependent upon one, and broader in scope. It is a doctrine that operates in addition to laches. Unlike laches, however, the only element of the Rule of Repose is time. It is not affected by the circumstances of the situation, by personal disabilities, or by whether prejudice has resulted or evidence obscured. It operates as an absolute bar to claims that are unasserted for 20 years.

*Boshell v. Keith*, 418 So. 2d 89, 91 (Ala. 1982) (citations omitted).

21.    The application of the Rule of Repose is "not affected by the circumstances of the situation, by whether prejudice has resulted, by whether evidence has become obscured, or by the status of the parties. The only element of the rule is time." *Grubbs v. Alabama State Bar*, 542 So. 2d 927, 930 (Ala. 1989) (citations omitted).

22.    The rationale for this absolute bar to actions that are more than twenty years old is "the settled policy of this state, as of others, that antiquated demands will not be considered by the courts, and that, without regard to any statute of limitations, there must be a time beyond which

human transactions will not be inquired into." *Barrett v. Wedgeworth*, 518 So.2d 1256, 1257 (Ala. 1987), quoting *Snodgrass v. Snodgrass*, 58 So. 201, 202 (Ala. 1912); *see also, Tierce v. Ellis*, 624 So. 2d at 554-55.

23.    Plaintiff's claims of alleged racially discriminatory premiums, and any other claims, relating to policies issued before October 1, 1980 are barred by the Rule of Repose. The *Moore v. Liberty National* case is directly on point. In that case, plaintiffs alleged that Liberty National Insurance Company had engaged in a systematic practice of race discrimination in the provision of industrial life insurance policies to African-Americans dating from the early 1940's until the present. Although the plaintiffs claimed continuing violations over a period of time up to the present, the Court dismissed the plaintiffs' claims because they were barred by the Rule of Repose. *Id.* at 1274-75. The Court explained that the rule's purpose is to prevent inquiry into claims that are obscured by the passage of time and the deaths of necessary witnesses. *Id.*; *see also Barrett*, 518 So.2d at 1257-1258 (holding that plaintiff could not contest the validity of a divorce decree where she relied on the judgment and made no effort to ascertain its validity for 26 years); *Davison v. Lowery*, 526 So.2d 2, 4 (Ala. 1988) (plaintiff's claim for interest in land owned by the defendant was barred by the Rule of Repose where the final judgment and sale occurred more than 20 years before the action was filed).

24.    Plaintiff's claims of racially discriminatory premiums (and all claims relating to policies issued before October 1, 1980) also fail to state a valid claim against Jamey Siggers because: (1) all of Plaintiff's policies purchased from American General were race-neutral and/or were issued more than twenty years before the filing of Plaintiff's Complaint; (2) the only policy sold to Plaintiff by Jamey Siggers was a non-discriminatory policy sold in 1993; and (3) all of Plaintiff's policies

lapsed or were surrendered more than two years before Plaintiff filed this lawsuit. Affidavit of Clyde Smith ¶ 3-7 attached hereto as Exhibit D.[6]

>    B.    Plaintiff's Remaining Claims Against The Agent
>          Defendant Are Barred by The Statute of Limitations.

25.    In essence, Plaintiff's remaining claims are that industrial life insurance policies are not good products ("Remaining Claims"). Plaintiff alleges that it "did not know that the small premiums would far exceed the face value of the policies over the normal life expectancy of these policyholders." Complaint ¶ 17.

26.    Plaintiff does not, and cannot, contend that the premium amount and face amount of the policy was not disclosed to it. The written provisions of Plaintiff's policy identify the premium and face amount of the policy.

27.    It is simply part of the risk of life insurance that if a policyholder lives a long time, then he will end up paying more premiums than a policyholder who dies one month after purchasing the life insurance policy. With the former long-lived policyholder, the "risk" benefits the life insurance company; with the latter soon-to-die policyholder, the "risk" benefits the policyholder. That is simply how life insurance works. Plaintiff knew the premium amount and knew the face amount of the policy. The policy clearly stated those amounts and Plaintiff has not alleged otherwise. At the time of the receipt of the policy, Plaintiff could have done the math while speculating on its life span. For example, if I live thirty years after I buy this policy, then I will pay a total of X dollars in premiums for Y dollars of coverage.

---

[6]The Court can rely on affidavits and other evidence in determining diversity jurisdiction. *See Fowler v. Safeco Ins. Co. of Am.*, 915 F.2d 616, 617 (11th Cir. 1990) (stating that "[i]n a removal action . . . Defendants have the opportunity to submit affidavits, depositions, or other evidence to support removal" citing *B., Inc. v. Miller*, 663 F.2d 545, 549 (5th Cir. Unit A 1981)).

28.    Under Alabama law, the statute of limitations for most of Plaintiff's common law claims is two years. *Ala. Code* §§ 6-2-3, 6-2-38(*l, n*) (1993); *Foremost Ins. Co. v. Parham*, 693 So. 2d 409, 421-23 (Ala. 1997) (holding that the two-year statute of limitations on fraud claims, including misrepresentation and suppression, accrues from the date on which the plaintiff knew or should have known of the alleged fraud); *Tonsmeire v. AmSouth Bank*, 659 So. 2d 601, 604 (Ala. 1995) (statute of limitations for breach of fiduciary duty claims is two years); *Archie v. Enterprise Hosp. & Nursing Home*, 508 So. 2d 693, 695 (Ala. 1987) (statute of limitations for an outrage claim is two years); *Dorsey v. Bowers*, 709 So. 2d 51, 56 (Ala. Civ. App. 1998) (applying the two-year statute of limitations to negligence and wantonness claims).[7]

29.    Plaintiff's non-fraud causes of action against the Agent Defendant are consequently barred by the statute of limitations because those claims occurred more than two years before this civil action was filed.[8]

---

[7]Under Alabama law, if an alleged wrong "springs from a breach of a duty either growing out of the relationship of the parties, or imposed by law, the claim is *ex delicto*," and not *ex contractu*. *Jefferson County v. Reach*, 368 So. 2d 250, 252 (Ala. 1978); *see also e.g., Brooks v. Hill*, 717 So. 2d 759, 763 (Ala. 1998) (cause of action arising from breach of extra-contractual duty is *ex delicto*); *Sanford v. Western Life Ins. Co.*, 368 So. 2d 260, 263 (Ala. 1979) (extra-contractual "bad faith" claim against insurance company was *ex delicto*). Non-specific, non-contractual actions for injury to a plaintiff's rights are governed by Alabama's "catch-all" two-year statute of limitations. *See Ala. Code* § 6-2-38(l) (1993); *Jefferson County*, 368 So. 2d at 252 (applying predecessor of § 6-2-38 statute of limitations to *ex delicto* claim). Plaintiff's claims for unjust enrichment, money had and received, conversion and breach of fiduciary duty should also be governed by the two year catch-all provisions in *Ala. Code* §6-2-38(l).

[8]There are no discovery rules tolling any of Plaintiff's non-fraud claims. *See Booker v. United American Ins. Co.*, 700 So. 2d 1333, 1339-40 (Ala. 1997) (finding the statutory tolling provision for fraud claims does not apply to non-fraud claims); *Henson v. Celtic Life Ins. Co.*, 621 So. 2d 1268, 1274 (Ala. 1993) (holding that the tolling rule applies *only* to fraud actions); *see also Williams v. Norwest Financial Alabama, Inc.*, 723 So. 2d 97, 104 (Ala. Civ. App. 1998) (holding that discovery rule does not toll the two-year statute of limitations on negligence and wantonness claims).

30. Plaintiff's only possibility for avoiding the statute of limitations bar as to its fraud causes of action on its Remaining Claims against Jamey Siggers rests on the tolling or delayed accrual provision for fraud-related claims. *See Ala. Code* §§ 6-2-3, 6-2-38(*l*); *see also Whitlock*, 32 F. Supp. 2d at 1290 (noting that Alabama's statute of limitations for fraud actions is subject to the discovery tolling rule). The Alabama Supreme Court's interpretation of the tolling provision, however, has foreclosed that possibility in this case. *See Foremost Ins. Co. v. Parham*, 693 So. 2d 409, 421 (Ala. 1997) ("*Foremost*").

31. The Alabama Supreme Court's *Foremost* decision reestablished that the objective standard, for determining the accrual date of a fraud claim, imposes a duty to read the documents received in connection with a particular transaction. *Id.* at 421 Fraud claims accrue upon the earlier of: (1) actual discovery of the alleged fraud, or (2) receipt of a document or contract alerting the plaintiff to the possibility of fraud, if the plaintiff could have read and understood such document but chose to ignore its written terms. *Foremost*, 693 So. 2d at 421. The *Foremost* court held that the objective "reasonable reliance" standard, if applied retroactively to the plaintiff in that case, who had not even completed high school, would require a finding that such a plaintiff should have discovered the alleged oral misrepresentations upon signing and receiving the sales documents. *Id.* at 422. The two-year statute of limitations for fraud claims would have begun running on the date that the plaintiff received the sales documents. *Id.* Plaintiff's fraud and fraudulent suppression claims would be barred if the suit was not filed within two years of the plaintiff's receipt of the policy. *Id.* at 422 ("Because [plaintiffs] each received their sales documents more than two years before filing this action, their misrepresentation claims would be barred by the two-year statute of

-13-

limitations. . . Because they each received their insurance policies more than two years before filing

this action, their suppression claims would be barred by the two-year statute of limitations.")

32.    The Eleventh Circuit has explained that, "Alabama law imposes upon a party the duty

to read and inspect any document which might affect that person's legal rights or liabilities." *Ramp*

*Operations, Inc. v. Reliance Insurance Co.*, 805 F. 2d 1552, 1556 (11th Cir. 1986).[9] The Eleventh

Circuit also explained Alabama law relating to a statute of limitations determination in a fraud case:

> Alabama law allows the court to decide the statute of limitations
> question where the facts regarding the discovery of the fraud are not
> in dispute. Because we hold that [plaintiff] should have discovered
> the alleged fraud at or shortly after the time it received the policy, the
> only facts relevant to the statute of limitations issue are whether and
> when [plaintiff] received its copy of the insurance policy. These facts
> are uncontroverted in this case, therefore it was proper for the trial
> court to determine as a matter of law that the statute of limitations had
> already run.

*Id.* at 1558.

33.    In this case, the written provisions of Plaintiff's policy identify the premiums and face

amount of the policy. Plaintiff's Remaining Claims based on fraud against the Agent Defendant are

consequently barred by the statute of limitations. Expiration of the statute of limitations means that

there exists no possibility that Plaintiff can establish a claim against Jamey Siggers, the sole non-

diverse defendant. In this case: (1) the statute of limitations expired on all claims against Jamey

Siggers long before Plaintiff filed this action; (2) Plaintiff therefore fraudulently joined Jamey

Siggers; and (3) the fraudulent joinder of Jamey Siggers will neither defeat American General's

removal rights nor circumvent this Court's jurisdiction. *Whitlock v. Jackson National Life Insurance*

---

[9]As a result of the *Foremost* opinion, court decisions rendered before the 1989 decision in
*Hickox v. Stover*, 551 So. 2d 259 (Ala. 1989) are relevant to fraud cases filed after March 14, 1997,
such as the present civil action.

*Co.*, 32 F. Supp. 2d 1286, 1290 (M.D. Ala. 1998); *Levett v. Independent Life and Accident Insurance Co.*, 814 F. Supp. 1053, 1058 (M.D. Ala. 1993); *Wakeland v. Brown & Williamson Tobacco Corp.*, 1213, 1221-22 (S.D. Ala. 1998); *Lyons v. The American Tobacco Company*, 1997 WL 809677 at *5 (S.D. Ala. 1997); *see note 1, supra.*

**3.    The Agent Defendant Has Also Been Fraudulently Joined Because Plaintiff Cannot Establish Any Cause of Action Against The Agent Defendant.**

34.    Plaintiff's fraud allegations against Jamey Siggers fail to satisfy the requirements of Rule 9(b), Fed. R. Civ. P., that "in all averments of fraud . . ., the circumstances constituting fraud . . . shall be stated with particularity." The Eleventh Circuit has explained that, pursuant to Rule 9(b), a plaintiff must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the plaintiffs; and (4) what the defendants gained by the alleged fraud. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997). A complaint that "lump[s] together all of the defendants in [its] allegations of fraud," and is "devoid of specific allegations with respect to the separate defendants," is woefully inadequate and fails to meet Rule 9(b) standards. *Id.* at 1381. Plaintiff's complaint fails to satisfy Rule 9(b) as to any specific allegations against the Agent Defendant.

35.    Plaintiff's fraudulent suppression claims against the Agent Defendant fail for additional reasons.

36.    As to Plaintiff's allegations of racially discriminatory premiums, there is no duty by the Agent Defendant to make such a disclosure. The case of *State Farm Fire and Casualty Co. v. Owen*, 729 So. 2d 834 (Ala. 1998) completely forecloses Plaintiff's fraudulent disclosure claims as

-15-

to the alleged racially discriminatory premiums. In *Owen*, the plaintiff claimed that she was defrauded because the insurance company did not disclose to her that it would charge premiums based on the appraisal value of a ring, but would pay only the replacement cost of the item in the event of a loss. In affirming the summary judgment granted to the insurer, the Alabama Supreme Court explained:

> To uphold [plaintiff's] claim, we would have to rule that it is the responsibility of every insurer at the point of sale to explain fully to customers the insurer's internal procedures, its ratemaking process, and its business practices. To impose that responsibility strikes us as highly impractical, and it is a responsibility we have not imposed in the past.

*Id.* at 843. The Alabama Supreme Court has thus clearly held that under Alabama law, an insurance company and its agents *have no duty to disclose* the company's internal ratemaking process. *See also Bramlett v. Ford Motor Credit Co.*, 717 So. 2d 781, 787 (Ala. 1997) (dealership and finance company had no duty to disclose that the dealership was receiving a 3% commission on the finance rate charged by the finance company to the customer, where the plaintiff was told his finance rate). In *Bramlett*, the Alabama Supreme Court specifically stated that a business is still allowed "to keep confidential its internal operating procedures." *Id.* In this case, there was no duty on the part of the Agent Defendant to disclose American General's internal ratemaking process. Consequently, Plaintiff cannot establish a fraudulent suppression claim against the Agent Defendant relating to the alleged racially discriminatory premiums.

37.    As to Plaintiff's fraudulent suppression claim that it was not told that the premiums could exceed the face amount of the policy, the policy itself revealed that information. As a result, Plaintiff cannot establish a fraudulent suppression cause of action against the Agent Defendant as to that claim. *Brown v. Commonwealth Life Insurance Co.*, 22 F. Supp. 2d 1325, 1330 (M.D. Ala.

-16-

1998) ("Precedent from the Supreme Court of Alabama establishes that when a company discloses material facts in the written materials provided to the insured, there is no suppression of fact."); *Robinson v. JMIC Life Insurance* Co., 697 So. 2d 461, 462 (Ala. 1997); *Roper v. Associates Financial Services of Alabama, Inc.*, 533 So. 2d 206, 209 (Ala. 1988); *Williams v. Norwest Financial Alabama, Inc.*, 723 So. 2d 97, 102-103 (Ala. Civ. App. 1998); *Richardson v. Liberty National Life Insurance Co.*, 750 So. 2d 575, 578 (Ala. Civ. App. 1999); *see also Foremost*, 693 So. 2d at 422.

38.    Plaintiff's quasi-contract claims of unjust enrichment and money had and received are also barred because of the existence of an express contract - *i.e.*, the insurance policy. *See Tyson & Arrington v. Thompson*, 70 So. 649, 651 (Ala. 1915) (Quasi-contract principles will only be applied "in the absence of an express contract . . . To travel beyond the parties making the contract, in search of an implied promise . . . would introduce a new and dangerous principle in implied contracts, the extent of which it is difficult to conjecture."); *Architectura, Inc. v. Miller*, 2000 WL 572767 at *4 (Ala. Civ. App. May 12, 2000) (affirming judgment for defendant on unjust enrichment claim where parties had express contract).[10]

39.    Plaintiff's conversion claim against the Agent Defendant is barred for two independent reasons. Plaintiff alleges that her premium payments were "wrongfully appropriated by Defendants for Defendants' own use and benefit." Complaint at ¶ 53. The premium payments, however, were paid to *American General*, not the Agent Defendant. Thus, the Agent Defendant could not have "converted" such money. Second, "an action will not lie for the conversion of

---

[10]The fact that Plaintiff voluntarily paid premiums for the policy also precludes unjust enrichment and money had and received claims. *Stone v. Mellon Mortgage Co.*, 2000 WL 548222 (Ala. Sup. Ct. May 5, 2000).

money." *See Willingham v. United Ins. Co. of America*, 628 So. 2d 328, 333 (Ala. 1993) (citation

omitted). The only exception to the general rule occurs in cases where the cash at issue is "specific

money capable of identification." *See Green Tree Acceptance, Inc. v. Tunstall*, 645 So.2d 1384,

1386 (Ala. 1994), *citing Hunnicutt v. Higginbotham*, 138 Ala. 472, 35 So. 469 (Ala. 1903). The

Alabama Supreme Court has repeatedly rejected claims for conversion of insurance premiums

because such premiums are not monies specifically capable of identification. *See e.g., Willingham,*

*supra; see also Green Tree Acceptance, Inc. v. Tunstall*, 645 So. 2d 1384 (Ala. 1994); *Johnson v.*

*Life Insurance Company of Alabama*, 581 So. 2d 438 (Ala. 1991)(both cases holding that cause of

action would not lie for the conversion of insurance premiums paid by the plaintiffs because the

money in question was not sufficiently identifiable). In this case, Plaintiff claimed that premiums

were collected door-to-door, and has not alleged any facts making those premiums segregated or

identifiable. Under the controlling Alabama Supreme Court authority, Plaintiff cannot establish a

conversion claim against the Agent Defendant.

     40.     Plaintiff's assertion that the Agent Defendant owed it a fiduciary duty also fails under

Alabama law. In Alabama, "[t]he existence of a duty is a question of law for the trial court." *Guinn*

*v. American Integrity Ins. Co.*, 568 So. 2d 760, 764 (Ala. 1990). The Alabama Supreme Court has

held that allegations that plaintiffs were fraudulently induced to purchase an insurance policy cannot,

as a matter of law, support a claim for breach of fiduciary duty:

> [A]n insurance agent is generally not considered to be an agent of the
> insured until a contract of insurance has been entered into. Until such
> a contractual relationship has been established, the parties remain in
> the relationship of salesperson and prospective customer. The
> salesperson may be liable for damages if he misrepresents material
> facts in an attempt to induce the prospective customer to enter into
> the contract. However, that potential liability does not indicate the
> existence of a fiduciary relationship.

*Guinn*, 568 So. 2d at 768 (citations omitted) (rejecting plaintiff's claims that "her reposal of trust in [the agent]" as well as her "advanced age, lack of mental strength, lack of knowledge of insurance matters, and the agents' superior knowledge concerning insurance" warranted the imposition of fiduciary duty). The two-year statute of limitations has run on plaintiffs' breach of fiduciary duty claims against the Agent Defendants. *McCormack v. AmSouth Bank, N.A.*, 759 So. 2d 538, 541 (Ala. 1999).

     41.    Plaintiff cannot establish an outrage claim against the Agent Defendant because the allegations in this case fall outside the three areas in which a tort of outrage claim can be stated. *Potts v. Hayes*, 2000 WL 548198 at *3 (Ala. May 5, 2000);*Thomas v. BSE Industrial Contractors, Inc.*, 624 So. 2d 1041, 1044 (Ala. 1993).

## AMOUNT IN CONTROVERSY

     42.    Plaintiff's Complaint alleges a variety of common law claims and seeks unspecified compensatory and punitive damages.

     43.    In order to meet the $75,000 jurisdictional threshold in a case with an unspecified claim for damages, Defendant need show only that "the amount in controversy more likely than not exceeds the [now $75,000] jurisdictional requirement." *Tapscott*, 77 F.3d at 1357; *Kilpatrick v. Martin K. Eby Construction Co., Inc.*, 708 F. Supp. 1241, 1242-43 (N.D. Ala. 1989) (holding that the "amount in controversy requirement has been met" even though "the State Court complaint does not demand judgment of a specified dollar amount"). In this case, Defendant can remove to federal court if it can show, by a preponderance of the evidence, facts supporting jurisdiction. *Tapscott*, 77 F.3d at 1356-57. A lower burden of proof is warranted where damages are unspecified because there is simply no estimate of damages to which a court may defer. *Id.*

-19-

44.     Prospective punitive damages must be considered in any calculation of the amount in controversy. *See Holley Equipment Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987) ("When determining the jurisdictional amount in diversity cases, punitive damages must be considered, unless it is apparent to a legal certainly that such cannot be recovered.") (citations omitted); *Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240 (1943) (claims for compensatory and punitive damages should be aggregated to determine jurisdictional amount in controversy). Further, "it is clear that in Alabama, when a plaintiff seeks recovery for fraud against an insurance company and asks for punitive damages, the recovery, if the plaintiff prevails, may very well exceed [the jurisdictional amount]." *Bolling v. Union Nat'l Life Ins. Co.*, 900 F. Supp. 400, 405 (M.D. Ala. 1995); *Davis v. Franklin Life Ins. Co.*, 71 F. Supp. 2d 1197, 1200 (M.D. Ala. 1999); *accord, Lindsey v. Franklin Life Ins. Co.*, Civil Action No. 99-A-1028-N (M.D. Ala. 1999); *McDuffie v. Franklin Life Insurance* Co., Civil Action No. 99-D-1023-N at 14-15 (M.D. Ala. March 6, 2000); *Wilder v. Franklin Life Insurance Co.*, Civil Action No. 99-D-1037-E at 15-16 (M.D. Ala. March 27, 2000); *Goree v. Franklin Life Insurance Co.*, Civil Action No. 99-D-986-N at 16-17 (M.D. Ala. April 24, 2000); *Saunders v. Franklin Life Insurance Co.*, Civil Action No. 99-D-1077-S at 17-18 (M.D. Ala. April 27, 2000); *Smith v. Franklin Life Insurance Co.*, Civil Action No. 99-D-1081-S at 30-32 (M.D. Ala. June 30, 2000); *Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F. Supp. 1213, 1222 (S.D. Ala. 1998) (applying "preponderance of the evidence standard" and finding that amount in controversy requirement was satisfied even though complaint did not specify amount of damages).

45.     In determining whether the jurisdictional level has been met, this Court may also look for guidance to recent decisions rendered in cases on the same type of suit. *Bolling*, 900 F. Supp. at 404. In *Bolling*, the Court held the amount in controversy requirement had been met even where

the plaintiff had not specified a damage amount where the defendant presented the court with numerous decisions from the Alabama courts in which the fraud action yielded liability of greater than $75,000, despite the plaintiff having slight out-of-pocket or actual damages. *See generally Jackson v. American Bankers Insurance Co. of Florida*, 976 F. Supp. 1450, 1452 (S.D. Ala. 1997). Attached to this Notice of Removal as Exhibit E is a list of recently recorded verdicts in excess of $75,000 against insurance companies for fraud. This list makes clear that it is more likely than not that if Plaintiff prevails in this case, the claims for punitive damages alone will exceed the amount in controversy.

46.     Professor George Priest of Yale Law School has conducted an "analysis of Alabama jury verdicts of punitive damages against out-of-state insurance companies." *Davis v. Franklin Life Ins. Co.*, 71 F. Supp. 2d 1197, 1199 (M.D. Ala. Nov. 2, 1999). In his analysis, Professor Priest "concluded that, even after *BMW v. Gore*, the average punitive damage award affirmed by the Alabama Supreme Court is $874,667." *Id.*; *see also Jackson v. American Bankers Insurance Co. of Florida*, 976 F. Supp. at 1452 (citing similar earlier analysis by Professor Priest).

47.     For the foregoing reasons, it is more likely than not that the jurisdictional amount for diversity jurisdiction is met in this case.

48.     If any question arises as to the existence of the requisite amount in controversy, then American General requests the opportunity to submit post-removal evidence in accordance with the procedure recently adopted by the Eleventh Circuit. *Sierminski v. Transouth Financial Corp.*, 216 F.3d 945, 949 (11th Cir. June 26, 2000). In affirming the denial of plaintiff's motion to remand, the Eleventh Circuit held that the district court properly considered defendant's post-removal evidence including defendant's requests for admission directed to the amount in controversy. The Eleventh

-21-

Circuit explained that, "[w]e align ourselves with our sister circuits in adopting a more flexible approach, allowing the district court when necessary to consider post-removal evidence in assessing removal jurisdiction." *Id.*

## THE OTHER REMOVAL PREREQUISITES HAVE BEEN SATISFIED

49.     Because this Notice of Removal is filed within thirty days of service of the complaint upon the first served Defendant, it is timely under 28 U.S.C. § 1446(b).

50.     All properly joined and served Defendants join in and consent to this removal. Fraudulently joined parties need not join in a Notice of Removal. *See, e.g., Alexander v. Goldome Credit Corp.,* 772 F. Supp. 1217, 1222 n.11 (M.D. Ala. 1991) (nominal or improperly joined defendants need not join in removal) *overruled on other grounds as recognized in Reneau v. Oakwood Mobile Homes,* 952 F.Supp. 724 (N.D.Ala. 1997); *Siderits v. Indiana,* 830 F. Supp. 1156, 1160 (N.D. Ind. 1993); *Moore v. Interstate Fire Ins. Co.,* 717 F. Supp. 1193, 1195 (S.D. Miss. 1989). Further, unserved defendants need not join in the Notice of Removal. *See Pullman v. Jenkins Co.,* 305 U.S. 534, 540, 59 S. Ct. 347, 350 (1939) ("Where there is a non-separable controversy with respect to several non-resident defendants, one of them may remove the cause, although the other defendants have not been served with process and have not appeared."); *Central Illinois Carpenter's Health & Welfare Trust Fund v. Phillip Morris, Inc.,* 28 F. Supp.2d 514, 520 (S.D. Ill. 1998); *Zaini v. Shell Oil Co.,* 853 F. Supp. 960, 964 n.1 (S.D. Tex. 1994); 14A C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3731 at 510 (2d ed. 1985) ("[D]efendants who are not served may be ignored . . . for the purpose of joining in the petition for removal").[11]

---

[11]The citizenship of unserved defendants should be ignored in assessing the existence of diversity of citizenship at the time of removal. *Mask v. Chrysler Corp.,* 825 F. Supp. 285, 289 (N.D.
(continued...)

51.     Defendants have sought no similar relief with respect to this matter.

52.     The prerequisites for removal under 28 U.S.C. § 1441 have been met.

53.     Written notice of the filing of this Notice of Removal will be given to the adverse

party as required by law.

54.     A Notice of Filing Notice of Removal, with a copy of this Notice of Removal

attached, will promptly be filed with the Circuit Court Clerk for the Circuit Court of Chambers

County.

---

[11](...continued)

Ala. June 16, 1993) ("[T]he case was properly removed because the [non-diverse defendant] has not
been served. . . [T]he unambiguous language of the statute [28 U.S.C. § 1441(b)] should be
construed exactly as written. [The non-diverse defendant] has not been properly joined and served.
It, therefore, cannot defeat removal jurisdiction."), *aff'd*, 29 F. 3d 641 (11th Cir. 1994) ("We affirm
the judgment of the district court on the basis of the well-reasoned memorandum opinion of the
district court entered on June 16, 1993") (Exhibit F hereto); 28 U.S.C. § 1441(b) ("Any other such
action shall be removable only if none of the parties in interest properly joined and served as
defendants is a citizen of the State in which such action is brought.") (emphasis added).  While the
Eleventh Circuit has a rule (11th Cir. R. 36-2) that an unpublished opinion is not considered binding
precedent and is only persuasive authority,  the Eighth Circuit Court of Appeals recently ruled that
its equivalent rule was unconstitutional and that an unpublished opinion was binding precedent:

> We hold that the portion of Rule 28A(i) [the 8th Circuit equivalent of 11th Cir. R. 36-
> 2] that declares that unpublished opinions are not precedent is unconstitutional under
> Article III, because it purports to confer on the federal courts a power that goes
> beyond the "judicial." . . . [W]e conclude that 8th Circuit Rule 28A(i), insofar as it
> would allow us to avoid the precedential effect of our prior decisions, purports to
> expand the judicial power beyond the bounds of Article III, and is therefore
> unconstitutional.  That rule does not, therefore, free us from our duty to follow this
> Court's decision in [a case with any unpublished opinion].

*Anastasoff v. United States of America*, 223 F. 3d 898, 899-900 (8th Cir. Aug. 22, 2000).  Based on
the holding in *Anastasoff*, Eleventh Circuit Rule 36-2 is unconstitutional and the Eleventh Circuit's
affirmance of the *Mask* case is binding precedent on this Court.  As a result, the citizenship of Jamey
Siggers cannot defeat removal jurisdiction.

55.    The allegations of this notice are true and correct, this cause is within the jurisdiction of the United States District Court for the Middle District of Alabama, and this cause is removable to the United States District Court for the Middle District of Alabama.

56.    If any question arises as to the propriety of the removal of this action, American General requests the opportunity to present a brief and oral argument in support of its position that this case is removable.

WHEREFORE, American General, desiring to remove this case to the United States District Court for the Middle District of Alabama, Eastern Division, being the district and division of said Court for the County in which said action is pending, prays that the filing of this Notice of Removal shall effect the removal of said suit to this Court.

_____
Lee E. Bains, Jr. (BAI005)
Michael D. Mulvaney (MUL012)
J. Alan Baty (BAT029)

Attorneys for Defendants American General Life and
Accident Insurance Company and American General
Life Insurance Company

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
Attorneys at Law
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, Alabama 35203-2602
(205) 254-1000
Fax: (205) 254-1999

-24-

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Notice of Removal has been served upon the following listed persons by placing a copy of the same in the United States mail, first-class postage prepaid and properly addressed as follows:

David Cowan
Mann & Cowan
2000 B SouthBridge Parkway
Suite 601
Birmingham, Alabama 35209

Robert S. W. Given
Burr & Forman, L.L.P.
420 20th Street North
SouthTrust Tower, Ste. 3100
Birmingham, Alabama 35203

on this the __29th__ day of __November__, 2000.

_____
OF COUNSEL

-25-

3A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

U.S. DISTRICT COURT
N.D. OF ALABAMA

MATTIE HATCHER,                          )
                                         )
          Plaintiff,                     )
                                         )
v.                                       ) CIVIL ACTION NO. 00-PWG-2609-E
                                         )
AMERICAN GENERAL LIFE AND                )
ACCIDENT INSURANCE COMPANY,              )          **ENTERED**
ET AL.,                                  )
                                         )          OCT 1 8 2000
          Defendants.                    )

O R D E R

On August 14, 2000 Mattie Hatcher, plaintiff in the above-referenced civil action,

filed a complaint in the Circuit Court of Calhoun County, Alabama which alleges that defendant

American General Life and Accident Insurance Company (American General), a Tennessee

corporation, and perhaps that "defendants Shawn Austin, Terry Wooten, Ronnie White, Samuel

Ramsey, John Lawrence, M. W. Weems, Alice Smith and D.C. Hornbuckle" as agents of American

General, engaged in conduct which gives rise to a cause of action for money damages. (Document

#18, Exhibit A). The complaint alleges that

> 7. This lawsuit seeks redress for fraudulent scheme
> and common course of conduct involving deceptive
> sales practices, unconscionable conduct,
> overreaching, fraud and deception by American
> General and certain life insurance companies acquired
> by it relating to the training of its agents, and the
> marketing, sale and administration of industrial life
> insurance policies...
>
>                    . . . .
>
> 9. As part of it is nationwide scheme, American
> General targeted low income, impoverished,
> unsophisticated minority segments of the population

and marketed the industrial life insurance product for sales to these consumers. In addition, American General charged African-American individuals more for these policies than it charged similarly situated white individuals.

. . . .

21.    In furtherance of its nationwide scheme, American General has opposed [   ] efforts of state insurance regulators and legislators to require American General to inform policy holders of the total amount of premiums that have been paid on investor policies. Further, on information and belief, American General has intentionally refused, delayed, and avoided providing such information on the request of its industrial policy holders.

(Document #18, Exhibit A).[1]

Plaintiff is an African-American citizen who was sold "at least two industrial burial and 'sick' policies over the years. These policies ... were purchased beginning in the late 1950's." (Paragraph 29).[2] The complaint alleges causes of action including unjust enrichment (count one); money had and received (count two); conversion (count three); breach of contract (count four); negligence (count five); negligent and/or wanton training (count six); negligent and/or wanton supervision (count seven); breach of a fiduciary duty (count eight); deceit (count nine); continuing misrepresentations and suppressions (count ten); and outrage (count eleven). Plaintiff seeks

---

[1]    While plaintiff appears to make discrete claims the complaint also refers to "plaintiff and class members [who] have lost and/or cause losing millions of dollars..." (Paragraph #22). (Emphasis added).

[2]    As the complaint is obviously an inadequately edited version of a document submitted in other actions, it is extremely difficult to read. For example at paragraph 31 Ms. Hatcher tells us that "the plaintiffs may have been sold additional policies ..." There are, however, no other "plaintiffs" identified. There are numerous references to multiple plaintiffs in addition to members of an unidentified class. (Paragraphs 22, 26, 27, 31, 32, 34, 37, 55 and 78(e)).

## DAMAGES

As a consequence of the acts and omissions of the defendant as described in each count of the complaint, plaintiff has been injured and damaged as follows:

(a)  [Plaintiff has] paid premiums for services which were not provided;

(b)  [Plaintiff has] paid premiums in excess of what reasonably should have been paid for the policies;

(c)  [Plaintiff has] received a lower cash accumulation in the policies than bargained for;

(d)  [Plaintiff has] lost the value and use of [her] money;

(e)  [Plaintiff has] incurred attorneys fees and expenses; and

(f)  [Plaintiff has] suffered mental and emotional distress.

**WHEREFORE, PREMISES CONSIDERED,** plaintiff demands judgment against each defendant, named and fictitious, jointly and severally for compensatory damages in an amount not to exceed $60,000.00.

In the Notice of Removal, American General and the individual defendants allege fraudulent joinder of the resident agents and, further, that

8. In this case, plaintiff generally attacks the sale of industrial life insurance policies, which plaintiff defines as "a life insurance product which typically has a low face value and premium payments which are designed to appear to the policy holder to be modest. (See Complaint at ¶ 8).

Plaintiff makes individual claims only, but it appears as if she originally drafted her complaint with a class action in mind. (See Complaint at ¶ ¶ 22, 23(referring to 'class members'). As a result it is difficult to determine what claims plaintiff is actually making on her own behalf and what claims she has now abandoned in light of her failure to pursue a class action. What we are left with is a shoddy complaint,

3

> making some claims which clearly *cannot* apply to this plaintiff for the reasons set forth below. (emphasis in original).

(Notice of Removal at ¶ 8).

At page thirteen of the removal notice the defendants allege that the amount in controversy is satisfied because plaintiff's complaint alleges common law claims and "seeks a judgment against *each defendant* ..., jointly and *severally*, for compensatory damages in an amount not to exceed $60,000." "... plaintiff has sued *twelve* defendants seeking $60,000 from **each** of those defendants **severally**. In the aggregate, plaintiff thus seeks $720,000 from the defendants in this case. The $75,000 amount-in-controversy is thus met in this case." (emphasis in the original).

Before the court are the following motions:

(1)     the motion of American General for jurisdictional discovery (document #9);

(2)      the motion to dismiss filed by Jesse W. Cotten (document #10);

(3)     the motion to dismiss filed by Shawn Austin (document #11);

(4)     the motion to dismiss filed by Richard Prickett (document #12);

(5)     the motion to dismiss filed by Alton Burgess (document #13);

(6)     plaintiff's motion to remand (document #17);

(7)     plaintiff's motion to "strike and objections to jurisdictional discovery" (document #18);

(8)     plaintiff's motion styled as a "motion for reconsideration" of a September 21, 2000 order of this court (document #19); and

(9)     American General's motion to defer ruling on plaintiff's motion to remand pending discovery on jurisdictional issues (document #22).

4

This matter is before the undersigned magistrate judge pursuant to the provisions of 28 U.S.C. § 636(b); Rule 72(b) of the *Federal Rules of Civil Procedure*; LR 72.1; and the General Orders of Reference dated July 25, 1996, May 8, 1998, as amended July 27, 2000.

Plaintiff's motion to remand asserts that remand is required in that the amount in controversy is less than the jurisdictional amount. (Document #17). Plaintiff observes that defendants seek jurisdictional discovery concerning the jurisdictional amount in controversy citing *Burns v. Windsor*, 31 F.2d 1092 (11th Cir. 1994). Plaintiff then asserts that defendants' discovery request is itself an admission that federal jurisdiction is not "absolutely clear" and remand to the state court is the only appropriate remedy. Plaintiff has confused the evidentiary standards applicable to the amount in controversy. As more fully set forth below the extraordinary ambiguity of the complaint itself puts the issue of the amount in controversy "in play."[1/] For reasons more fully set forth below, defendants' motion for jurisdictional discovery (document #9) is GRANTED in part. A ruling on plaintiff's motion to remand (document #17) will be DEFERRED.

## GENERAL PRINCIPLES

The United States District Court for the Northern District of Alabama is a creation of Congress, U.S. Const., Art. III, and possesses only that portion of the constitutionally permissible field of Article III jurisdiction specifically granted to it by Congress. The contours of its jurisdiction may not, and must not, be expanded by judicial usurpation. *Snyder v. Harris*, 394 U.S. 332, 341, 89 S.Ct. 1053, 1059, 22 L.Ed.2d 319 (1969). Congress has granted subject matter jurisdiction to

---

[1/]   Plaintiff also cites the order of another judge of this court in which it is alleged that faced with the "identical" circumstances, the matter was remanded to the Alabama Circuit Court from which it originated. Curiously, the cited opinion observes that defendant "has offered no proof and does not allege plaintiff's damages exceed $75,000...." (emphasis added). Here defendants merely seek the opportunity to offer such proof. Moreover, they have clearly alleged that plaintiff has sought in excess of $75,000 which is not an unreasonable construction of an otherwise ambiguous ad damnun clause.

district courts over "all civil actions where the matter in controversy exceeds the sum or value of $75,000" provided that complete diversity exists between the parties. 28 U.S.C. § 1332(a); *Strawbridge v. Curtiss*, 3 Cranch (7 U.S.) 267, 2 L.Ed. 1235 (1806). The rule of complete diversity holds that generally diversity jurisdiction may be sustained only where "there is no plaintiff and no defendant who are citizens of the same state." *Wisconsin Department of Corrections v. Schacht*, 524 U.S. 381, 18 S.Ct. 2047, 2052, 141 L.Ed.2d 364 (1998).

"Subject matter jurisdiction is an unwaivable *sine qua non* for the exercise of federal judicial power. Whether raised by the litigants or not the federal courts, including appellate courts, are duty-bound to determine jurisdiction and dismiss [or remand] any case in which it is found to be wanting." *Eagerton v. Valuations, Inc.*, 698 F.2d 1115, 1118 (11th Cir. 1983). "... [J]urisdiction is not a game. As the Supreme Court [has] made abundantly clear, it is one of the fundamental tenants of our Constitution that only some cases may be brought in federal court." *E. R. Squibb & Sons v. Accident and Cas. Ins. Company*, 160 F.3d 926, 929 (2d Cir. 1998), *citing Healy v. Ratta*, 292 U.S. 263, 270, 54 S.Ct. 700, 78 L.Ed.2d 1248 (1934).[2] Subject-matter jurisdiction can never be waived or conferred by the consent of the parties. *Insurance Corporation of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982). As the Supreme Court has explained that "'the rule, springing from the nature and limits of the judicial power of the United States is inflexible and without exception, [and] requires this court, of its own motion, to deny its jurisdiction, and, ... that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record.'" *Insurance Corporation of Ireland*,

---

[2] In *E. R. Squibb & Sons* the parties had litigated the case for more than 16 years assuming their right to be in federal court. There was no suggestion of collusion between the litigants to create federal jurisdiction. Nonetheless, the Second Circuit found that the United States courts lack subject matter jurisdiction terminating the action in that court despite recognizing the fact that "...it [will] be dismal for all concerned to have to go back to square one after 16 years, ...." *Squibb & Sons*, 160 F.3d at 930.

456 U.S. at 702, 102 S.Ct. at 2104 (*quoting Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed.2d 462 (1884)).

It is well-settled that the defendant, as the party removing an action to federal court, has the burden of establishing federal jurisdiction. *See Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996). Removal statutes must be strictly construed because of the significant federalism concerns raised by removal jurisdiction. *See Shamrock Oil & Gas Corporation v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). Placing the burden on the removing defendant and resolving all doubts in favor of plaintiff as against the defendant is consistent with, if not mandated by, the Constitution and statutory limitations on the exercise of federal judicial power. *B, Inc. v. Miller Brewing Company*, 663 F.2d 545 (5th Cir. 1981). Allocation of the burden in this fashion confirms an organizing tenant of removal jurisprudence; that is, that the statutory right of removal does not outweigh nor even equal the plaintiff's right to pursue their claims in their own manner in the chosen forum. *Caterpiller, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987).

The frequently made contention that a party, usually a plaintiff, is attempting to "defeat" federal jurisdiction connotes an aura of duplicity. It should not. When the issue goes directly to the very power of the court to resolve a dispute, prudence as well as the Constitution dictates the case should proceed in the court which clearly has jurisdiction. This will assure final resolution of the dispute whereas if the action proceeds in the wrong forum the jurisdictional impurity will ultimately produce only a waste of substantial resources and time. *Brougton v. Florida International Underwriters*, 139 F.3d 861 (11th Cir. 1998). While defendant asserts that the federal court has jurisdiction to hear this case, there is no question that if the court errs by remanding this action the parties will return to a judicial forum which unquestionably can litigate the dispute to

conclusion. If this court errs in removing the case, there remains the prospect of an illusory termination which is in fact a judicial nullity. *Latin America Property & Casualty Insurance Company v. Hi-Lift Marina, Inc.*, 887 F.2d 1477 (11th Cir. 1987). The Constitution and removal statutes permits a diverse defendant to defend itself in federal rather than state court but only if the federal jurisdiction is clear. *See Barrow S. S. Co. v. Kane,* 170 U.S. 100, 111, 18 S.Ct. 526, 530, 42 L.Ed. 964 (1899), *cited in Davis v. Carl Cannon Chevrolet-Olds, Inc.*, 182 F.3d 792 (11th Cir. 1999). At the same time, however, although the courts must construe diversity jurisdiction narrowly [*Burns v. Windsor Insurance Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994)], there is no provision for "discretionary remand" any more than "discretionary jurisdiction." "A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises." *Fitzgerald v. Seaboard Systems R. R.*, 760 F.2d 1249 (11th Cir. 1985); *citing Philbrook v. Glodgett,* 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975); *City of Kenosha, Wisconsin v. Bruno,* 412 U.S. 507, 511, 93 S.Ct. 2222, 2225, 37 L.Ed.2d 109 (1973). If the court lacks subject matter jurisdiction over the case it must be remanded. 28 U.S.C. § 1447(c). However, where jurisdiction does exist, the court must use it. Indeed, the Supreme Court has made clear on numerous occasions that the district courts are under a "virtually unflagging obligation ... to exercise" such jurisdiction as Congress has authorized. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 43 (1976), *citing England v. Louisiana State Bd. of Medical Examiners,*, 375 U.S. 411, 415, 84 S.Ct. 461, 464, 11 L.Ed.2d 440, 444 (1964). The instruction to this court is to make the required assessment under the rules established by the Supreme Court and the Eleventh Circuit and then proceed expeditiously to resolve the question of jurisdiction.

8

## BURNS, ST. PAUL MERCURY INDEMNITY AND POORE

It is impossible to properly consider an issue with regard to the jurisdictional amount in controversy without reference to the rule announced by the Eleventh Circuit in *Burns v. Windsor Ins. Co.*, 31 F.3d 1092 (11th Cir. 1994) in light of the Supreme Court's holding in *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). The rule of the Eleventh Circuit is simple enough. *Burns* establishes that when a plaintiff files an action in state court specifically seeking damages of "not more" than the federal jurisdictional threshold, a removing defendant must prove to a legal certainty that plaintiff's claims exceed the jurisdictional amount. In *Burns* plaintiff unambiguously sought "not more than $45,000" in damages in her state court complaint. After removing the case defendants argued that the self-imposed limitation on damages was illusory. Plaintiff declined two opportunities in the district court to agree never to seek more than $49,999.00. The district court denied remand. In vacating an order granting summary judgment the Eleventh Circuit held that the district court lacked subject matter jurisdiction. Applying the legal certainty test the circuit court noted that while defendant had contended that the plaintiff had falsely assessed the case or done so incompetently "[given] the specific nature of the plaintiff's damages claim ... to avoid remand defendant must prove to a legal certainty that the plaintiff's counsel has done ... one or the other. That is defendant must prove to a legal certainty that plaintiff's claim exceeds [the jurisdictional amount]." *Burns*, 31 F.3d at 1095.[2/] The *Burns* court rested the decision in substantial measure upon the conclusion that in specifically defining the dollar value of the relief sought in the complaint, plaintiff's counsel had "as an officer of the court" with

---

[2/]    *Burns* does not preclude jurisdictional discovery even when the plaintiff has been clear about the damages sought in a complaint. The *Burns* burden of proof is higher than that presented here but not conclusively impossible to satisfy.

9

the "duty of diligently researching his client's case [and his] duty of candor to the tribunal ... engaged in no deception nor did he [fail to ] appreciate the value of the case." *Id. Burns* makes clear that when a plaintiff demands less than the federal jurisdictional amount in his state court complaint removal is proper only when defendant can prove to a legal certainty that value of the claim reaches the jurisdictional threshold. This holding is wholly consistent with the Supreme Court's instruction in *St Paul Mercury Indemnity*. In *St Paul Mercury* the Supreme Court held that when a plaintiff demanded more than the jurisdictional amount in the state court action, federal jurisdiction was established at the time or removal and would not be divested by plaintiff's subsequent attempt to amend downward the value of the claim because "...unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith [and] it must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." Interestingly, the court observed that "if a [plaintiff] does not desire to try his case in federal court he may resort to the expedient of suing for less than the jurisdictional amount and though he would be justly entitled to more the defendant cannot remove." *St. Paul Mercury*, 303 U.S. at 294. The legal certainty test of *St. Paul Mercury* is applicable in two situations: (1) cases brought in federal court in which the plaintiff alleges damages in excess of the jurisdictional limit, and (2) cases brought in state court in which the plaintiff alleges damages in excess of the required jurisdictional minimum. The legal certainty test of *Burns* is merely the mirror image of the latter situation. Under the rule of *Burns* when a plaintiff sues for less than the federal jurisdictional amount in state court the removing defendant must prove to a legal certainty that the value of the claim is greater as the plaintiff has affirmatively "...resort[ed] to the expedient of suing for less...."

In *Poore v. American-Amicable Life Insurance Company of Texas*, the Eleventh Circuit concluded that an amended complaint which deleted previously made claims for punitive

damages and injunctive relief did not affect whether the jurisdictional amount in controversy had been satisfied at the time of removal. The *Poore* plaintiff had attempted to eliminate consideration of a previously made demand with the amendment. The holding in *Poore* is unremarkable. *Poore* holds that a district court exceeds its authority under § 1447(c) by relying on a post-removal amendment to the complaint in determining the amount in controversy. *Poore* does not in any way alter the burden of proof under *Burns* or *St. Paul Mercury Indem. Co.* The question is the amount in controversy at the time of removal. It is important to note that above all else *Burns* and *St. Paul* impose evidentiary burdens. When a plaintiff does not clearly and expressly sue for less than the jurisdictional amount, the defendants must prove by a preponderance of the evidence that the jurisdictional requirement has been met. *Tapscott v. M.S. Dealer Service Corp.*, 77 F.3d 1358 (11th Cir. 1996), *abrogated on other grounds, Cohen v. Office Depot*, 204 F.3d 1059 (11th Cir. 2000). The burden is less than that under *Burns* as plaintiff is not entitled to a presumption that her assessment of the case was made in such a manner as to require satisfaction of a stringent burden of proof. When, as here, the demand is ambiguous, jurisdiction is present when it is more likely than not true that the value of the case exceeds $75,000. In *Sierminski v. TranSouth Financial Corporation*, 216 F.3d 945 (11th Cir. 2000). The Eleventh Circuit has specifically directed district courts to consider evidence received after removal to determine whether the jurisdictional amount was satisfied at the time of removal. The court noted that the jurisdictional facts that support removal must be judged at the time of removal and post-petition affidavits are allowable only if relevant to that period. Ms. Hatcher's belief that the court lacks jurisdiction to authorize such discovery is quite simply wrong.

The ad damnun clause, despite plaintiff's assertions to the contrary, certainly suggests that plaintiff seeks damages in excess of $75,000. Consistent with the rules of *Tapscott, Poore* and *Sierminski* plaintiff can put the issue to rest by providing competent evidence on the very question

11

at issue. As correctly observed by the plaintiff, propriety of removal must be assessed at the time of the removal. There is no question that the Eleventh Circuit expressly requires district courts to consider additional evidence on the propriety of removal at the time the case appeared here in the Northern District of Alabama. Unlike the plaintiff in *Burns* the complaint of the plaintiff in this action is not an expression that the value of the law suit does not exceed $60,000 but, rather, suggests that plaintiff may seek more than $700,000 from a corporation and individual defendants. If that is not so, plaintiff can say so. If plaintiff says so, that evidence may be considered. The *Burns'* holding rested on the assumption that plaintiff's counsel has assessed the case and <u>clearly</u> determined the value at less than the jurisdictional amount. The ruling was dependent upon the ethical assumption that counsel would not allege one thing and mean another.

FRAUDULENT JOINDER

It is well-settled that the defendant, as the removing party, has the burden of establishing federal jurisdiction. *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996). Diversity jurisdiction under 28 U.S.C. § 1332 requires complete diversity "... every plaintiff must be diverse from every defendant." *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1359 (11th Cir. 1996). All doubts [and uncertainties] about federal court jurisdiction must be resolved in favor of remand to state court. *Burns v. Windsor Insurance Company*, 31 F.3d at 1095. As the Supreme Court has long recognized, a defendant's "right of removal cannot be defeated by fraudulent joinder of a resident defendant having no real connection with the controversy." *Wilson v. Republic Iron and Steel Company*, 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921). The burden of proving fraudulent joinder rests with the defendants as the removing party. *Coker v. AMOCO Oil*, 709 F.2d 1433, 1440 (11th Cir. 1983). In addressing fraudulent joinder of a non-diverse defendant courts may consider both affidavits and deposition excerpts. *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553,

12

1561 (11th Cir. 1989); *Coker*, 709 F.2d at 1440. The filing of frivolous or otherwise illegitimate claim against a non-diverse defendant solely to prevent removal is fraudulent joinder. *Tetter v. FMC Corp.*, 590 F.2d 115, 117 (5th Cir. 1979).

A reading of the complaint filed by Ms. Hatcher fails to reveal any allegation of any specific act on the part of any identified individual defendant involving the plaintiff. It is true that if a complaint states an arguable cause of action against a resident defendant, diversity jurisdiction is not present. *Crowe v. Coleman*, 113 F.3d 1536 (11th Cir. 1997). In its present posture, however, the complaint here clearly could be read to fraudulently state a jurisdictional fact; that is, that there was some conduct on the part of an individual defendant which affected the plaintiff.[6]

Plaintiff may of course pretermit jurisdictional discovery by simply averring that she does not seek total damages in excess of $75,000. Contrary to the plaintiff's understanding of removal jurisdiction, such a declaration is a clarification of her otherwise ambiguous demand. Such a clarification is permitted, if not recommended, by the Eleventh Circuit. She may also reveal the identity of the defendants with whom she has had dealings which in turn give rise to the law suit.

The plaintiff may submit individual clarification not later than twenty (20) days of the date of the entry this order. In the event that the plaintiff elects not to do so, discovery may be had from the plaintiff as to which if any of the individually named defendants is alleged to have

---

[6]    It must be noted that despite the references to class allegations in the complaint, plaintiff has not identified any act on the part of any individual defendant which would give rise to a cause of action. A plaintiff may not merely list a number of Alabama citizens employed by a particular company and aver that one of them must have done something wrong at some period of time and that if and when it is discovered that they have, a factual basis for the allegation will follow. Rule 8 requires more. The requirements of Rule 11 obligate plaintiff to identify the basis upon which she makes her allegations against the named individual defendants. She has never said that she purchased a policy from any of the named defendants. She has not said that she was misled by any of the named defendants. She has not said that she acted in reliance upon the representation of any individual defendant. She has not even said she had any dealings or contact with any of the named defendants. It would seem unlikely that she purchased only two insurance policies but those transactions involved eleven people.

committed the acts described in her complaint. The defendants may discover from the plaintiff her understanding of her damages and the amount she seeks from individual defendants. In the event a separate scheduling order is required by this court, one will be entered. Discovery should be commenced in time to be completed not later than December 11, 2000. In the event the plaintiff's seriously alleges that the defendants have engaged in an unwarranted attempt to seek "dismissal" of the law suit through improper means are correct, appropriate action will be taken.

Defendants' motion to defer ruling on plaintiff's remand motion pending discovery (document #22) is CONDITIONALLY GRANTED as set out above.    Plaintiff's motion for reconsideration (document #19) is DENIED.  Plaintiff's motion to strike (document #18) is DENIED.  Plaintiff's motion to remand is DEFERRED.  (Document #17).  Consideration of the motions to dismiss of Richard Prickett (document #12); Shawn Austin (document #11); and Jesse Cotten (document #10) will be DEFERRED. American General's motion for jurisdictional discovery (document #9) is GRANTED as set forth above.

DONE this the 17th day of October, 2000.

PAUL W. GREENE
UNITED STATES MAGISTRATE JUDGE

14



U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.

DEC 1 0 1999

BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

**S - 99    1 1 5 7**

LEOLA McNEIL, on her own behalf and on )
behalf of all others similarly situated, )
                                  )
             Plaintiff,         )
                                    )
vs.                                   )
                                    )
AMERICAN GENERAL LIFE & )
ACCIDENT INSURANCE COMPANY; )
INDEPENDENT LIFE AND ACCIDENT )
INSURANCE COMPANY,         )
                                    )
           Defendants.       )

CIVIL ACTION NO. _____

CLASS ACTION     **JUDGE NIXON**

**Jury Trial Requested**

## COMPLAINT

       Plaintiff Leola McNeil brings this action individually and on behalf of the class of persons

defined below against American General Life & Accident Insurance Company and Independent Life

and Accident Insurance Company, based upon knowledge as to herself and her own acts and

otherwise upon information and belief, alleging as follows:

### I. JURISDICTIONAL ALLEGATIONS

     1.     Plaintiff Leola McNeil is a resident of the State of North Carolina.

     2.     Defendant American General Life Insurance Company ("American General"), is a

Tennessee corporation which conducts substantial business in the State of Tennessee. Defendant

Independent Life and Accident Insurance Company ("Independent") is a Florida corporation which

conducted substantial business in the State of Tennessee at all times material to this complaint.

     3.     American General acquired several life insurance companies which, before

acquisition, sold a substantial number of industrial life insurance policies. These companies include

but are not limited to Independent and Gulf Life Insurance Company. As the successor, parent

and/or surviving entity, American General is responsible for and has assumed the liabilities of these acquired companies. For the purpose of this Complaint, American General and those life insurance companies it has acquired which sold individual life insurance policies are referred to collectively as "American General."

4.    A substantial number of the events or omissions which gave rise to Plaintiff's claims took place in Davidson County, Tennessee.

5.    Federal jurisdiction exists with respect to the Federal claim pursuant to 28 U.S.C § 1331. The Court has supplemental jurisdiction of all remaining claims pursuant to 28 U.S.C. §1367.

## II. NATURE OF THE CASE

6.    This is a consumer class action seeking redress and injunctive relief for a nationwide fraudulent scheme and common course of conduct involving racial discrimination, uniformly deceptive sales practices, unconscionable conduct, overreaching, fraud and deception by American General and certain life insurance companies acquired by it relating to the marketing, sale and administration of so-called "industrial" life insurance policies. As used in this Complaint, the terms "Policies" and "Industrial Policies" refer to "industrial" life insurance policies (also known as "burial" or "flower" policies) marketed, sold, or administered by American General. (Copies of the policies are in the possession of the defendants and need not be attached hereto).

7.    This action is brought by Plaintiff as a class action on behalf of all African-American persons who have (or had at the time of the policy's termination) an ownership interest in one or more Industrial Policies issued, serviced or administered by American General, and who were harmed by the misconduct alleged herein (the "Class" or "Class Members").

8.    Plaintiff seeks injunctive, declaratory and equitable relief, compensatory damage and other remedies for American General's fraudulent, racially discriminatory and otherwis

2

unconscionable conduct in connection with the marketing, sale and administration of Industrial life insurance Policies sold to Plaintiff and Class Members.

9.    For decades, American General has engaged in a scheme in order to increase its own revenues and profitability to the detriment of its policy owners, by selling and administering Industrial life insurance Policies through uniformly misleading, deceptive and racially discriminatory sales and Policy administration practices.

10.    Industrial Policies typically have a face value of less than two thousand dollars ($2,000.00), and premium payments which are intentionally designed to seem relatively modest. These premiums are typically collected on a weekly or monthly basis by agents who call on the policyholders in person, a practice known is in the industry as servicing the Policies on a "debit basis."

11.    As part of its nationwide scheme, American General targeted low income, impoverished, unsophisticated and minority segments of the population and developed its industrial life insurance products for sale to these consumers. For many years, American General, pursuant to its own policies and procedures routinely, knowingly and intentionally charged African-American individuals more for these Policies than it charged similarly situated individuals of the Caucasian race. To the extent this corporate policy changed, if at all, African-Americans who purchased Industrial Policies before the time this discriminatory practice changed, continue to pay the premiums established under the discriminatory pricing policy. American General also, as part of its routine practice and procedures, prohibited its agents from selling ordinary life insurance policies to African-Americans. American General was motivated by discriminatory intent and continues to discriminate against African-Americans in the manner set forth below.

3

12    American General constructed the industrial Policies with a small face value and charged modest weekly or monthly premiums, often less than $1.00 per week. American General marketed these Policies through agents who were given exclusive territories, known as "debit routes." To effectuate the sale and administration of the Industrial Policies on a "debit" basis, American General agents would personally visit the homes of Class Members residing on their routes to collect the premiums and develop a personal relationship with the Class Member for the purpose of facilitating the sale of additional Policies in the future. American General trained its agents to market and sell these Policies as "burial" protection to manipulate the emotions of prospective policyholders by instilling in, or playing to, a sense of shame in leaving their loved ones without funds to pay for a funeral at the time of their death.

13.    American General's Industrial Policies targeted consumers who were unsophisticated with respect to insurance and who were economically vulnerable. In designing, marketing and selling these Policies, American General knew that it had targeted a disadvantaged segment of the population, one unsophisticated with respect to insurance and related financial dealings or affairs and ill-equipped to understand the unfamiliar and technical language of the Policies or the complex and sophisticated methods of determining premium payments. American General likewise knew that to these prospective and current policyholders the premiums appeared small and affordable, and that the death benefit appeared significant and attractive. At the same time American General knew, but never disclosed to Class Members, that over the normal life expectancy of the Class Members, the small premiums would in all likelihood far exceed the face value of the Policies.

14.    The Industrial Policies were intentionally designed by American General to create the illusion that they would provide valuable yet affordable death benefits. In reality, the American General Industrial Policies were dis-economic and unconscionable products that were calculated to

4

generate profits to American General and commissions to its agents -- with little attendant risk to American General -- and provided virtually nothing for the unsuspecting and vulnerable Class Members. The American General Industrial Policies were designed to accrue little, if any, cash value for the benefit of the Plaintiff and Class Members. Thus, unlike traditional participating whole life policies, policyholders would not receive a return of premium overpayments, when, as American General knew in designing and pricing the Policies, its actual experience factors were more favorable than assumed. Moreover, American General charged African-American buyers higher premiums or other charges for these Policies than it charged similarly-situated purchasers of Caucasian and other races without any rational or actuarial basis for doing so.

15.    Furthermore, unlike traditional participating whole life policies, the American General Industrial Policies did not provide increasing death benefits over the duration of the Policies, nor, in many instances, did the Industrial Policies endow by a date certain within the reasonably expected lifetime of the insured. At the same time, the premiums charged by American General were exorbitant in relation to the minimal death benefits actually afforded to Plaintiff and Class Members and the *de minimis* risk costs to American General. As a result, as American General knew, Plaintiff and Class Members were doomed to pay premiums over their anticipated life expectancy that would far exceed – by many multiples – the face value of the Policies.

16.    Given the design of the Industrial Policies -- including their relatively expensive unit premium charges, minimal non-increasing death benefits, anticipated mortality experience and low guaranteed interest rates -- American General knew that there was virtually no real transfer of risk to the Company and that any such *de minimis* risk would quickly dissipate during the duration of the Policies. As American General knew and expected, the Company's profits continued to grow and the *de minimis* (if any) risk to the Company quickly evaporated. The Company's profits continued

5

to expand over time, as mortality and interest experience improved and American General continued to collect premiums based on outdated and discriminatory pricing assumptions and without returning the improvements in actual experience to Plaintiff and Class Members.

17     Because the American General Industrial Policies do not accrue significant cash values and do not provide for increasing death benefits, they have little or no value to Class Members once the premiums paid exceed the death benefit or upon termination. As a consequence, Class Members are required to continue making premium payments long after the premiums exceed the face value of the Policies or face losing all of their paid premiums without receiving any meaningful corresponding cash value or death benefits.

18.     The unconscionable nature of the Industrial Policies was exacerbated by the manner in which American General marketed, trained its agents to sell and administered these inferior insurance products. Because American General performed no underwriting on prospective policyholders, the Industrial Policies were issued in very small face amounts, usually $2.000 or less. Rather than selling prospective policyholders a modest ordinary whole life policy -- which would have required underwriting but which also would have generated growing cash values for a relatively lower unit premium charge -- American General instead sold Class Members multiple Industrial Policies (often on the same day), convincing them to apply for numerous Industrial Policies covering themselves and other family members. American General trained its agents to sell multiple Policies where the purchaser had no demonstrable need for insurance and where multiple Policies were used to reach a cumulative total face amount which could have been achieved through the purchase of an ordinary life insurance policy.

6

19. American General knew that multiple sales were occurring through its established Home Office issuance and administrative procedures. Nevertheless, American General maintained and condoned this practice to realize the excessive profitability of the Industrial Policies.

20. In furtherance of its scheme and fraudulent course of conduct, American General deceived and induced Plaintiff and Class Members to purchase the Policies by preparing, approving and disseminating (directly and through its agents) false and misleading information and sales materials containing material misrepresentations and omissions of fact to Plaintiff and Class Members.

21. American General is a subsidiary of American General Corporation, a publically-traded corporation which is in the business of acquiring and "aggregating" or "consolidating" smaller life insurance companies. American General acquired Independent as part of a conscious strategy to capture the lucrative Industrial policy block of business and to wring enormous profits from it by eliminating or reducing expenses and further exploiting its financially disadvantaged Class Members. American General was motivated by its desire to increase its own profits and earnings and the trading price of its stock for the financial benefit of its high-ranking corporate executives, who reaped incentive-based compensation and stock options as part of their employment compensation.

22. After acquiring Independent, American General embarked on a course of conduct designed to increase its own profits at the expense of its policyholders. Consistent with its effort to increase profits and the value of its corporate parent's publicly traded stock, upon acquisition of Independent and other companies, American General knowingly and intentionally set out to cut the administration costs associated with the acquired Policies even when doing so worked to the detriment of Plaintiff and Class Members. To squeeze more profits from the Industrial block of business, among other things, American General curtailed the "debit" system and, instead, began

7

collect premiums through direct billing or direct deposit systems. This "debit basis" collection system, in place since the inception of certain Industrial Policies, was part of the course of dealing between Class Members and American General. American General priced the Policies assuming the sales and administrative expenses of the debit route personal service system but did not pass through to Plaintiff and Class Members the savings it realized by eliminating or curtailing that system.

23.    American General failed  to establish record keeping systems or policies and procedures to effectively administer the acquired block of Industrial Policies.  Thus, to reduce administration expenses and to lower claim payments, American General intentionally failed to monitor the payment status of its policyholders' accounts, failed to accurately record or account for premium payments received from policyholders, failed to provide policyholders with the proper and required notice of non-payment of premiums before forfeiture, and failed to establish adequate systems to locate, notify or pay beneficiaries, policyholders' estates or others who were entitled to receive death benefits under the Industrial Policies.

24    As a result, American General willfully, intentionally, and wrongfully caused or encouraged the lapse of many Industrial Policies by failing to properly credit premium payments, improperly altering established premium collection procedures, otherwise hindering the payment of premiums by Class Members and failing to provide them with proper notice of non-payment of premiums as required under the Policies.

25.    American General has routinely engaged in this course of conduct with respect to Policies on which the total of premiums paid far exceeds the face value of the Policy and has lapsed a substantial but as yet undetermined number of Policies on which the face value of the Policy has been greatly exceeded by the premium payments, thereby enabling American General to release and retain the reserves previously established with respect to such Policies.

8

26    American General systematically failed to pay death benefits that were due or should have become due to Class Members under the Industrial Policies. American General knew -- due to its own defective record-keeping practices and the vulnerable nature of its African-American policyholders -- that Class Members and their beneficiaries would be unlikely to discover that their premiums had been misapplied or converted, that their Policies had lapsed or that policy death benefits were due to them. On those occasions when aggrieved Class Members or their beneficiaries discovered such facts, American General denied coverage and/or refused to pay death benefits, knowing that Class Members would be unable to prove that they had paid required premiums or that their Policies were still in force. American General has improperly reaped millions of dollars in premiums and unpaid death benefits by virtue of its fraudulent, and overreaching policy administration practices. Furthermore, American General has failed to escheat to the appropriate state authorities the unclaimed values and death benefits as required under various state and federal laws, including state unclaimed property statutes.

27.    In furtherance of its nationwide scheme, American General has opposed the efforts of state insurance regulators and legislators to require American General to inform policyholders of the total amount of premiums that have been paid on Industrial Policies. Further, American General has intentionally refused, delayed, and avoided providing such information at the request of Class Members.

28.    American General's plan, scheme and nationwide common course of conduct was designed to and did induce thousands of existing and prospective policy owners to purchase Industrial life insurance Policies from American General. Plaintiff and Class Members have lost and/or face losing millions of dollars in premiums paid which exceed the face value of the Policies or which exceed a reasonable or appropriate total of premiums which should have been paid for their Policies

9

29    The sales practices described herein have been lucrative for American General. American General is believed to have earned many millions of dollars of premium income in excess of the face value of the Policies or in excess of a reasonable or appropriate total of premiums which should have been paid for the Industrial Policies which were sold to the unsuspecting Plaintiff and Class Members based upon the deceptive and unconscionable scheme and conduct described herein

30.    Life insurance premiums constitute  the consideration paid to an insurer for the issuance and delivery of a policy of life insurance.  Insurance premiums are determined by multiplication of the rate (or unit charge)  by the measure of exposure or amount of insurance provided in an insurance policy.

31.    Rate making is the process of establishing rates used in insurance to estimate the future costs associated with the transfer of risk.  Insurance rates are established by actuaries employed by life insurance companies, including American General.  Actuaries hold themselves out, and are held out by their employers, to be professionals charged with the duty to act in the public interest.  These actuaries are governed by the Actuarial Standards Board.

32.    The Actuarial Standards Board has promulgated Actuarial Standards of Practice which have been adopted by the American Academy of Actuaries.  The Actuarial Standards of Practice prohibit the establishment of rates for life insurance policies which are excessive and unfair. Accordingly, life insurance companies are limited to the establishment  and use of rates which allow the insurer only a "reasonable rate of return" on any life insurance product.

33.    The premiums established and charged to Plaintiff and the Class by American General for Industrial Policies are discriminatory, excessive, unfair, unconscionable, unlawful, unreasonable, violated the standards listed above, and were designed to and have yielded a rate of return on these life insurance products which is unreasonable.

10

### III. FACTS RELATING TO PLAINTIFF

34     Leola McNeil is an 86 year old matriarch who bore and raised 16 children and has more than 150 grandchildren. Mrs. McNeil is a longtime resident of Gastonia, North Carolina.

35     Years ago, Mrs. McNeil was approached by the first of many Independent agents, who solicited her to purchase Industrial Policies issued by Independent. In reliance on the common sales pitch, Mrs. McNeil purchased numerous Industrial Policies, each in minimal face amounts and each insuring certain aspects of the lives of her children and herself. Subsequently, Mrs. McNeil was solicited by other Independent agents who assumed the "debit" route in her community to purchase additional Independent Industrial Policies. Over a period of many years, Mrs. McNeil purchased at least a dozen separate Industrial Policies. A chart describing some of the Industrial Policies purchased by Mrs. McNeil is set forth below.

| Policy Number | Issue Date | Insured | Face Amount | Premium |
|---|---|---|---|---|
| 700197137A | 3/2/70 | Leola McNeil | $500 | $.94 per week |
| 760425191E | unknown | Catherine McNeil | unknown | $.50 per week |
| 770590517A | 10/24/77 | Catherine McNeil | $1,000 | $.63 per week |
| 770590517B | 10/24/77 | Catherine McNeil | $1,000 | $.63 per week |
| 770590517C | 10/24/77 | Catherine McNeil | $1,000 | $.63 per week |
| 770590517D | 10/24/77 | Catherine McNeil | $1,000 | $.63 per week |
| 770590517E | 10/24/77 | Catherine McNeil | $1,000 | $.63 per week |
| 770686102A | 12/2/77 | Leola McNeil | $500 | $1.43 per week |
| 770686097A | 12/19/77 | Richard McNeil | unknown | $.97 per week |
| 770686097C | 12/2/77 | Richard McNeil | $1,000 | $4.20 per month |
| 938394146A | 5/2/93 | Richard McNeil | $4,000 | $36.61 per month |

36.    Each of these Industrial Policies was sold and serviced by Independent on a debit arrangement, under which the agent personally collected premium payments during routine visits to Mrs. McNeil's home. For some Policies, Mrs. McNeil personally visited the local American General or Independent office to pay the required premiums. Payments were collected by the agent or a member of the local office staff, often in cash, and recorded on a debit register or tape. For many of these Policies Mrs. McNeil has paid far more in premiums than the face value of the policy. Also, each of these Policies has accumulated little, if any, cash value.

37.    Following the untimely death of one of her sons in 1993, an agent approached Mrs. McNeil. After advising Mrs. McNeil that her Policies needed to be reviewed, he took her original policy records. The agent placed Mrs. McNeil's Policies on a consolidated payment plan he called the "Family Plan." Mrs. McNeil is informed and believes that certain records relating to her Policies are in the exclusive custody and control of American General and may have been lost or destroyed.

## IV.  ALLEGATIONS REGARDING AMERICAN GENERAL'S FIDUCIARY DUTY AND RELATIONSHIP OF TRUST AND CONFIDENCE WITH POLICY OWNERS

38.    American General has repeatedly acknowledged and affirmed its relationship of trust and confidence with its policyholders, including Plaintiff and the Class defined herein.

39.    American General held and holds a relationship of trust and confidence with Plaintiff and Class Members as a result of the following:

a.    American General is an insurer which subjects American General to more stringent standards of conduct than those normally arising out of contract;

12

b.    American General cultivated a relationship of trust and confidence in Plaintiff and Class Members through its marketing and sales and "debit route" servicing of the Industrial Policies purchased by Plaintiff and Class Members;

c.    The Industrial Policies purchased by Plaintiff and Class Members were contracts of adhesion that were prepared by American General and were not subject to negotiation as Plaintiff and Class Members did not possess bargaining power equal to that of American General;

d.    American General and its agents held themselves out as highly-skilled insurance experts;

e.    Class Members often had prior relationships with American General, and American General trained and/or allowed its agents to abuse and manipulate those relationships to create trust and confidence in Plaintiff and Class members and used such trust and confidence to sell American General Industrial Policies rather than insurance products which were appropriate products for Plaintiff and Class Members; and

f.    American General knew or should have known that Plaintiff and Class Members were unsophisticated insurance consumers, ill-equipped to understand the unfamiliar and technical language of the Policies, or the complex and sophisticated methods of determining premium payments.

40.    Based on the foregoing, American General owed Plaintiff and Class Members certain fiduciary duties, including the duty not to discriminate, the duty of good faith and fair dealing, the duty of full and fair disclosure, and the duty of care arising out of its relationship with Plaintiff and Class Members.

13

41.    In addition to its duties derived from its relationship of trust and confidence, American General had an independent duty to disclose information to Plaintiff and Class Members by virtue of its special relationship with them.  American General had sole knowledge of, or access to, material facts including, but not limited  to:

    a.    the basis for calculation of the premium on its Industrial Policies,

    b.    the point at which the total of premiums paid would equal the face value of the policy in light of the time value of money and

    c.    the cost of the industrial insurance to American General which must be ascertained in order to calculate a reasonable rate of return to American General.

American General intentionally kept Plaintiff and Class Members uninformed of these material facts and capitalized on its sole possession of them by providing Plaintiff and Class Members with misleading policy sales materials and oral representations.

## V. FRAUDULENT CONCEALMENT AND TOLLING

42.    Throughout the Class Period, American General affirmatively and actively concealed its fraudulent design, marketing and administration of its Industrial Policies from Plaintiff and Class Members.  This fraudulent concealment began at the time the industrial life insurance policies were sold to Plaintiff and the Class and continued throughout the Class Period.  Despite exercising reasonable diligence, Plaintiff and Class Members could not discover, and were prevented from discovering, American General's wrongdoing.  American General knew and relied on Plaintiff's and Class Members' lack of sophistication to foist its dis-economic and fraudulently designed and priced Policies on them.

43.    To keep Plaintiff and Class Members from discovering its fraudulent policy design marketing and administration practices, American General engaged in a systematic effort to take

14

records from its policyholders and has systematically engaged in conduct designed to eliminate and confuse the administrative records of its policyholders. as more fully described above

44.    American General has uniformly refused to provide accurate policy information to its policyholders upon request, neglected or otherwise failed to pay valid claims on a systematic basis and to undertake affirmative steps to cause policyholders to lapse or otherwise terminate Policies without paying values due under the Policies for the purpose of concealing its fraudulent course of conduct from Plaintiff and the Class.

45.    Following the death of one of her children, an American General agent visited Ms. McNeil, put her on the "family" payment plan and took records and other information relating to her Industrial Policies with American General. This agent did so in accordance with American General's common course of conduct designed to hide information about its fraudulent design, marketing and administration of its Industrial Policies from Plaintiff and the Class.

46.    The running of the statute of limitations has been suspended with respect to any claims which Plaintiff or other Class Members have brought or could bring as a result of the unlawful and fraudulent concealment and course of conduct described herein. In addition, the plaintiff and the Class did not and could not have discovered their causes of action until the time noted below, thereby, tolling any statute of limitation. American General, through the various devices of concealment and secrecy described above, affirmatively and fraudulently concealed the existence of its unlawful product design, marketing and administration scheme and course of conduct from Plaintiff and Class Members. Plaintiff and Class Members had no knowledge of American General's scheme and unlawful conduct and either did not learn of, or the full extent of, American General's fraudulent course of conduct until the filing of this action.

## VI. CLASS ACTION ALLEGATIONS

47.    This case is brought as a class action under Rule 23 of the Federal Rules of Civil Procedure.  Plaintiff seeks certification of this action as a class action on behalf of all African-American persons who have (or had at the time of the Policy's termination), an ownership interest in one or more Industrial Policies issued, serviced or administered by or purchased from American General, and who were harmed by the conduct alleged herein (the "Class").  This case is properly brought as a class action under Rule 23, for the reasons set forth in the following paragraphs.

48.    This action is appropriate as a class action pursuant to Rule 23, since Plaintiff seeks injunctive relief and corresponding declaratory relief for the entire Class, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for American General.  Further, adjudications with respect to individual Class members would, as a practical matter, be dispositive of the interests of other Class Members who are not parties to the adjudication and may impair and impede their ability to protect their interests

49.    Plaintiff reasonably estimates the number of Class Members to exceed 10,000, based on the number of policies issued and outstanding by American General during the Class Period.  It is substantially difficult, inconvenient and impractical to join every proposed Class Member as parties Plaintiff in this action.  The identity of the Class Members is, or should be, known to American General though its company records.

50.    Each member of the proposed Class has an interest in the same issues of law and same issues of fact raised by the allegations of Plaintiff, which predominate over any issues affecting only individual Class Members.  The numerous and substantial questions of law and fact common to all Class Members include:

16

a.  Whether American General engaged in a systematic course of business which acted to deceive or mislead Plaintiff and Class Members and or to exact from Plaintiff and the Class an unreasonable price for its Industrial Policies by exploiting its position of superior knowledge;

b.  Whether American General discriminated against Class Members by charging them higher premiums for Industrial Policies than it charged similarly situated Caucasian or other races;

c.  Whether American General discontinued any such discriminatory premium pricing policies and practices, but continued to charge discriminatory rates to Plaintiff and the Class;

d.  Whether American General discriminated against Class Members by offering only substandard life insurance products to African-Americans;

e.  Whether American General discriminated against Class Members by unilaterally altering the debit system of collection and by failing to provide a premium rebate or reduction to reflect American General's improvements in experience factors for the Industrial Policies;

f.  Whether American General routinely engaged in fraudulent and deceptive acts and practices and courses of business in the sale of its Industrial Policies, overreached and otherwise took unfair advantage of its position relative to the Plaintiff and the Class;

g.  Whether American General routinely failed to disclose to Plaintiff and Class Members material information pertaining to the Industrial Policies such as the actuarial basis on which premiums would be calculated and the likelihood

17

that, during the policyholder's normal life expectancy premium payments would exceed the face value of the Policies or a reasonable amount of total premiums;

h.   Whether American General failed to supervise and train its agents, actuaries and other employees who engaged in the schemes described herein and failed to prevent its agents from violating applicable state insurance laws and regulations;

i.   Whether American General breached its contracts with Plaintiff and the Class by refusing or deliberately failing to credit premium payments to Industrial Policies in an effort to cause such Policies to lapse;

j.   Whether American General failed to adequately supervise, educate and train its agents regarding the terms of its policies, appropriate methods of sales presentations, creation of sales materials and information, and compliance with state and federal laws (including state insurance laws and regulations), and whether American General's failure to do so constituted a means by which American General engaged in the schemes described herein;

k.   Whether American General negligently hired, retained or promoted agents to sell Industrial Policies to Plaintiff and Class Members, when such agents engaged in the wrongful practices alleged herein;

l.   Whether American General engaged in a nationwide course of conduct in targeting the sale of industrial life insurance to an economically disadvantaged and unsophisticated segment of the population and marketed and sold such

18

Policies in a manner to induce the purchase of the Industrial Policies by Plaintiff and Class Members;

m.  Whether Plaintiff and Class Members have sustained damages, whether those damages can properly be calculated on a Class-wide basis, and, if so, the proper measure of such damages;

n.  Whether Plaintiff and Class Members are entitled to specific performance, injunctive relief or other equitable remedies against American General; and

o.  Whether Plaintiff and Class Members are entitled to an award of punitive damages against American General.

51.  As a victim of the alleged wrongdoing, Plaintiff has a genuine personal interest in the outcome of this action, typical of any other Class member.

52.  Plaintiff will adequately and thoroughly represent the interests of all members of the proposed Class, and has retained legal counsel experienced in class action litigation and willing to advance the costs necessary to prosecute such litigation.

53.  There is no conflict of interest between Plaintiff and any other member of the proposed Class.

54.  Plaintiff and her counsel have the resources and willingness to afford the best notice practicable under the circumstances of this class action to members of the proposed Class, in the form and manner prescribed in the discretion of the Court.

55.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent a class action, Class Members will continue to suffer damage and American General's violations of law will proceed without remedy while American General continues to retain the proceeds of its ill-gotten gains.

19

56.    Most individual Class Members have little ability to prosecute an individual action, due to the complexity of the issues involved in this litigation, the size and scope of American General's scheme, the significant costs attendant to litigation on this scale, and the comparatively small, although significant, damages suffered by individual Class Members.

57.    Certification of this action will result in an orderly and expeditious administration of Class claims. Economies of time, effort and expense will be fostered and uniformity of decisions will be insured.

58.    This action presents no difficulty that would impede its management by the Court as a class action and a class action is superior to other available methods for the fair and efficient adjudication of their claims. The benefit of class certification here outweighs any inefficiencies or other disadvantages that might result from certification.

59.    Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire class, on grounds generally applicable to the entire class, to require American General to reform or to specifically perform the Policies as represented and to disgorge all premium overcharges in excess of that rate which is actuarially proper for the cost of the death benefit and other values provided by the Policies and for premium overcharges based upon racially discriminatory premium pricing.

## COUNT I
### (Civil Rights Violations - 42 U.S.C. § 1981)

60.    Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 58 above as if fully set forth herein.

61.    Defendant intentionally discriminated against Plaintiff and Class Members by charging them higher premiums than those charged to similarly situated Caucasian and other races and by

20

instructing and training its agents not to offer or sell participating whole life or other reasonably priced policies to African-Americans

62.    By charging higher premiums to African-Americans and by instructing and training its agents not to offer or sell participating whole life or other reasonably priced policies to African-Americans, Defendants violated the rights of Plaintiff and Class Members to make and enforce contracts on the same terms as Caucasian or other races.

63.    Defendant's actions violated 42 U.S.C. § 1981, as well as the rights of Plaintiff and the Class under the Fifth, Thirteenth, and Fourteenth Amendments of the Constitution of the United States.

64.    Defendant damaged Plaintiff and Class Members because Plaintiff and the Class have suffered economic loss and mental anguish as a result of being overcharged by Defendant as a result of Defendant's illegal racial discrimination.

COUNT II
(Fraud)

65.    Plaintiff repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1 through 63 above as if fully set forth herein.

66.    American General in the course of its business or profession supplied information for the guidance of others in their business transactions, who were harmed by relying upon such information.    American General failed to exercise care and competence in obtaining and communicating the information which its recipients were justified in expecting.  The harm suffered was by the person and class of persons for whose guidance American General supplied the information, because of their justifiable reliance upon it in a transaction in which it was intended to influence their conduct.

21

67.    By knowingly and intentionally misrepresenting the economic benefits of its Industrial Policies, American General fraudulently induced Plaintiff and the Class Members to purchase those Policies

68.    The representations and omissions as detailed herein were false and misleading in that a reasonable prospective policyholder would have considered the information important in deciding whether to purchase an industrial life insurance policy from American General

69.    At the time American General made these representations as detailed herein, it knew such representations and omissions were false or believed them to be untrue. American General knew such information was material and knew or was reckless in not knowing of the information that was not disclosed.

70.    Plaintiff and Class Members had a right to rely on American General's representations and American General made the representations for the purpose of inducing Plaintiff's and Class Members' reliance and attendant purchase of Industrial Policies from American General.

71.    Plaintiff and the Class Members were ignorant of the falsity of American General's statements, believed them to be true and reasonably relied on their truth and accuracy. In reasonable reliance on American General's representations of material facts, and in ignorance of the true facts, Plaintiff and Class Members were induced to, and did, purchase Industrial Policies from American General. Had Plaintiff and the Class Members known of the true facts, they would not have done so.

72.    As a direct and proximate result of their actual or presumed reliance described above, Plaintiff and the Class Members have been harmed and are entitled to damages in an amount to be determined at trial.

73.    American General's fraudulent conduct was knowing, deliberate, wanton, willful, outrageous, malicious, undertaken in conscious disregard of, and with reckless indifference to,

22

Plaintiff's and the Class Members' interests, and otherwise of the character warranting the imposition of punitive or exemplary damages.

## COUNT III
### (Breach of Contract)

74    Plaintiff repeats, realleges and incorporates by reference, the allegations contained in Paragraphs 1 through 72 above as if fully set forth herein.

75.    American General contracted with Plaintiff and Class Members to provide "debit route" service to policyholders and to provide insurance on their lives.

76.    The personal collection of premiums and personal service were costs assumed in pricing the Policies and became part of the course of dealing between the parties.

77.    American General breached its contracts with Plaintiff and the Class by, *inter alia*, canceling its debit route collection methods, failing to account for payments received, failing to send appropriate lapse notices and failing to pay policy benefits upon demand.

78.    Each policy was valid and enforceable at the time of its breach. All conditions precedent to American General's liability under its standardized contracts of adhesion have been performed or have occurred, including the payment of all premiums necessary to keep the policy in effect.

79.    As a result of American General's material breaches of its policy contracts, Plaintiff and Class Members have been damaged in an amount to be determined at trial.

## COUNT IV
### (Breach of Fiduciary Duty)

80.    Plaintiff repeats, realleges and incorporates by reference, the allegations contained in Paragraphs 1 through 78 above as if fully set forth herein.

23

81.     American General is an insurance carrier. The life insurance business involves elements of public trust which subject American General to more stringent standards of conduct than those normally arising out of contract.

82.     In connection with the sales of Industrial Policies, American General agents, with the aid and/or under the direction of American General actuaries, officers, managers and other high-level personnel located at its headquarters and elsewhere, undertook to provide advice and counsel to American General policy owners on the subject of what would be in the policy owner's best interest with respect to the acquisition of Industrial life insurance coverage.

83.     American General and its agents held themselves out as highly skilled insurance experts, creating the image of insurance expertise, possessing the special knowledge and expertise needed to interpret and understand the mechanics of the Policies. American General encouraged Plaintiff and Class Members to rely on this special knowledge and expertise in purchasing the Policies, and counseled Plaintiff and Class Members concerning the insurance American General was selling.

84.     American General had superior knowledge to that of Plaintiff and Class Members concerning not only the insurance products available, but also whether industrial life insurance coverage was appropriate and to what extent the policyholder was at risk for paying more in premiums than the face value of the Policies or an amount which should have been paid based on sound actuarial principles and practices. The relationship between American General and Plaintiff and Class Members, was calculated and intended by American General to cause Plaintiff and Class Members to repose confidence and trust in American General.

24

85.    American General knew or should have known that Plaintiff and Class Members placed this confidence and trust in the Company and accepted the confidence and trust reposed in the Company by Plaintiff and Class Members.

86.    American General knew or should have known that Plaintiff and Class Members generally had no prior training, expertise or knowledge concerning insurance or scheduled personal property coverage and were unsophisticated insurance consumers ill-equipped to understand the unfamiliar and technical language of the Policies.  Plaintiff and Class Members relied solely upon the advice, recommendations and explanations of the Policies provided by American General.

87.    The Policies purchased by Plaintiff and Class Members were contracts of adhesion that were prepared by American General, were not subject to negotiation and Plaintiff and Class Members did not possess bargaining power equal to that of American General.

88.    Plaintiff and Class Members often had prior relationships with American General. American General and its agents manipulated such relationships to create trust and confidence in American General and to use such trust and confidence to sell the Industrial Policies.

89.    As alleged above, American General owed fiduciary duties to Plaintiff and Class Members to whom it sold and administered Industrial Policies.  American General specifically targeted individuals who were susceptible to its influence, deliberately undertook an on-going relationship in the establishment of debit routes and possessed superior knowledge and bargaining power regarding such Policies.

90.    The circumstances alleged above gave rise to a fiduciary obligation of American General to:

a.    make full and fair disclosure to Plaintiff and Class Members regarding the nature of the product being sold and the financial effect of the transaction on the customer;

b.    refrain from discrimination against African-Americans in the pricing, marketing, sale and administration of its Industrial Policies;

c.    provide any information necessary to make other representations made not misleading;

d.    cure any prior misrepresentations;

e.    advise Plaintiff and Class Members of the commissions collected by the agents as a result of the transaction and the sales load and administrative charges collected by American General;

f.    act in a way that was beneficial, and not detrimental, to Plaintiff and Class Members; and

g.    refrain from making statements or sales presentations which contained misrepresentations.

91.    American General owed to Plaintiff and Class Members a duty to refrain from self-dealing, a duty of loyalty, an overall duty not to take unfair advantage of them and a duty not to conceal from Plaintiff and Class Members facts which were pertinent and material to the sale of insurance to them. In executing the sales scheme described above, American General knowingly, recklessly, maliciously and with intent to defraud, concealed pertinent and material information from Plaintiff and Class Members in selling scheduled personal property coverage to them, warranting the imposition of punitive damages in an amount to be determined at trial.

92    Plaintiff and Class Members had a right to rely upon American General to disclose to them, and not to conceal from them, pertinent and material facts in connection with the sale of Policies to them  Plaintiff and Class Members did rely on American General which resulted in damages to them

## COUNT V

### (Assumpsit or Money Had and Received)

93.    Plaintiff repeats, realleges and incorporates by reference, allegations contained in Paragraphs 1 through 91 above, as if fully set forth herein.

94.    As a result of the conduct of American General outlined above, American General took advantage of its position relative to Plaintiff and the Class and exacted a greater price for its Industrial Policies than was fair and reasonable.  At all times in these transactions due to the superior knowledge of American General, Plaintiff and the Class had no meaningful choice or ability to negotiate the terms of the agreement.

95    The exaction by American General of the unreasonable premiums outlined above was achieved through imposition, imposture, fraud, deception, artifice, trickery, coercion, extortion and/or oppression.

96.    In equity and good conscience Plaintiff and the Class ought to have the relief they seek in this action, and American General ought not be permitted to retain it.

97.    By reason of the foregoing, Plaintiff and the Class have been damaged and seek return of all premium payments paid in excess of the face value of the Policies or in excess of what reasonably should have been paid based on sound actuarial principles and practices, considering the time value of money, in a specified amount to be determined at the trial in this action.

27

## COUNT VI

### (Declaratory and Injunctive Relief)

98.  Plaintiff repeats, realleges and incorporates by reference, the allegations contained in Paragraphs 1 through 96 above, as if fully set forth herein.

99.  As stated above, American General is permitted by law to establish rates and collect premiums only if those rates and premiums are not excessive and unreasonable.

100.  Plaintiff, for herself and on behalf of the Class, are in doubt as to policyowner rights under the Policies and seeks a declaration of the rights and liabilities of the parties, including a judgment declaring that American General must charge premiums for Industrial Policies which are reasonable and not excessive and which are designed to provide only a reasonable rate of return to American General. Plaintiff and the Class further seek a declaration that any policy provision which requires the payment of premiums beyond the point where premium payments exceed the face value of a policy or the amount that reasonably should have been paid considering the time value of money is unconscionable, unenforceable and a nullity.

101.  Plaintiff, for herself and on behalf of the Class, seeks injunctive relief enjoining American General from collecting premium payments on any policy where the premiums paid exceed the face value of the policy or the amount that reasonably should have been paid considering the time value of money. Plaintiff further seeks a mandatory injunction requiring American General to treat any policy for which premiums paid exceed the face value of the policy or the amount that reasonably should have been paid based on sound and proper actuarial principles as a paid up policy and to disgorge any and all premium over payments, considering the time value of money, made by Plaintiff and the Class.

102.  Plaintiff and Class Members have no adequate remedy at law.

28

103. By reason of the foregoing, Plaintiff and Class Members are entitled to declaratory and injunctive relief as set forth above.

## COUNT VII

### (Unjust Enrichment and Imposition of a Constructive Trust)

104. Plaintiff repeats, realleges and incorporates by reference, the allegations contained in Paragraphs 1 through 102 above, as if fully set forth herein.

105. As a result of the relationships between the parties and the misconduct by American General, a constructive trust should be established over the monies paid by Plaintiff and Class Members, as policy premiums, to the extent the total of those premiums exceed the face value of any policy given the time value of money or the amount which reasonably should have been paid based on sound and proper actuarial principles. Such monies are traceable to American General, which is the current possessor of such funds.

106. American General received from Class Members premiums payments which are excessive and unreasonable and are the result of overcharging and overreaching.

107. As a result, Plaintiff and the Class have conferred a benefit on American General, American General has knowledge of this benefit and has voluntarily accepted and retained the benefit conferred on it. American General will be unjustly enriched if it is allowed to retain such funds; therefore, a constructive trust should be imposed on all monies wrongfully obtained by American General.

108. Plaintiff and Class Members have no adequate remedy at law.

109. By reason of the foregoing, Plaintiff and Class Members have been irreparably harmed and are entitled to imposition of a constructive trust as set forth above.

29

## COUNT VIII

### (Improper Hiring, Supervision, Retention, and Failure to Monitor Actions of Agents)

110    Plaintiff repeats, realleges and incorporates by reference, Paragraphs 1 through 108 above as though fully set forth herein.

111.    At the time the acts and omissions complained of were performed, American General's agents, actuaries and employees were not competent, qualified or capable of protecting the interests of its customers in regard to Policies.

112.    American General knew or should have known that its agents, actuaries and employees were not acting in a competent, qualified or capable manner in connection with their dealings with Plaintiff and Class Members.

113.    American General has a duty to monitor and/or supervise the activities of its agents, actuaries and employees.

114    American General intentionally, knowingly, recklessly and/or negligently failed to monitor the actions of its agents, actuaries and employees, to train such personnel to refrain from racial discrimination, to properly handle the insurance interests of its customers and properly follow and/or apply its corporate rules, regulations, policies and procedures resulting in damage to Plaintiff and the Class including but not limited to racially discriminatory and unreasonable premiums, and the purchase of inappropriate policies.

115.    American General knew or should have known of the unfitness of its agents, actuaries and other employees engaged in the scheme described herein but nonetheless employed and continued to employ them.

30

116    American General authorized the wrongful acts and omissions of such corporate agents in issuing the Policies and/or collecting or establishing the premiums on same.

117.    American General ratified the wrongful acts and omissions of such corporate agents in issuing the Policies and collecting premiums on same.

118.    American General was aware of the unfitness of its agents to communicate the true nature and cost of the Industrial Policies to prospective policyholders.

119.    The acts and omissions of its corporate agents in marketing the Policies and establishing and collecting the of premiums on those Policies were calculated to and did benefit American General.

120.    As a proximate result of American General's acts and omissions, Plaintiff suffered economic loss.

WHEREFORE, Plaintiff demands judgment against American General for herself and Class Members as follows:

a.    An order confirming this action as a proper class action pursuant to Rule 23(a), (b)(2) and/or (b)(3);

b.    Awarding Plaintiff and the Class compensatory damages in an amount to be proven at trial for the wrongful acts complained of;

c.    Awarding Plaintiff and the Class punitive damages in an amount to be determined at trial for the wrongful acts complained of;

d.    Awarding Plaintiff and the Class their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

e.    Granting extraordinary equitable and/or injunctive relief as permitted by law or equity, including attaching, impounding or imposing a constructive trust upon, or otherwise

31

restricting, the proceeds of American General's ill-gotten funds to ensure Plaintiff and Class Members

have an effective remedy;

    f.  Granting the declaratory and injunctive relief described in Paragraphs 99 and

100 of Count VI, the Declaratory Judgment count; and

    g.  Granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

   Plaintiff, on behalf of herself and all others similarly situated, hereby demands a trial by jury

on all issues triable at law.

   Dated this _10_ day of December, 1999.

            Hal D. Hardin (BPR 3101)
            215 Third Avenue North
            Nashville, TN 37201
            Telephone: (615) 369-3377

            Van Burch (BPR 12874)
            57 Carriage Hill
            Signal Mountain, TN 37377
            Telephone: (423) 886-9736

            Andrew S. Friedman
            BONNETT, FAIRBOURN, FRIEDMAN
            & BALINT, P.C.
            4041 North Central Avenue, Suite 1100
            Phoenix, AZ 85012
            Telephone: (602) 274-1100

32

Joe R. Whatley, Jr.
WHATLEY DRAKE, L.L.C.
1100 Financial Center
505 20th Street North
Birmingham, Alabama 35203-4601
Telephone: (205) 328-9576


Herman Watson, Jr.
WATSON JIMMERSON, P.C.
200 Clinton Avenue West, Suite 800
P.O. Box 46
Huntsville, Alabama 35804
(256) 536-7423


Rebekah Keith
WATSON JIMMERSON, P.C.
200 Clinton Avenue West, Suite 800
P.O. Box 46
Huntsville, Alabama 35804
(256) 536-7423


Attorneys for Plaintiff

33

3D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **RUBY KENDRICK,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **CIVIL ACTION NO. 00-_____** |
| ) | |
| ) | |
| **AMERICAN GENERAL LIFE AND** ) | |
| **ACCIDENT INSURANCE COMPANY,** ) | |
| **JAMEY SIGGERS,** ) | |
| ) | |
| **Defendants.** ) | |

## AFFIDAVIT OF CLYDE SMITH IN SUPPORT OF
## AMERICAN GENERAL LIFE AND ACCIDENT INSURANCE COMPANY'S
## NOTICE OF REMOVAL

STATE OF TENNESSEE          )

COUNTY OF DAVIDSON          )

Before me, a notary public in and for said County and State, personally appeared Clyde Smith, who being by me duly sworn, deposes on oath and says:

1.     My name is Clyde Smith. I am over the age of twenty-one years. I have reviewed the documents referenced in this affidavit and am familiar with the relevant business records of American General Life and Accident Insurance Company ("American General"). I have personal knowledge of the facts contained in this affidavit.

2.     I am employed by American General as its Associate Actuary. I am a Fellow in the Society of Actuaries, a member of the American Academy of Actuaries, and an Enrolled Actuary under ERISA.

3.    I have reviewed the Original Complaint in the above referenced case and have

reviewed American General's records to identify the policy plans for the following policies:

    (a)    Policy 22-054A088272, issued 07-01-54, insured – Ruby D. Kendrick;

    (b)    Policy 22-054A088273, issued 07-01-54, insured – Ruby D. Kendrick;

    (c)    Policy 22-054A088274, issued 07-01-54, insured – Ruby D. Kendrick

    (d)    Policy 22-93G0553221, issued 11-01-93, insured – Ruby D. Kendrick.

4.    Based upon my review of American General's records of the policy plans for

these policies, policies 22-054A088274 and 22-93G0553221 were not issued with racially

distinct or racially discriminatory premiums nor were such premiums charged at any time

while coverage was provided under them.

5.    The following policies were issued over 20 years ago: 22-054A088272, 22-

054A088273, and 22-054A088274.

6.    The following policies have lapsed:

    (a)    Policy 22-054A088272 – lapsed as of 08-17-98 as withdrawal of unclaimed endowment;

    (b)    Policy 22-054A088273 – lapsed as of 06-24-98 as a cash surrender;

    (c)    Policy 22-054A088274 – lapsed as of 08-04-98;

    (d)    Policy 22-93G0553221 – lapsed as of 06-24-98 as a cash surrender;

7.    Of the policies listed in paragraph 4, policy 22-93G0553221 is the only

application that appears to have been taken by the agent named as a defendant in the complaint.

That application appears to have been taken by Jamey Siggers.

_Clyde Smith_
Clyde Smith

Sworn to and subscribed before me on this the _21st_ day of _November_, 2000.

_____
NOTARY PUBLIC

My Commission Expires JAN. 25, 2003

JOAN L. MORRISON
NOTARY PUBLIC
AT LARGE
DAVIDSON COUNTY, TN

3E

### Non-Wrongful Death Verdict List

- *Wooten v. Horace Mann Insurance Co. et al.*, June 25, 1999, Circuit Court of Perry County, CV-97-117.  Plaintiff alleged that insurance company misrepresented the terms of a life insurance policy.  Total verdict **$12,355,000.00**.

- *Thomas v. Fireman's Fund American Life Ins. Co., et al.*, May 10, 1999, Circuit Court of Jefferson County, CV-95-7797.  Plaintiff alleged misrepresentations regarding the replacement of existing policies and the accumulation of value in the insurance/retirement product that he purchased.  Total verdict **$3,220,000**.

- *Parker v. Life Insurance Company of Georgia, et al.*, November 20, 1998, Circuit Court of Macon County, CV-94-127.  Plaintiff alleged intentional misrepresentation and fraudulent suppression of material facts in the sale of life insurance policy.  Total verdict **$ 204,000.00**.

- *Hare v. Mutual Savings Life Insurance Company*, November, 1997, Circuit Court of Walker County, CV-94-529.  Plaintiff alleged fraud in the sale of an insurance policy. Total verdict **$3,500,000.00**.

- *Crocker v. Union Security Life Insurance Company*, August 15, 1997, Circuit Court of Choctaw County, CV-92-064. Plaintiff alleged fraud against credit life insurance company in the sale of life insurance policy.  Total verdict **$5,000,000.00**.  Remitted to **$2,000,000.00** and affirmed.

- *Slade v. State Farm Fire & Casualty Company*, February, 1997, Circuit Court of Montgomery County, CV95-458.  Plaintiff alleged insurance fraud and bad faith in denial of payment.  Total verdict **$970,350.00**.

- *Allums v. Foremost Insurance Company*, August, 1996, Circuit Court of Bullock County, CV-95-43-WHR.  Plaintiff alleged agent and insurer sold unnecessary insurance to justify higher rates.  Total verdict **$7,000,000.00**.

- *McQuiston v. Liberty National Life Ins. Co.*, June, 1996, Circuit Court of Chambers County, CV-94-234  Plaintiff alleged that agent changed applicant's prior medical history on application for life insurance and forged applicants name on altered applications.  Total verdict **$17,530,000.00**.

- *Barnes v. American General Life Assurance Co.*, April, 1996, Circuit Court of Mobile County, CV-94-3571-RLB.  Agent allegedly collected insurance premiums but allowed disabled insured's life insurance policy to lapse and forged documents to replace the policy.  Total verdict amount **$35,000,000.00**.

507258

- *Johnson v. Life Insurance Company of Georgia, Inc.*, June, 1994, Circuit Court of Mobile County, CV 93-969. Plaintiff sued her insurance company for fraud. Jury returned a verdict against the insurance company for **$15,000,000.00** in punitive damages and **$250,000.00** in compensatory damages.

- *Crocker v. Union Security Insurance Company*, February, 1994, Circuit Court of Choctaw County, CV 92-064. Plaintiff sued her insurance company for fraud. Jury returned a verdict against the insurance company for **$5,000,000.00**.

- *Carrier Express, Inc. v. Home Indemnity Company*, January, 1994, United States District Court for the Northern District of Alabama, CV 91-G-1972-S. Company sued insurance carrier for bad faith. Jury returned a verdict of **$4,812,500.00** in punitive damages and **$2,463,959.00** in compensatory damages.

- *Fenn v. Liberty Life Insurance Company*, August, 1994, Circuit Court of Barbour County, CV 93-49. Plaintiff sued his insurance company for fraud. Jury returned a verdict against the insurance company for **$2,500,000.00** in punitive damages.

- *Massey, et al v. Foremost Insurance Company, et al.*, June 1993, Circuit Court of Bullock County. Plaintiffs sued insurance company for fraud. Judy returned verdict against insurance company for **$15,000,000.00** in punitive damages.

- *McAllister v. Liberty National Life Insurance Company*, October, 1993, Circuit Court of Mobile County, CV 92-4085. Plaintiff sued her insurance company for fraud. Jury returned a verdict against the insurance company for **$1,000,000.00** in punitive damages.

- *Smith v. Crown Life Insurance Company*, May, 1993, Circuit Court of Mobile County, CV 91-2083. Plaintiff sued his insurance company for fraud. Jury returned a verdict against the insurance company for **$2,000,000.00** in punitive damages and **$2,000,000.00** in compensatory damages.

- *Foster v. Life Insurance Company of Georgia*, October, 1992, Circuit Court of Mobile County, CV 91-1534. Plaintiff sued her insurance company for fraud. Jury returned a verdict against the insurance company for **$1,000,000.00** in punitive damages and **$250,000.00** in compensatory damages.

- *Cooper and Associates v. Central Life Assur. Company*, June, 1992, Jefferson County Circuit Court, CV 87-503-168-MC. Insurance agents sued their former insurance company alleging fraud and breach of contract. Jury returned a verdict for **$2,200,000.00** in punitive damages and **$101,000.00** for compensatory damages.

507258

- *Allen v. Statesman National Life Insurance Company*, June, 1994, Circuit Court of Houston County, CV 93-196.  Plaintiff sued insurance company for bad faith.  Jury returned a total verdict of **$1,325,000.00** and a verdict of **$750,000.00** in punitive damages.

507258

3F

# United States Court of Appeals

## FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

JUL 14 1994

MIGUEL J. CORTEZ
CLERK

No. 93-6840
Non-Argument Calendar

D. C. Docket No. CV93-G-559-S

JAMES L. MASK,
MARY E. MASK,

Plaintiffs-Appellants,

versus

CHRYSLER CORPORATION,
ROEBUCK CHRYSLER-PLYMOUTH,
CAR CENTER, INC.,

Defendants-Appellees,

JOHN VICKERY,

Movant.

--------------------------

Appeal from the United States District Court
for the Northern District of Alabama

--------------------------

Before KRAVITCH, BIRCH and DUBINA, Circuit Judges.

### JUDGMENT

This cause came to be heard on the transcript of the record from the United States District Court for the Northern District of Alabama, and was taken under submission by the Court upon the record and briefs on file, pursuant to Eleventh Circuit Rule 34-3;

UPON CONSIDERATION WHEREOF, it is now hereby ordered and adjudged by this Court that the judgment of the said District Court in this cause be and the same is hereby AFFIRMED:

It is further ordered that plaintiffs-appellants pay defendants-appellees the costs on appeal to be taxed by the Clerk of this Court.

Entered: July 14, 1994
For the Court: Miguel J. Cortez, Clerk

By: _____
Deputy Clerk

ISSUED AS MANDATE: AUG 10 1994

# PERMANENT

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT



FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

JUL 1 4 1994

MIGUEL J. CORTEZ
CLERK

No. 93-6840
Non-Argument Calendar

D. C. Docket No. CV93-G-559-S

JAMES L. MASK,
MARY E. MASK,

Plaintiffs-Appellants,

versus

CHRYSLER CORPORATION,
ROEBUCK CHRYSLER-PLYMOUTH,
CAR CENTER, INC.,

Defendants-Appellees.

JOHN VICKERY,

Movant.

Appeal from the United States District Court
for the Northern District of Alabama

(July 14, 1994)

Before KRAVITCH, BIRCH and DUBINA, Circuit Judges.

PER CURIAM:

We affirm the judgment of the district court on the basis of the well-reasoned memorandum opinion of the district court entered on June 16, 1993.

AFFIRMED.