

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RUBY KENDRICK,                          )
                                        )
    Plaintiffs,                         )
                                        )
v.                                      )          CIVIL ACTION NO.
                                        )          CV-00-T-1633-E
AMERICAN GENERAL LIFE AND               )
ACCIDENT INSURANCE CO., et al.,         )
                                        )
    Defendants.                         )

## PLAINTIFF'S MOTION TO REMAND

COME NOW the Plaintiff in the above-styled cause who move this Court for an order, pursuant to 28 U.S.C. § 1447(c), remanding this cause to the Circuit Court for Chambers, Alabama. In support of this Motion to Remand, the Plaintiff relies upon the following:

    1.    Affidavit of the Plaintiff (Exhibit A);

    2.    Order from *Mattie Wright v. Metropolitan Life Insurance and Annuity Company*, CV-99-T-1241-N (Exhibit B);

    3.    Order from *Marshall, et al. v. American General Life & Accident Insurance Company, et al.*, CV-00-D-854-N (Exhibit C);

    4.    The Complaint in this action (Exhibit D);

    5.    Order from *Rogers v. Metropolitan Life Insurance and Annuity Company*, CV#: 00-T-294-E (M.D. Ala.) (Exhibit E);

    6.    Order from *Abston v. Congress Life Insurance Company, CV#: 97-1203-AH-C* (Exhibit F);

    7.    Policies in the settlement from the National Class Action styled case *McNeil, et al.*

*v. American General Life and Accident Insurance Company, et al.* (Exhibit G); and

8.      The brief included herein.

## I.      STATEMENT OF THE CASE

The Plaintiff in this action (hereinafter " Kendrick") filed this action on or about October 25,

2000 against the Defendants American General Life & Accident Insurance Company (hereinafter

"AG"), Independent Life & Accident Insurance Company (hereinafter "Independent") and

employees/agents Jamey Siggers (hereinafter "agent"). Thereafter, on or about November 29, 2000,

the Defendants filed this Notice of Removal. The basis of the Notice of Removal is that complete

diversity exists in this case due to the alleged fraudulent joinder of the individual agents.[1]

## II.     FACTUAL AND LEGAL CLAIMS OF THE COMPLAINT

In her Complaint, Kendrick states several causes of action against the Defendants as a result

of discriminatory and deceptive practices with respect to the sale of industrial insurance policies.

Specifically, Kendrick alleges that with regard to the forty-five policies she purchased, Kendrick,

who is African-American, was charged higher premiums than similarly situated Caucasians or white

Americans. As to the agent, Kendrick avers that said agent was either the selling and/or servicing

agent who collected premiums for each of these policies. The collection of these premiums was

undertaken through exclusive territories known as debit routes. (Exhibit D, p. 7.) The agent was

trained to personally visit the homes of the policy owners to collect the premiums and develop a

personal relationship with the policy owner. Many of these policies were sold by the agent as burial

---

[1]      It is undisputed that the individual agents are resident citizens of the state of
Alabama. Thus, in the event the Court determines that the Plaintiff has stated valid causes of
action which would allow them the possibility of prevailing against either of the resident agent
Defendants, then complete diversity would be destroyed and remand would be necessary.

2

protection in order to manipulate the emotions of respective policyholders, including Kendrick, by instilling in, or playing upon, a sense of shame in leaving their loved ones without the funds to pay for a funeral at the time of their death. At the time of the sale or collection of these premiums, it is alleged by Kendrick that the agent knew that the targeted and unsophisticated policyholders did not know that the small premiums would far exceed the face value of the policies over the normal life expectancy of the policyholders. Further, the agent took part in a plan or scheme to sell these policies at higher premiums to African-Americans and on no occasion undertook to explain to Kendrick or other African-Americans that this practice was, in fact, occurring.

Further, the agent knew that discriminatory mortality assumptions were deliberately included within the pricing for the premiums that the agent was collecting from Kendrick. However, the agent failed and/or refused to inform Kendrick at the time of the collection of said premiums that the pricing of this insurance involved discriminatory assumptions on the part of the Defendants. (Exhibit D, pp. 6-9.) In addition to the collection of discriminatory premiums, the individual agent also undertook to cause the lapse of many of these industrial policies by failing to properly credit premium payments when collections were made. This conduct on the part of the agent resulted in the lapse of many of Kendrick's policies. (Exhibit D, p. 9.)

As a result of the factual allegations enumerated above,[2] Kendrick has alleged the following legal causes of action against the agent: money had and received (Exhibit D, p. 11); fraud (Exhibit D, pp. 11-13); fraudulent suppression of material facts (Exhibit D., p. 14); conversion (Exhibit D,

_____

[2]    The above summary of factual allegations as to the agent Defendants is in no way exhaustive of all allegations made against these Defendants in the Complaint. In fact, the Complaint contains approximately six pages of factual averments, approximately five of which are dedicated solely to setting forth factual allegations to support the legal claims made against American General, Independent and the agent.

3

p. 15); breach of fiduciary duty (Exhibit D, p. 15); continuing misrepresentations and fraudulent suppression (Exhibit D, p. 17); and outrage (Exhibit D, p. 18). As to each and every one of the claims, Kendrick specifically avers that she had no knowledge of the Defendants' discriminatory schemes and unlawful conduct until she received a national class action notice in or about July of this year (Exhibit A). Prior to that, Kendrick totally disavows any knowledge of this conduct and, further, had not obtained any information which might have led to the discovery of this wrongdoing. (Id.)

### III.    REQUIREMENTS FOR ESTABLISHING JURISDICTION

In removing an action to federal court, the Defendants bear the burden of properly establishing federal jurisdiction. *Diaz v. Shepherd*, 85 F.3d 1502 (11th Cir. 1996). In the event Kendrick is able to raise any doubt with regard to the propriety of removal, then that doubt must be resolved in favor of remand. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941); *see also Diaz,* 85 F.3d at 1505. Moreover, "remand is favored where federal jurisdiction is not absolutely clear." *Lambert v. Mail Handlers Benefit Plan*, 886 F.Supp. 830, 832 (M.D. Ala. 1995). "Subject matter jurisdiction is an unwaivable *sine qua non* for the exercise of federal judicial power. Whether raised by the litigants or not, the federal courts, including appellate courts, are duty bound to determine jurisdiction and dismiss [or remand] any case in which it is found to be wanting." *Eagerton v. Valuations, Inc.*, 698 F.2d 1115, 1118 (11th Cir. 1983).

Given that the Defendants have raised the issue of fraudulent joinder, it is the burden of these Defendants to establish that there is "no possibility that the Plaintiff can establish a cause of action against the resident Defendant. . . ." *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989). This burden has been described as "a heavy one." *Id.* The standard governing the

4

propriety of removal with regard to fraudulent joinder was properly stated in *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1989):

> If there is a possibility that a state court would find that the Complaint states a cause of action against any one of the resident Defendants, the federal court must find that the joinder is proper and remand the case to the state court.

The U. S. District Court for the Middle District of Alabama further defined a Defendant's burden of demonstrating fraudulent joinder in *Bromberg v. Metropolitan Life Ins. Co.*, 50 F.Supp.2d 1208, 1213 (M.D. Ala. 1999) and stated the same as follows:

> The fact that the Plaintiffs may not ultimately prevail against the individual Defendants because of an insufficient causal link between the Defendant's actions and the Plaintiffs' injuries does not mean that the Plaintiffs have not stated a cause of action for purposes of the fraudulent joinder analysis. In a fraudulent joinder inquiry, federal courts are not to weigh the merits of a Plaintiff's claim beyond determining whether it is an arguable one under state law.

As will be demonstrated below, the Defendants have wholly failed to satisfy their burden of demonstrating the propriety of this removal. In fact, the Defendants' arguments are not supported at law and border, if not cross, the line of being frivolous. For the reasons stated below, this cause is due to be remanded.

## IV.    INTRODUCTION TO ARGUMENTS FOR REMAND

Kendrick submits that the arguments set forth by the Defendants in support of their claims of fraudulent joinder are pure merits based arguments which far exceed that which is necessary in order to determine the existence of proper jurisdiction for this Court. In effect, the arguments advanced by the Defendants for removal are, in effect, motions for summary judgment that go to core issues existing in this case. As was noted in the *Bromberg, supra*, decision, such a merits based

5

analysis is unwarranted to the extent that the analysis goes beyond determining whether a state court could possibly find that the Complaint states a cause of action against anyone of the resident Defendants. Whether such possibility exists is the sole and exclusive issue now before this Court.

This Court, respectfully, should take note of the fact that Kendrick has made identical claims against American General and Independent Life as are made against the agent. It would be logically and legally impossible for this Court to determine that fraudulent joinder has occurred in this case without effectively ruling that Kendrick has no valid claims against either American General or Independent Life. In other words, the result sought by the Defendants to declare the fraudulent joinder of the agents would necessarily require the dismissal of all the Plaintiff's claims against every party.

This Court, in *Mattie Wright v. Metropolitan Life Insurance Co.,* CV#: 99-T-1241-N has considered and rejected similar arguments on fraudulent joinder issues. In that case, Metropolitan Life Insurance Company removed the action from state court on the basis that the agent was fraudulent joined. To support its argument of fraudulent joinder, Metropolitan Life argued that the Plaintiff's reliance with regard to her fraud claim was unreasonable as a matter of law and, further, that her claim was barred by the statute of limitations. If the Court in *Wright* had granted jurisdiction on the basis of fraudulent joinder, this would necessarily have dismissed all of the Plaintiff's claims against the agents and Metropolitan Life because the Plaintiff in *Wright* alleged identical causes of actions against the agents and the insurance company. Judge Thompson directly addressed the fatal flaw in this reasoning by stating as follows:

> Here, the contention - - the fact that the claims are so weak or even merit less reflects the right sought to join [the agent] with the specific intent to defeat removal jurisdiction - - is undermined by what would be the

6

additional fact that *Wright* brings the same weak or merit less claims against Metropolitan Life. In other words, *Wright* brings the same so called weak or merit less claims against both the resident Defendant [the agent] and a non-resident Defendant [Metropolitan Life]. Thus, the fact that *Wright's* case against Stinson may be weak or merit less tells us nothing regarding "why" a state resident was joined as a Defendant because *Wright's* case against Metropolitan Life is equally as weak or merit less. (Exhibit B).

As to the many legal causes of action raised by Kendrick, the question before the Court does not require any analysis of the merits of Kendrick's claims. Instead, this jurisdictional question may be answered by reciting, as to each claim, the following question: Is it possible that a state court judge could find that Kendrick has stated a colorable and/or recognized cause of action under Alabama Law against any one of the resident agent Defendants? If any such question is answered in the affirmative, then Kendrick's Motion to Remand must, necessarily, be granted. In addressing singularly the arguments advanced by the Defendants, the Plaintiff in no way acquiesce that the Defendants have made proper arguments to this Court. Instead, Kendrick is more than comfortable with the fact that they have stated claims which are well recognized under Alabama Law. However, out of an abundance of caution, Kendrick will address each of the arguments raised by the Defendants in support of their Notice of Removal.

### A.    **RULE OF REPOSE**

The Defendants argue that Kendrick's claims are time barred by the Rule of Repose. The Rule of Repose does not apply to the present action because Kendrick did not have actual nor constructive notice of the claim until the Summer of 2000. [3]

---

[3]    The Court should take notice that the Defendants make no allegation that the Plaintiff knew or should have known of the discriminatory pricing when advancing this argument for the Rule of Repose.

7

The Rule of Repose in Alabama has never existed so as to reward those Defendants who have wrongfully concealed tortious conduct for a period of twenty (20) years or more. Instead, it is readily evident that the purpose of the Rule of Repose is to bar those claims wherein the injured party acquiesced in some sense to the wrongdoing, yet delays in seeking relief. In this case, it is abundantly clear that Kendrick did not acquiesce in being charged higher premiums because of their skin color. This requirement of acquiescence has been recognized by both the Alabama Supreme Court and U.S. District Courts within the State of Alabama. As far back as 1917, the Alabama Supreme Court has held that the Rule of Repose involves "primarily a question of acquiescence" wherein the injured party manifests a distinct want of diligence in pursuing a known claim. See *Veitch v. Woodward Iron Co.*, 200 Ala. 358, 76 So.2d 124, 129 (1917). Some eighty (80) years later, the Alabama Supreme Court again recognized that any Rule of Repose must be premised upon "at least constructive notice of a potential claim". *Oehmig v. Johnson*, 638 So.2d 846, 851 (Ala. 1994); see also *Davison v. Lowery*, 526 So.2d 2 (Ala. 1988).

This requirement of notice and a manifest want of diligence has been recognized in this Court. In *Murray v. Sevier*, 993 F. Supp. 1394 (M.D. Ala. 1997), Judge DeMent wrote that "while at first glance it appears that the Rule of Repose operates in a strictly mechanical fashion, there are certain qualifications imposed upon the rules operation." *Id* at p. 1401. In discussing this principal of law, Judge DeMent quoted *Oehmig, supra,* for the specific proposition that "the Rule of Repose cannot run until there is at least constructive notice of a potential claim." *Murray,* 933 F. Supp. at 1401.

There is no statutory Rule of Repose for the State of Alabama. Thus, as many Courts have recognized, any Rule of Repose in Alabama is a judicially created doctrine that is governed by the

8

common law. Accordingly, any application of the Alabama Rule of Repose must be governed by the common law which created and, subsequently, interpreted the rule. It is for this reason that the Defendants reliance upon *Moore v. Liberty National Insurance Company*, 108 F. Supp. 2d. 1266 (N.D. Ala. 2000) is misplaced. In that case, the Court addressed a Rule of Repose argument advanced by Liberty National in regards to the discriminatory pricing claims of the Plaintiff. In doing so, however, the Court failed to recognize or consider the clear exceptions to the application of the Rule of Repose, to wit: that the Rule does not begin to run until there has been at least constructive notice of the wrongdoing. Instead, the *Moore* Court simply applied the Rule of Repose to ban all claims of the Plaintiff arising more than twenty (20) years in the past.[4]    Accordingly, Kendrick respectfully suggests that the *Moore* decision should not be looked upon as persuasive authority in that the holding in *Moore* is in contravention to the Rule of Repose as is set forth within the common law of the State of Alabama.

### B.    PREVIOUS RULINGS OF THIS COURT

As was noted earlier, the Defendants Notice of Removal was filed on or about November 29, 2000. **It is interesting to note that the Defendants fail to cite or address a previous ruling from this district on the exact issues raised herein.** On August 30, 2000, in the case of *Marshall v. American General Life and Accident Insurance Company*, CV#: 00-D-854-N [5], Judge DeMent issued an Order remanding an identical case to Barbour County after holding that the Defendants had not

---

[4]    Kendrick is unsure as to whether the *Moore* Plaintiffs raised the "constructive notice" exception to the Rule of Repose in order for Judge Buttram to consider this requirement.

[5]    The Plaintiff alleged, against many of these same Defendants, that American General and Independent Life Insurance Companies charged unfair premiums based on race. The Defendants removed the case and alleged the resident Defendants were fraudulently joined on the same grounds as alleged in their Notice of Removal in this case.

met their heavy burden of proving fraudulent joinder. Judge DeMent reasoned that the record did

not demonstrate the complete absence of any possibility that the Plaintiffs could recover from even

one of the resident Defendants on at least one claim involving discriminatory premiums charged and

collected by the Defendants, American General and Independent Life. (Exhibit C).

As with *Marshall*, the Defendants in this cause have not met their heavy burden of

demonstrating that it is impossible for Kendrick to recover from even one of the resident Defendants.

Simply put, the record now before the Court does not support such a finding. In fact, the evidence

suggests that it is much more probable that the Plaintiff will be able to proceed with each and every

state law claim raised in his Complaint. Accordingly, the *Marshall* opinion should be looked upon

as controlling authority.

### C.     ALLEGED RUNNING OF THE STATUTE OF LIMITATIONS

The Defendants claim that the Plaintiff's statute of limitation claims have run as to all claims

raised by Kendrick. To support its statute of limitations arguments, the Defendants have given no

explanation whatsoever as to why they are entitled to prevail on this defense. Instead, the

Defendants have simply made conclusory statements that "any claim against the agent Defendants

is time barred." (Defendant's brief, p. 6). This conclusory style argument hardly satisfies the

Defendants burden of establishing the propriety of this removal. However, Kendrick has alleged

very specifically in their Complaint that she did not know, nor did she have reason to know, of the

Defendants discriminatory practices until the Summer of this year when they received Class Action

Notices. To support these factual allegations, certain of Kendrick's, have provided the Court with

sworn Affidavits wherein she reaffirms, under oath, that she did not know or have reason to know

of the discriminatory pricing until the Summer of this year.[6]  (Exhibit A)

Alabama Code § 6-2-3 (1975) states that a claim for fraud does not accrue "until the discovery by the aggrieved party of the fact constituting the fraud. . . ."  Thereafter, under Alabama Law, the aggrieved party has two (2) years in which to file suit.  The issue of when an aggrieved party discovered or should have discovered the existence of a fraud is a question of fact for the jury.  *Liberty National Life Insurance Company v. McAlister,* 675 So.2d 1292, 1297 (Ala. 1995).  The question as to whether or not the statute of limitations has run in a fraud case is to be decided as a matter of law only when it is demonstrated that the Plaintiff actually knew or should have known of facts that would have put a reasonable person on notice of the fraud.  *Foremost Insurance v. Parham,* 693 So.2d 409 (Ala. 1997).  Based upon these principals of law, as well as the allegations in Kendrick's Complaint and Affidavits, there can be absolutely no question but that Kendrick did not know they were being charged higher premiums because of the color of their skin.

As to the remaining claims of Kendrick for breach of contract, conversion, money had and received, etc., those claims are not voided by the statute of limitations in light of the allegation that those wrongs continued up through and including a time within two (2) years from the filing of this Complaint.  More particularly, the Plaintiff would have suffered an additional and separate wrong and, therefore, legal injury on each and every occasion in which the Defendants obtained premium payments from Kendrick for the policies at issue.  Accordingly, any non-fraud statute of limitations

---

[6]     It is interesting to note that the Defendants have not provided the Court with any document whatsoever from which the Defendants suggest the Plaintiff knew or should have known of the discriminatory pricing.  It is presumed by Kendrick that if such documents existed, they certainly would have been attached to the removal.  Consequently, the Court should look upon this failure to produce any such documents as substantive proof that the Defendants did not provide Kendrick with any writing so as to place them on notice of this discriminatory pricing.

with respect to the agent's conduct would not run until the Summer of 2002, as said agent concealed the wrongful nature of his conduct from Kendrick who, in turn, did not discover said wrongdoing until the Summer of 2000.

The fallacy of the Defendants argument is revealed from the fact that the removing Defendants do not argue that the statute of limitations has run as to them, as opposed to the agent. If the statute of limitations has run as to the agent Defendants, certainly the same would be true for the Defendants American General and Independent Life. Yet, said Defendants have failed to make mention a dispositive defense that is, allegedly, in their favor. It is totally inconsistent for the Defendants American General and Independent Life to argue that fraudulent joinder exists as to the agents due to statute of limitations reasons, and make no mention of the alleged availability of those defenses as to themselves. The obvious reason for this is that these Defendants totally realize that the defense of statute of limitations requires a merits based analysis, which goes beyond the threshold jurisdictional agreement raised by the removal and this Motion to Remand.[7]

### D.    ALLEGED LACK OF DUTY TO COMMUNICATE

The Defendants further argue that Kendrick can not establish any duty by or between the agent and Kendrick, particularly with regard to disclosure of discriminatory pricing. The Defendants would have this Court believe that they could institute a discriminatory practice and continue to charge unequal premiums simply because the Plaintiff is African American. Such an

---

[7]    In responding to statute of limitations arguments raised by the Defendants American General and Independent Life, Kendrick does not waive her claim that as to all fraud causes of action, the statute of limitations was tolled by way of the *McNeil v. American General Life and Accident Insurance Company* class action lawsuit filed in 1999. As support for this position, Kendrick refers the Court to Judge Myron H. Thompson's Order from *Rogers v. Metropolitan Life Insurance and Annuity Co., et al.* (Exhibit E).

assertion does not, however, rule out the "possibility" that Kendrick can establish such a duty on the part of the agent so as to defeat the Defendants claims of fraudulent joinder.

The facts of *Sperau v. Ford Motor Company,* 674 So.2d 24 (Ala. 1995) are directly applicable to the case at bar.  In *Sperau*, an African American purchased a dealership from Ford Motor Company and located the same in Selma, Alabama.  Ford Motor Company had initiated a Minority Dealer Program in the 1960's.  The purpose of the program, allegedly, was to recruit African Americans to become franchise dealers.  In order to measure the success of this program, Ford management presented what were termed Equal Opportunity Progress reports to Ford's Board of Directors as a means of describing progress made in regards to the minority dealer program.  It was undisputed that these reports demonstrated that the average return on investment for African American dealers was lower than the average return on investment for other Ford dealers.  Ford did not make this information available to the African American dealers.  This was true, even though Ford had predicted in the 1980's that losses would be greater for African American dealers until the same had time to gain retail experience.  As of 1989, two-thirds (2/3) of all African American Ford dealers were operating at a loss.  As part of his case, the Plaintiff maintained that Ford had a duty and obligation to disclose the actual profitability performance of African American dealers, including the failure rates of such dealers and other historical data.  After the jury returned a substantial jury verdict against the Defendants, the Supreme Court specifically addressed whether or not Ford had a duty and obligation to disclose this profitability information on what the Court termed "race-based" data.  The Court concluded that Ford <u>did</u> in fact have a duty to disclose this information.  Said duty arose as a result of what the Court termed a confidential relationship between Ford and the Plaintiff as a result of the fact that Ford had superior and historical knowledge regarding the expected

13

performance of his new dealers and, further, that Ford had sought out the Plaintiff as a dealer. Further, Ford represented to the Plaintiff that a large portion of its sales and profit forecast was reasonable and reliable, when Ford knew that African Americans were expected to be lost dealers. Thus, the Court held that "the evidence in this case supports Ford's duty to disclose." *Sperua,* at p. 34.[8]

The case relied upon by the Defendants to support its "no duty" argument is totally inapplicable to the facts of this case. In *State Farm Fire and Casualty Company v. Owen,* 729 So.2d 834 (Ala. 1998), the Plaintiff attempted to base a fraudulent suppression case on the fact that an insurance company did not disclose to her that premiums were based upon an appraised value of a ring, but any claim would be paid with only the replacement cost of the item in the event of a loss. The Alabama Supreme Court rejected such an assertion on the basis that it would be highly impractical for an insurance company to disclose to its customers all of its internal procedures, it's rate making process and all of it's business practices. It is clear, however, that the Court's decision in Owens was greatly influenced by the fact that the Plaintiff had been provided documents which clearly revealed that State Farm would only be paying the replacement cost in the event of a loss. Specifically, the Plaintiff in *Owen* signed an application which stated that "I understand that State Farm has the option of repairing or replacing the lost or damaged property and . . . I will be paid no more than the company's cost to replace the item." *Owens,* at p. 836. According to the Plaintiff, she

---

[8]    The *Sperau* Court set forth factors to consider in determining the existence of a confidential relationship; that is, the trust or confidence between the parties, the value of the particular fact, the relative knowledge and bargaining position of the parties and of the circumstances. More applicable to this case, however, is the factor described by *Sperau* that "if the Plaintiff is induced to take action that he otherwise would not have taken had there been full disclosure, the duty to disclose is more compelling. See *Sperau,* at p. 34.

did not read the application containing this information. Thus, the Plaintiff, in effect, was forced to argue that State Farm was guilty of fraudulent suppression in failing to reveal to her what was clearly demonstrated to her in the application for the policy itself. "Most important, Owens application clearly stated that in the event of a loss State Farm had the option to repair or replace Owens ring and that it would pay no more than its replacement cost." *Owen*, at p. 843. The Court determined this information as being "sufficient to alert Owen that in the event of a loss her options under the policy would be limited to receiving a replacement item or receiving it's replacement cost. . . ." *Id.*

The facts and circumstances of the case *sub judice* are clearly distinguishable from the facts and principals espoused in *Owen*. It is difficult at best to rationalize an alleged corollary between Owens and the case now before the Court. In this case, there is absolutely no evidence whatsoever, in any shape or form, which suggests that Kendrick knew that she was being charged a higher premium due to the color of her skin. Further, there is no evidence before the Court which suggests Kendrick was sophisticated enough so that she should have understood and known of the existence of the Defendants discriminatory pricing. To say that the Defendants had superior knowledge of the deceptive practices at issue is to state the obvious. Thus, under the rational and reasoning of *Sperau*, it is clear that Kendrick has validly stated a cause of action for fraudulent suppression against the agent.

At this point in time, it is again important to remember Kendrick is not obligated to demonstrate that she will prevail on this or any other issue. All that is required in order to defeat the Defendants arguments regarding fraudulent joinder is to demonstrate merely a possibility that Kendrick can allege a duty on the part of the agent to reveal this discriminatory pricing. While Kendrick is more than confident that she will be able to establish such a duty, this is not the question

before the Court.

Notwithstanding the above, a most compelling reason to establish a duty on the part of the agents to disclose the discriminatory nature of the premiums charged to Kendrick can be found in Alabama Code § 27-12-11. This section states, in pertinent part, as follows:

> No person shall make or permit any unfair discrimination between individuals of the same class an equal expectation of life and the rates charged for any contract of life insurance or of life annuity, or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the contract. [Emphasis Added]

This Alabama Law specifically states that an insurance company like American General or Independent cannot treat African Americans different than whites Nor can an agent "permit" this unfair discrimination to continue. This section places a statutory duty on the resident agents to prevent this unfair method of discrimination. Nevertheless, we now know that this practice was undertaken by American General and Independent back approximately in the 1940's. This practice was continued by the agents during their sale and servicing of the policies at issue such that they knowingly allowed and participated in unfair discrimination against Kendrick. Thus, the question becomes: Is it possible that a state court could find that Kendrick had stated a colorable cause of action for fraudulent suppression in light of § 27-12-11? There is not an Alabama Supreme Court decision rejecting the notion that this statute creates a duty on part of the resident Defendants which is actionable.

## E.  ALLEGED FAILURE TO PLEAD SPECIFIC FACTUAL ALLEGATIONS

Incredibly, the Defendants argue that Kendrick's Complaint does not include any specific allegations against the agent Defendants. The Defendants argue that the Complaint only alleges an

16

agency relationship between the agents and American General, followed by general allegations against "the Defendants". Simply put, this argument is untrue and is a misrepresentation of the contents of Kendrick's Complaint. As was noted earlier, the Complaint contains approximately five (5) full pages of factual allegations against the Defendants, most if not all of which are alleged directly against the agent. For example, Paragraph 15 explicitly states that the agent himself targeted minority and low income blacks for the sale of this insurance. Paragraph 16 includes specific allegations against the agents <u>alone</u> that they misrepresented to Kendrick that she was purchasing very valuable insurance protection in the most affordable way available to them. Interestingly, other than alleging purchase of insurance, there is no factual allegation against American General in this paragraph. Instead, <u>all</u> factual allegations are asserted against the resident agents, exclusively. In Paragraph 19, the resident agent is alleged to have decided to continue the concealment of American General's discriminatory pricing practices by failing and/or refusing to reveal that premiums charged to blacks were higher than premiums charged to whites. In Paragraph 20, Kendrick's Complaint specifically alleges that the premiums for these fraudulently sold policies were collected by the resident agents through exclusive territories known as debit routes. Further, the allegations in that paragraph include assertions that the agents sold the industrial policies as "burial" protection in order to play upon Kendrick's sense of shame and guilt. In Paragraph 27, the resident agents are specifically averred to have falsely credited premium payments on the industrial policies so as to cause the same to lapse in order to end the risk of American General for these policies. (Exhibit D)

Kendrick's Complaint far exceeds the requirements of ARCP 8 (a and e), as well as 9(b). Pursuant to these rules, Kendrick's statement of facts include clear and concise assertions made

17

directly against the agents. Further, all claims of fraud are specified with particularity, including the time, place and substance of the false representations and/or suppression. All of these allegations are made specifically against the resident agents.

In support of the argument that fraudulent joinder is demonstrated by Kendrick's alleged failure to plead specific facts as to the agent, the Defendants rely upon Magistrate Green's opinion from *Hatcher v. American General Life and Accident Company*, CV-00-PWG-2609-E. The differences between the *Hatcher* Opinion and the case *sub judice* are distinct and glaring. In no way does Kendrick's Complaint resemble that found in *Hatcher*, wherein the Magistrate held that the Complaint failed to reveal <u>any</u> allegation of any specific act on the part of any identified individual Defendant involving the Plaintiff. As is demonstrated above, the same certainly cannot be said regarding Kendrick's Complaint as almost every factual allegation set forth in the Complaint is alleged against the resident agent <u>and</u> tied directly to Kendrick.    For example, in *Hatcher,* the Magistrate discerned that the Plaintiff did not ever allege reliance upon the fraudulent representations, nor did she even allege that she had any dealings or contact with any of the named, resident Defendants. This is simply not true with the Complaint now before the Court. On its face, the Defendants reliance upon Hatcher must fail.

The Defendants reliance upon *Lyons v. American Tobacco Company*, 1997 West Law 809677 (S.D. Ala. 1997) and *Wakeland v. Brown and Williamson*, 996 F. Supp. 1213 (SD Ala. 1998) is misplaced at best. In *Lyons,* the Court held that the Plaintiffs' claims against the tobacco distributors would not support a cause of action given that the distributors were not involved in any way in either the manufacturing process or in any specific direct contact with the Plaintiffs. Similarly, the *Wakeland* case involved claims that tobacco distributors had made representations

18

about the effects of tobacco to the Plaintiff, when there were no allegations that the distributors ever had any direct contact whatsoever with the Plaintiff.

In the present case, Kendrick has specifically alleged direct and personal contact with the resident agent by and through the Defendants maintenance and establishment of a debit route system for the collection of premiums. Accordingly, the facts of the case *sub judice* are totally opposite of the *Lyons* and *Wakeland* decisions. In fact, it would be difficult at best for Kendrick to set forth a more definite and specific set of claims and allegations against the agent and link them more directly with Kendrick than were set forth in this Complaint.

### F.    CLAIMS FOR UNJUST ENRICHMENT AND MONEY HAD AND RECEIVED

These claims of Kendrick are equitable claims which occur when the donor of a benefit acts under a mistake of fact, or a misreliance on a right or duty, or when the recipient has engaged in unconscionable conduct, such as fraud, such that the wrongdoers are unjustly enriched. In *Jordan v. Mitchell,* So. 2d 453, 458 (Ala. Civ. App. 1997), the Alabama Supreme Court stated that claims based on the theories of unjust enrichment and money had and received are precluded only by proof that the Plaintiff voluntarily paid what he or she is seeking to recover. Said otherwise, to defeat these equitable claims, a Defendant must be able to demonstrate that the Plaintiff knowingly paid what he or she is then seeking to recover.

Under the facts and circumstances of this case, it is clear that Kendrick has alleged valid, colorable, equitable claims which are recognized by existing Alabama law. In essence, Kendrick has alleged that the agent Defendants collected discriminatory premiums for the policies at issue and, presumably, earned commissions on these higher premiums. Further, from the factual allegations

19

existing in the Complaint, Kendrick has specifically denied any knowledge or reason to know of the higher premiums. Thus, the agent could defeat these equitable claims only by showing that Kendrick voluntarily, and with knowledge, paid a higher premium because Kendrick was black. It is difficult, if not impossible, to imagine that Kendrick would volunteer for such treatment.

The cases cited and relied upon by the Defendants are inapposite to the issue now before the Court. In *Tyson and Arrington v. Thompson*, 195 Ala. 230 (1915), the Court found that the Plaintiffs' unjust enrichment and money had and received claims were barred by the existence of an express contract. In this case, there is no express, written contract by or between Kendrick and the agents. Thus, the ruling and rational from *Tyson and Arrington* relied upon by the Defendants is not applicable to this case.

### G.     AMOUNT IN CONTROVERSY

The Defendants summarily suggest that they have satisfied the amount in controversy requirement of Seventy Five Thousand Dollars ($75,000.00). To the contrary, Kendrick contends that the Defendants showing on this issue is insufficient to establish the propriety of this removal.

Kendrick concedes that the Complaint does not demand a specific dollar amount for judgment. Additionally, Kendrick concedes that the Complaint demands punitive damages. However, these two facts in and of themselves do not establish the requisite Seventy Five Thousand Dollars ($75,000.00) in order to satisfy the amount in controversy. Simply put, the standard of proof requires more than non-specific monetary demands and a request for punitive damages. This fatal lack of proof has been specifically recognized by Judge Howard of the United States District Court for the Southern District of Alabama. In *Abston v. Congress Life Insurance Company*, CV#: 97-1203-AH-C, Judge Howard stated as follows:

> While Alabama State Courts may be notorious for their excessive punitive damages awards, this fact alone cannot serve as proof to a legal certainty that the amount in controversy in this action exceeds the jurisdiction amount. If the Defendant could meet its heavy burden for removal by merely reciting past Alabama cases with high awards against the Defendant, every case with diverse parties against an insurance company brought in Alabama would automatically fall within federal diversity jurisdiction. The Court does not believe that Congress intended for federal jurisdiction to be so sweeping. (Exhibit F).

While Kendrick acknowledges that in *Abston* the Complaint specified no more than Seventy Four Thousand Dollars ($74,000.00), the rational of Judge Howard is equally applicable to this case. Simply put, the Defendants cannot satisfy their amount in controversy requirements by simply reciting that the Plaintiff has made a claim for an unspecified amount of damages, to include punitive damages.

## H.    AFFIDAVIT OF CLYDE SMITH

In support of it's removal, the Defendants have relied upon the Affidavit of Clyde Smith. Suffice it to say, the Court should be very skeptical of the veracity of this Affidavit in light of the fact that the policies which Mr. Smith says are race neutral are, by definition, included within those class of policies included within the National Class Action styled as *McNeil, et al. v. American General Life and Accident Insurance Company, Defendant* (Exhibit G). Therefore, either Mr. Smith is not being truthful as to the discriminatory nature of the premiums charged to Ruby Kendrick, or American General included types of policies in the National Class Action that are not based on discriminatory premiums. Such a position places the class members in an untenable position, that is: either they participate in the Class Action and have all claims related to what are alleged to be non-discriminatory policies dismissed, forever, or they could opt out and attempt to pursue a cause of action for what the Defendants alleged are non-discriminatory premiums. It is highly doubtful

21

indeed that American General would have included the very types of policies purchased by the Plaintiff in the definition of the "class" policies if no discriminatory premiums were charged on the policies.

In addition to the above, the Court need not consider the Affidavit of Mr. Smith on this issue of removal. As the Court is aware, no Defendant may come to Court and simply submit a "I didn't do it" Affidavit in order to complete diversity. If that were the case, there would never be any complete diversity, given that any Defendant could always create a sham Affidavit denying guilt. This principal relates to the true issue before the Court, to wit: not whether the Plaintiff can win her case, but whether she has possibly stated one or more causes of action against a resident Defendant. In the event the Court determines from the Plaintiff's Complaint that she has stated colorable causes of action against the Defendants, then remand is in order.

Mr. Smith's Affidavit also addresses the fact that various Plaintiff's policies have lapsed. Certainly, the Plaintiff disputes that fact in her Affidavit. (Exhibit A). Assuming this to be true, then this fact directly supports the allegations of the Plaintiff set forth in Paragraph 24 of the Complaint. In that paragraph, the Plaintiff clearly states that American General and it's resident agent, Jamey Siggers, entered into a course of conduct of wrongfully causing or encouraging the lapse of many Industrial Life policies in order to allow American General to avoid the risk on said policies. Thus, Mr. Smith's Affidavit, on this point, must be read to clearly support the factual allegations set forth by the Plaintiff. This alone is more than sufficient to defeat the Defendants argument of fraudulent joinder.

22

## V.    **CONCLUSION**

When a case is removed on the basis of diversity of citizenship under 28 USC § 1441 and 1332, the Defendant who removes the action has the burden of establishing the jurisdiction lies in the federal courts. *Alexander v. Electronic Data Systems,* 13 Fed.3d 940 (6th Cir. 1994). A removal under 28 USC § 1441(a) must be construed narrowly with all doubts concerning the Court's jurisdiction to be construed against the removing party and in favor of remand of the action. *Diaz v. Shepherd*, 85 Fed.3d 1502 (11th Cir. 1996) and *Breck v. Prudential Insurance Co. of America*, 845 Fed. Supp. 829 (M.D. Ala. 1993).

The Defendants basis for alleging fraudulent joinder of the resident agents requires a factual and legal analysis of the merits of the Plaintiff's claims. In essence, the Defendant has asked this Court to enter a summary judgment that would be dispositive, not only of the claims against the resident agents, but against all Defendants to this action. The Defendant has failed to meet the test applicable to determine whether fraudulent joinder has occurred. There is no clear and convincing evidence that the Plaintiff has no possibility of establishing a cause of action against the resident Defendants. *Cabelceta v. Standard Fruit Co.*, 883 Fed.2d 1553 (11th Cir. 1989); see also *Lane v. Champion International Corp.,* 827 Fed. Supp. 701 (M.D. Ala. 1993).

The Defendant has failed to prove by clear and convincing evidence that the resident Defendants were added in a fraudulent attempt to avoid this Court's jurisdiction. The exact opposite is true. These resident Defendants were at the heart of the wrongdoing practiced against the Plaintiff for many years. Unfortunately the Plaintiff had no knowledge of the wrongdoing until a national class action was filed against American General arising out of its discriminatory pricing and collection of premiums based on race.

23

As the Plaintiff has pointed out, there are many doubts about the jurisdiction of this Court in light of the claims made the Plaintiff. Resolving these doubts in the Plaintiff's favor (and in favor of remand), the Plaintiff respectfully ask this Court remand this action to the Circuit Court of Chambers County, Alabama from which it was improvidently removed.

Respectfully submitted,

DAVID M. COWAN,
Attorney for Plaintiff

**OF COUNSEL:**
**MANN & COWAN, P.C.**
Suite 601
2000-B SouthBridge Parkway
Birmingham, AL 35209
(205) 879-9661

24

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing pleading on counsel as follows by placing same in the U. S. Mail, properly addressed and first-class postage prepaid:

Christopher P. Turner, Esq.
P. O. Box 400
Abbeville, AL 36310

Lee M. Bains, Jr., Esq.
Michael D. Mulvaney, Esq.
J. Alan Baty, Esq.
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, AL 35203-2602

Robert S. W. Given, Esq.
BURR & FORMAN, L.L.P.
420 20th Street North
SouthTrust Tower, Suite 3100
Birmingham, AL 35203

This the 14 day of December, 2000.

_____
OF COUNSEL

25

9A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| **RUBY KENDRICK,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO.** |
| | ) | **CV-00-T-1633-E** |
| **AMERICAN GENERAL LIFE AND** | ) | |
| **ACCIDENT INSURANCE CO., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AFFIDAVIT OF RUBY KENDRICK

STATE OF ALABAMA          )

COUNTY OF _____ )

Before me, the undersigned notary public, in and for said state and county, personally appeared Ruby Kendrick, who being by me first duly sworn, deposes and says as follows:

1.      My name is Ruby Kendrick. I base this Affidavit on my personal knowledge of the events surrounding my purchase of and payment of premiums for those policies listed in *Ruby Kendrick v. American General Life and Accident Insurance Company*, CV-00-T-1633-E.

2.      For each of my policies listed in the Complaint, I either purchased that policy from or paid premiums for that policy to Jamey Siggers. At no time during the course of my dealings with these individuals did I know that I was being charged a higher premium because I was black. Further, I have never been provided any information which led me to believe or even suspect that I was being charged a higher premium for my policies because I was black. I did not know, nor did I have any reason to know that I was being charged a higher premium for my policies until I

received a class action notice in the summer of 2000. Prior to that time, I had no knowledge whatsoever of American General's, Independent Life's or the agent Jamey Siggers' conduct of charging and collecting higher premiums from black policyholders.

   3.  I h ave paid all premiums requested of me by my American General agents, including Jamey Siggers, for all of the policies in this case. Therefore, the policies are either paid up or have current premium payments.

   4.  I do hereby swear or affirm that the information contained in this Affidavit is true and correct to the best of my knowledge.

   Dated this _13th_ day of _Dec._ , 2000.

          _Ruby Kendrick_
          **RUBY KENDRICK**

STATE OF ALABAMA   )
COUNTY OF      )

Sworn to and subscribed before me this _13th_ day of _December_ 2000.

_____
NOTARY PUBLIC
My Commission Expires: _____ MY COMMISSION EXPIRES MARCH 19, 2001

2



07-JAN-00 FRI 02:43 PM    Case 3:05-cv-00762-CSC    Document 2-10    Filed 08/10/2005    Page 31 of 57    FAX NO.

P. 11

file

[ FILED

NOV 2 3 1999

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

MATTIE WRIGHT,                      )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )         CIVIL ACTION NO.
                                    )          99-T-1241-N
METROPOLITAN LIFE                   )
INSURANCE COMPANY, et al.,          )
                                    )
        Defendants.                 )
                                    )

## ORDER

Plaintiff Mattie Wright initially filed this lawsuit in the Circuit Court of Montgomery County, Alabama on September 8, 1999, alleging that defendants Metropolitan Life Insurance Company and Michael Stinson misrepresented to her that she was purchasing a life insurance policy with Metropolitan Life for which all premiums were paid from her existing two life policies, for which no out-of-pocket premiums would be required, and which provided a 'better deal' for her than her existing polices. Based on this general allegation, Wright charges Metropolitan Life

EOD ___11/23/99___

and Stinson with state-law claims for fraudulent and negligent misrepresentations and concealment, and she charges Metropolitan Life with state-law claims for negligent and wanton hiring, training, and supervision. On October 18, 1999, Metropolitan Life removed this lawsuit to federal court, basing removal on diversity-of-citizenship jurisdiction pursuant to 28 U.S.C.A. §§ 1332, 1441. This matter is now before the court on Wright's motion to remand, filed on November 3, 1999.

"Very early in the judicial history of this country, the Supreme Court established the rule of complete diversity of citizenship in Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L. Ed. 435 (1806). This rule requires that all plaintiffs and all defendants must be of different citizenships." Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1557 (11th Cir. 1989). Metropolitan Life is incorporated in and has its principal place of business in a State other than the State of Alabama. However, because Wright and Stinson are both citizens of the State of Alabama, complete diversity of citizenship is not

2

present in this case. Metropolitan Life contends that Wright fraudulently joined Stinson as a defendant in order to defeat diversity of citizenship.

The citizenship of a resident defendant fraudulently joined should not be considered by a court for the purpose of determining diversity jurisdiction. The removing party bears the burden of proving that the joinder of the resident defendant was fraudulent. See Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983). In order to establish fraudulent joinder, the removing party must show either "[1] that there is no possibility that the plaintiff would be able to establish a cause of action against the resident defendant in state court or [2] that there has been outright fraud in the plaintiff's pleading of jurisdictional facts." Id.; see also Cabalceta, 883 F.2d at 1561. Furthermore, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state

3

court." _Coker_, 709 F.2d at 1440-41. The court must evaluate all factual issues and questions of controlling substantive law in favor of the plaintiff. _See Cabalceta_, 883 F.2d at 1561.

Wright takes issue with Metropolitan Life's contention that Stinson has been fraudulently joined. Wright has not yet had a full opportunity to engage in discovery to prove her claims against Stinson. Moreover, she should not be unjustly cut off at this early stage from pursuit of possibly valid claims. The question then is how should the court assess factual allegations for fraudulent joinder when there has not been a full opportunity for discovery. "The court need not look far for an appropriate threshold standard. A party submitting a pleading must meet, at least, the requirements of Rule 11 of the Federal Rules of Civil Procedure." _Sellers v. Foremost Insurance Company_, 924 F. Supp. 1116, 1118 (M.D. Ala. 1996) (Thompson, J.).

With regard to factual allegations, Rule 11(b) provides, in part, that, "By presenting to the court ...

4

a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, ... the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Thus, Rule 11 recognizes, as the 1993 Advisory Committee Notes state, that "a litigant may have good reason to believe that a fact is true or false but may need discovery, formal or informal, from opposing parties or third persons to gather and confirm the evidentiary basis for the allegation." Nonetheless, as the Committee Notes further state, "Tolerance of factual contentions ... when specifically identified as made on information and belief does not relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances; it is not a license to join parties [or] make claims ... without any factual

basis or justification." Thus, Rule 11 requires that a litigant be able to provide some showing that "the allegations and other factual contentions have evidentiary support or ... are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery."

With regard to legal contentions, Rule 11(b) provides, in part, that, "By presenting to the court ... a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, ... the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Therefore, to block a fraudulent-joinder charge based on lack of legal support, a plaintiff need only show that her claim against a resident defendant is warranted by existing law or by a

nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law."

The court believes that, because a fraudulent-joinder charge based on statute of limitations raises a concern already addressed by Rule 11--that is, that a plaintiff may have good reason to believe, based on the facts (as known) and the law, that a limitations statute has not run but the plaintiff may need discovery to confirm the fact--Rule 11's standards should apply to such a charge. Therefore, to block a fraudulent-joinder charge based on statute of limitations, a plaintiff who has not been able to engage in full discovery must be able to provide some showing that her claim against the resident defendant has an evidentiary support both in fact and in law or is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

Applying these standards, the court concludes that Stinson has not been fraudulently joined as a defendant. The dispute between the parties centers on whether the claims against Stinson are time-barred because the point

in time in which Wright discovered or should have
discovered the alleged misrepresentations was, according
to Metropolitan Life and Stinson, more than two years ago.
In 1997, in Foremost Ins. Co. v. Parham, 693 So. 2d 409,
417 (Ala. 1997), the Alabama Supreme Court reaffirmed that
the two-year limitations period for fraud claims begins
when the alleged victim discovered or should have
discovered the fraud.  The appellate court also added,
however, that the duty placed in the victim to discover
the fraud would henceforth no longer be that of
"justifiable reliance" but rather would be what had been
the standard prior to 1989, that is, "reasonable
reliance." 693 So.2d at 421-22. While this court agrees
with the defendants that the decision of the Alabama
Supreme Court in Foremost poses a significant obstacle to
Wright's successful pursuit of her claims, the court
cannot conclude that that obstacle is insurmountable.

First, it must be remembered that the Foremost
decision is a relatively recent decision, and there has
not yet been a sufficient opportunity for the full

8

development of the nuances that will surely follow based on factual scenarios that may prove sufficiently compelling to warrant qualifications and exceptions to some of the sweeping legal statements in the opinion. To be sure, the Foremost decision reflected a return to the earlier law; but how that return will play out is uncertain. Second, the Foremost decision does not call for, as the defendants suggest, a blanket application of a two-year limitations period from when the fraud allegedly occurred. Under the "reasonable reliance" standard, articulated in Foremost, the factfinder is afforded "greater flexibility in determining the issue of reliance based on all of the circumstances surrounding a transaction, including the mental capacity, educational background, relative sophistication, and bargaining power of the parties." 693 So. 2d at 421 (emphasis added). And, of course, there is the very important factor of whether general circumstances, and in particular, the language in the insurance contract, put the alleged victim on notice of the fraud outside the limitations period.

9

All these factors have yet to be developed in this case, and, without their development, this court cannot conscientiously apply the Foremost standard here.

In addition and alternatively, it must be kept in mind that the issue before the court is fraudulent joinder, not mistaken joinder. See James F. Archibald III, Note, Reintroducing "Fraud" to the Doctrine of Fraudulent Joinder, 78 Va.L.Rev. 1377, 1398 (1992). The issue before the court is whether the plaintiff sought to join the resident defendant with the specific intent to defeat diversity jurisdiction. The fraudulent joinder test--whether a cause of action exists against the resident defendant--is nothing more than a rough proxy for this intent determination; the test obviates the need to look at the actual motive of the plaintiff or her attorney. However, where there are other circumstances that point away from the presence of intentional fraud, even in the face of a perhaps weak case against the resident defendant, these other circumstances should not be overlooked. The plaintiff's intent is not "irrelevant

10

to the fraudulent joinder inquiry; instead, de-emphasis on the issue of actual intent is a result of the difficulty inherent in ascertaining it." Id. at 1399.

Here, the contention--the fact that the claims are so weak or even meritless reflects that Wright sought to join Stinson with the specific intent to defeat removal jurisdiction--is undermined by what would be the additional fact that Wright brings the same weak or meritless claims against Metropolitan Life. In other words, Wright brings the same so-called weak or meritless claims against both a resident defendant (Stinson) and a non-resident defendant (Metropolitan Life). Thus, the fact that Wright's case against Stinson may be weak or meritless tells us nothing regarding "why" a state resident was joined as a defendant because Wright's case against Metropolitan Life is equally as weak or meritless.

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that the motion to remand, filed by plaintiff Mattie Wright on November 3, 1999, is granted and that this cause is remanded to the Circuit Court of Montgomery

11

County, Alabama, pursuant to 28 U.S.C.A. § 1447(c), for want of subject-matter jurisdiction.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 23rd day of November, 1999.


_____
MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE



[FILED

AUG 3 0 2000

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOHN EARL MARSHALL, ET AL.,     )
                                )
          Plaintiffs,           )
                                )
v.                              )     CIVIL ACTION NO. 00-D-854-N
                                )
AMERICAN GENERAL LIFE &         )
ACCIDENT INS. CO., ET AL.,      )
                                )
          Defendants.           )

## ORDER

Before the court is Plaintiffs' Motion To Remand (Doc. No. 20), filed July 20, 2000. Defendants oppose said Motion. Construing the facts in the light most favorable to Plaintiffs and having carefully considered the arguments and the record as a whole, the court finds that Plaintiffs' Motion To Remand is due to be granted. See Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989) (In examining whether a joinder is fraudulent, the court "should resolve all questions of fact and controlling law in favor of the plaintiff and can consider any submitted affidavits and/or deposition transcripts.").

First, the court finds that complete diversity is absent because Plaintiffs and seven of the Defendants are citizens of Alabama. Second, the court concludes that Defendants have not met their "heavy" burden of proving that the joinder of all seven Defendants is fraudulent. Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997). The record does not support a finding that

EOD  8·30·00

34

there is no possibility that Plaintiffs can recover from even one of the resident Defendants on at least one claim. See <u>Triggs v. John Crump Toyota, Inc.</u>, 154 F.3d 1284, 1287 (11th Cir. 1998) ("The plaintiff need not have a winning case against the allegedly fraudulent defendant; he [or she] need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate.") (emphasis in original); <u>see also</u> <u>Coker v. Amoco Oil Co.</u>, 709 F.2d 1433, 1440 (11th Cir. 1983); <u>Cabalceta v. Standard Fruit Co.</u>, 883 F.2d 1553, 1561 (11th Cir. 1989) (Joinder is fraudulent if there is "no possibility that the plaintiff can establish *any* cause of action against the resident defendant.") (emphasis added).

Accordingly, it is CONSIDERED and ORDERED that Plaintiffs' Motion To Remand be and the same is hereby GRANTED, and that this action be and the same is hereby REMANDED to the Circuit Court of Barbour County, Alabama, pursuant to 28 U.S.C. § 1447(c).

The Clerk of Court is DIRECTED to take all steps necessary to effectuate said remand.

DONE this the 30th day of August, 2000.

_____
UNITED STATES DISTRICT JUDGE

2



IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

**[FILED]**

APR 1 3 2000

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

MELLANEE J. ROGERS,              )
                                 )
        Plaintiff,               )
                                 )
    v.                           )    CIVIL ACTION NO. 00-T-294-E
                                 )
METROPOLITAN LIFE INSURANCE      )
AND ANNUITY COMPANY, et al.,     )
                                 )
        Defendants.              )

<u>ORDER</u>

This lawsuit, which was removed to this court based on diversity of citizenship, <u>see</u> 28 U.S.C.A. § 1332, is now before the court on plaintiff's motion to remand.  The court agrees with plaintiff that this case should be remanded to state court.  First, complete diversity is absent because both plaintiff and defendant Charlie Hardy are citizens of Alabama.  And second, the court concludes that resident-defendant Hardy has not been fraudulently joined.  The record does not support a finding that there is "no possibility" that plaintiff can recover from resident-defendant Hardy or that plaintiff has committed "outright fraud" in joining resident-defendant Hardy as a party.  <u>Coker v. Amoco Oil Co.</u>, 709 F.2d 1433, 1440 (11th Cir. 1983); <u>see also</u> <u>Cabalceta v. Standard Fruit Co.</u>, 883 F.2d 1553, 1561 (11th Cir. 1989); <u>Wright v. Metropolitan Life Ins. Co.</u>, 74 F. Supp. 2d 1150 (M.D. Ala. 1999) (Thompson, J.).  Plaintiff makes the 'colorable' argument, not previously resolved by a federal or state court, that, although Hardy was not a named defendant in the class-action proceeding, he

is a direct beneficiary of that proceeding--indeed, a beneficiary to the same extent as any named defendant--and, as a result, should be treated as such, with the limitations period for all related claims against him stayed pending the class-action proceeding.

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiff's motion to remand to state court, filed on March 21, 2000, is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Macon County, Alabama.

The clerk of the court is DIRECTED to take the appropriate steps to effect the remand.

DONE, this the 13+ day of April, 2000.

MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE



## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

U.S. DISTRICT COURT
SO. DIST. AL
MOBILE, AL 36652

Feb 1i  12 40 PM '98

FILED. . . . . 'S OFFICE

DAVID M. ABSTON,                    )
                                    )
     Plaintiff,                     )
                                    )       CIVIL ACTION NO. 97-1203-AH-C
v.                                  )
                                    )
CONGRESS LIFE INSURANCE             )
COMPANY,                            )       **RECEIVED**
                                    )
     Defendant.                     )       FEB 1 2 1998

### ORDER

This matter is before the Court on plaintiff's "Motion to Remand" [Doc. 7] in which

plaintiff moves the Court to remand this action to the Circuit Court of Choctaw County, Alabama.

Defendant opposes the motion. For the reasons that follow, the Court **GRANTS** plaintiff's

motion and **REMANDS** this action.

### DISCUSSION

Plaintiff filed suit against defendant in the Circuit Court of Choctaw County, Alabama on

November 10, 1997 alleging that plaintiff had an insurance policy with defendant on which

defendant had wrongfully refused to pay. Plaintiff included an *ad damnum* clause within his

complaint which states: "Plaintiff demands and will not accept more than SEVENTY FOUR

THOUSAND AND NO/100 ($74,000.00) DOLLARS compensatory and punitive damages, plus

interest and costs of court." Defendant removed the action to this Court on December 30, 1997

based upon diversity jurisdiction pursuant to 28 U.S.C. § 1332. The parties are diverse, and

defendant contends that the amount in controversy exceeds $75,000.00, exclusive of interests and

costs as required for diversity jurisdiction to be present.

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America*, 114 S. Ct. 1673 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* at 1675 (citations omitted). Moreover, "where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Therefore, the burden is on defendant to establish that the Court has jurisdiction to hear this action. When a complaint specifically seeks less than the jurisdictional amount of the federal courts, the defendant must prove to a legal certainty that the claim must exceed the jurisdictional amount to avoid remand. *Id.* The United States Court of Appeals for the Eleventh Circuit has explained that its adoption of the legal certainty standard does not mean that a removing defendant can never prevail in establishing removal jurisdiction when plaintiff seeks less than the jurisdictional amount. Instead, that court noted that "[a] defendant could remain in federal court if he showed that, if plaintiff prevails on liability, an award below the jurisdictional amount would be outside the range of permissible awards because the case is clearly worth more than [the jurisdictional amount]." *Id.* at 1096.

On January 7, 1998, plaintiff offered to settle this action for the sum of $25,000.00. (Defs' brf., Exh. A, [Doc. 10].) Defendant argues that, although plaintiff has offered to settle for less than the jurisdictional amount, "it naturally follows that plaintiffs [sic] expect to receive 'considerably more' at trial than the settlement offer." (Defs. brf., 3 [Doc. 10].) The Eleventh Circuit has explained, however, that when a plaintiff offers to settle a case for less than the jurisdictional amount, "[the] settlement offer, by itself, may not be determinative, [but] it counts

2

for something." *Id.* at 1097. The Court today finds that plaintiff's offer to settle for $25,000 does not support the defendant's contention that the amount in controversy must be more than $75,000. Instead, this offer indicates that an award below the jurisdictional amount would be permissible and that the case is not clearly worth more than plaintiff seeks in his complaint.

Also, in support of its opposition to plaintiff's motion, defendant cites a string of Alabama cases brought against out-of-state insurance companies where the plaintiffs were awarded amounts greatly in excess of the jurisdictional amount of this Court. Defendant then contends that "there is a substantial likelihood that the amount in controversy in the present action will exceed $75,000, even though the actual damages in this matter are less than $5,000.00." As the Eleventh Circuit has explained, however, "defendant, to establish removal jurisdiction, [i]s required to prove to a legal certainty that plaintiff, if []he prevail[s], w[ill] not recover below [the jurisdictional amount]. The possibility that plaintiff may in the future seek or recover more damages is insufficient to support federal jurisdiction now." *Id.*

While Alabama state courts may be notorious for their excessive, punitive damages awards, this fact alone cannot serve as proof to a legal certainty that the amount in controversy in this action exceeds the jurisdictional amount. If defendant could meet its heavy burden for removal by merely reciting past Alabama cases with high awards against a defendant, every case with diverse parties against an insurance company brought in Alabama would automatically fall within federal, diversity jurisdiction. The Court does not believe that Congress intended for federal jurisdiction to be so sweeping. Accordingly, the Court finds that defendant has failed to meet its heavy burden of proving to a legal certainty that the amount in controversy exceeds the jurisdictional amount of this Court.

3

## CONCLUSION

Based upon the foregoing, the Court **GRANTS** plaintiff's motion to remand and

**REMANDS** this action to the Circuit Court of Choctaw County, Alabama.

**DONE** this _11th_ day of February, 1998.

SENIOR UNITED STATES DISTRICT JUDGE

4



# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

LEOLA MCNEIL, QUEEN CRAWFORD, )
EVELYN HENRY, BESSIE JONES, MARY LEWIS, )
JOHN A. STRONG, EARTHER STRONG and )
MILDRED BUTLER, )
)
On Behalf of Themselves and All Others )
Similarly Situated, )
)
)
Plaintiffs, )
)
v. )    Case No. 3: 99-1157
)
)
AMERICAN GENERAL LIFE AND ACCIDENT )
INSURANCE COMPANY, )
)
)
Defendant. )

# NOTICE OF A PROPOSED SETTLEMENT
## OF A CLASS ACTION LAWSUIT

*This package is about a proposed settlement
of a lawsuit relating to insurance policies.
You may be entitled to receive a benefit from the settlement.*
***You have not been sued.***

## PLEASE READ THIS PACKAGE CAREFULLY

You got this package because you own, or used to own, a life insurance or health and accident policy from a company that is now owned by American General Life and Accident Insurance Company. People who own policies like yours brought a lawsuit about their policies in Court. Those people and the company have agreed to settle the lawsuit. If the Court approves the settlement and you stay in the lawsuit, you may get benefits from the settlement. The estimated value of the settlement benefits is $206 million.

You don't have to do anything if you want to be included in the settlement. If you do not want to be included in the settlement, you must mail a request to exclude yourself by August 24, 2000. If you want to be included in the settlement, but you object to any part of it, you must file your objection with the Court by August 24, 2000.

Questions? Call 1-800-835-4930 (or, if you use a TDD/TTY terminal for the hearing-impaired, call 1-877-477-0959). You can speak with an operator or plaintiffs' counsel at the number.

---



# PART — WHY YOU GOT THIS PACKAGE

| | |
|---|---|
| **Why did I get this package?** | You received this package because you may have bought a policy that is included in the proposed settlement. This notice tells you about the benefits you may receive, what to do if you don't want to participate in the settlement, and what to do if you want to object to any part of the settlement. |
| **What is the lawsuit about?** | The lawsuit makes a number of claims about policies like yours. A primary claim is that the company charged higher premiums on insurance policies when the person insured under the policy was African-American. Another claim is that the premiums on the policies were too high compared to the benefits provided. An additional claim is about the processing of certain death benefits. |
| **What if I have never heard of American General Life and Accident Insurance Company?** | You probably purchased your policy from another company that is now owned by American General Life and Accident Insurance Company. |

## PART 2: THE POLICIES IN THE SETTLEMENT

| | |
|---|---|
| **Is my policy included in the settlement?** | If you own, or used to own,<br><br>• an industrial or burial policy *or*<br><br>• life insurance with a death benefit of $2,000 or less *or*<br><br>• a health and accident insurance policy |

from any of the insurance companies that are now owned by American General Life and Accident Insurance Company, that policy is included in the settlement, *if*

• it was still providing coverage as of September 30, 1999, whether or *not* you were still paying premiums, *or*

• it is a policy that charged you higher rates because of the race of the insured, and it stopped providing coverage sometime between January 1, 1982 and September 30, 1999, either because the insured person died, the policy reached its maturity date or the policy lapsed *or*

• it is an industrial or burial policy that stopped providing coverage sometime between October 1, 1993 and September 30, 1999 either because the insured person died, the policy reached its maturity date or the policy lapsed.

**If you do not know whether or not your policy is included in the settlement, call 1-800-835-4930 (or, if you use a TDD/TTY terminal for the hearing-impaired, see page 11).**

*Page 3*

QUESTIONS? CALL 1-800-835-4930
IF YOU USE TDD/TTY, SEE PAGE 11 OF THIS NOTICE.