33

**33**

## IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

RUBY KENDRICK,                          )
                                        )
    Plaintiff,                          )
                                        )
vs.                                     )    CIVIL ACTION NO.
                                        )    CV-00-256
AMERICAN GENERAL LIFE AND               )
ACCIDENT INSURANCE COMPANY,             )
et al.,                                 )
                                        )
    Defendants.                         )

**FILED IN OFFICE THIS**

**OCT   9 2001**

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

### DEFENDANT AMERICAN GENERAL LIFE AND ACCIDENT INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Comes now Defendant American General Life And Accident Insurance Company (hereinafter "American General"), and moves this Honorable Court for judgment on the pleadings, pursuant to Ala. R. Civ. P. 12(c). As grounds for this Motion, American General states that a review of the pleadings filed in this case demonstrates that no genuine issue of material fact is presented that requires the introduction of proof. *See Ex parte Alfa Financial Corp., 762 So.2d 850 (Ala. 1999).* In support of this motion, American General relies upon the pleadings filed in this case and the arguments in support of this motion, submitted herewith. (*See* Exhibit A, Complaint; Exhibit B, Answer).

### I.  INTRODUCTION

This case is about alleged racial discrimination in the pricing of life insurance premiums. It arises out of Plaintiff's purchase of 3 life insurance policies in 1954. (Exhibit A, ¶ 13). Plaintiff alleges a broad range of claims, including claims that American General charged higher insurance

00711810.1

premiums to African-Americans than to whites and claims attacking the industrial life insurance product generally.

This case is not the first time a court in Alabama has addressed claims similar to the ones asserted by Plaintiff. **Recently, two other courts in Alabama dismissed cases virtually identical to this one in the pre-discovery stage.** The plaintiffs in those cases, like the Plaintiff here, alleged a host of fraud and other claims based on the company allegedly charging higher premiums to African-Americans than to similarly situated white persons. *See Ellen Moore v. Liberty National Life Ins. Co.*, 108 F. Supp. 2d 1266 (N.D. Ala. 2000) (Exhibit C hereto); *Walter Moore v. Liberty National Life Ins. Co.*, CV-00-306, Circuit Court of Dallas County, Alabama (Exhibit D hereto). The courts in those cases granted the defendants' dispositive motions, including a motion for judgment on the pleadings filed in *Ellen Moore*. American General respectfully requests that this Court follow the two other courts in Alabama that have addressed the specific issues raised by Plaintiff and grant American General's motion for judgment on the pleadings.

## II. UNDISPUTED FACTS

Based upon the pleadings of record, the following facts are not in dispute:

1. Plaintiff is an African-American resident of Chambers County, Alabama.

2. Defendant American General Life and Accident Insurance Company is an insurance company with its principal place of business in Nashville, Tennessee.

3. Plaintiff purchased 3 insurance policies from an American General company in 1954.

4. Plaintiff filed this action in the Circuit Court of Chambers County, Alabama on October 25, 2000.

### III.  ARGUMENT

**A.    Plaintiffs' Claims are Barred by the Rule of Repose.**

In her Complaint, Plaintiff generally makes two types of claims against American General: (1) claims alleging that American General improperly charged higher insurance premiums to African-Americans than to white individuals (the "racial discrimination" claims); and (2) claims attacking the industrial life insurance product generally (the "bad products" claims). (*See* Complaint).  Plaintiff asserts the following causes of action: unjust enrichment, money had and received, fraud, suppression, conversion, breach of fiduciary duty, and outrage. Plaintiff's various causes of action are barred, however, by Alabama's strict twenty-year Rule of Repose.

Plaintiff's claims arising from her policies purchased in 1954 are barred by Alabama's twenty-year absolute Rule of Repose.  All of Plaintiff's claims could have been brought when the relevant policies were first purchased and the allegedly discriminatory weekly premium was first collected.  Plaintiffs do not assert any claim arising from an insurance policy purchased during the twenty (20) year period preceding the filing of this civil action.  Therefore, the Plaintiff's claims relating to their policies are barred by the Rule of Repose.

The Eleventh Circuit recently explained the operation of Alabama's Rule of Repose:

> Alabama's rule of repose is similar to a statute of limitations but broader in its scope. *"[T]he only element of the rule of repose is time. It is not affected by the circumstances of the situation, by personal disabilities, or by whether prejudice has resulted or evidence obscured."* *Boshell v. Keith*, 418 So. 2d 89, 91 (Ala. 1982) (citations omitted). <u>The rule of repose operates as an absolute bar to claims that are not commenced within twenty years from the time they could have been.</u> *See id.* at 91.  As the Supreme Court of Alabama stated:
>
> > As a matter of public policy ... it has long been the settled policy of this State ... that antiquated demands

> will not be considered by the courts, and that, without
> regard to any statute of limitations, there must be a
> time beyond which human transactions will not be
> inquired into.

> *Snodgrass v. Snodgrass*, 176 Ala. 276, 58 So. 201, 201 (1912) (as
> quoted in *Boshell*, 418 So. 2d at 91).

*Spain v. Brown & Williamson Tobacco Corp.*, 230 F.3d 1300, 1307 (11ᵗʰ Cir. Oct. 18, 2000)

(emphasis added); *Moore v. Liberty National Life Insurance Company*, Case No. 00-14507 at 7 (11ᵗʰ

Cir. Sept. 28, 2001) ("Alabama's judicially created rule of repose serves to bar claims that arise out

of events that are more than twenty years old."). Similarly, the Alabama Supreme Court recently

stated:

> Since this Court decided *McArthur v. Carrie's Administrator*, 32 Ala.
> 75 (1858), Alabama has followed a rule of repose, or rule of
> prescription, of 20 years. This principle of repose is similar to a
> statute of limitations, but is not dependent upon a statute and is
> broader in scope than a statute of limitations. *See Boshell v. Keith*,
> 418 So.2d 89 (Ala. 1982).

*Rector v. Better Houses, Inc.*, 2001 WL 701876, *n.2 (Ala. June 22, 2001).

Alabama's Rule of Repose "is a judicially-created doctrine that provides the outer limits of

time within which an action may be maintained, regardless of whether that action is barred by the

statute of limitations." *Ellen Moore v. Liberty National*, 108 F. Supp. 2d 1266, 1274 (N.D. Ala.

2000); *see also Barrett v. Wedgeworth*, 518 So. 2d 1256, 1257 (Ala. 1987). The Rule of Repose is

"a substantive doctrine of the State, eliminating a cause of action, irrespective of its date of accrual."

*Ellen Moore v. Liberty National*, 108 F. Supp. 2d at 1275. The Rule of Repose "has only one

element – the passage of twenty years from the moment that the actions giving rise to the claim

occurred – and, if that time has elapsed, no claim can be pursued." *Id.* at 1275; *Moore v. Liberty*

*National*, Case No. 00-14507 at 7 (11th Cir. Sept. 28, 2001) ("Unlike a statute of limitations, the only

operative element of the rule of repose is time."); *see also, Tierce v. Ellis*, 624 So. 2d 553, 554 (Ala.

1993).

Alabama's Rule of Repose is intended to bar ancient, stale claims like Plaintiff's claims in

this case. The Alabama Supreme Court explained the rule as follows:

> Th[e] principle of repose or prescription is similar to a statute of
> limitations, but not dependent upon one, and broader in scope. It is
> a doctrine that operates in addition to laches. Unlike laches, however,
> the only element of the Rule of Repose is time. It is not affected by
> the circumstances of the situation, by personal disabilities, or by
> whether prejudice has resulted or evidence obscured. It operates as
> an absolute bar to claims that are unasserted for 20 years.

*Boshell v. Keith*, 418 So. 2d 89, 91 (Ala. 1982) (citations omitted). The rule of repose holding in

*Boshell* was recently cited with approval by the Alabama Supreme Court in *Rector v. Better Houses,*

*Inc.*, 2001 WL 701876 at n.2.   The rationale for this absolute bar to actions that are more than

twenty years old is "the settled policy of this state, as of others, that antiquated demands will not be

considered by the courts, and that, without regard to any statute of limitations, there must be a time

beyond which human transactions will not be inquired into." *Barrett v. Wedgeworth*, 518 So.2d

1256, 1257 (Ala. 1987), quoting *Snodgrass v. Snodgrass*, 58 So. 201, 202 (Ala. 1912); *see also,*

*Tierce v. Ellis*, 624 So. 2d at 554-55.  In a case involving claims of racial discrimination, the

Alabama Supreme Court discussed the absolute nature of the application of the Rule of Repose as

follows:

> In Alabama there is, in addition to the doctrine of laches, a rule of
> repose or prescription by which an action not instituted for more than
> 20 years is absolutely barred. . . . This rule is similar to, but broader
> than, a statute of limitations, and is not affected by it, nor dependent
> upon it. Its application is not affected by the circumstances of the

> situation, by whether prejudice has resulted, or whether evidence has become obscured, or by the status of the parties. . . . The only element of the rule is time. . . . In the instant case, the deprivation of Grubb's property right occurred more than a third of a century ago . . (Grubbs) is now absolutely barred by the rule of repose from asserting such claim.

*Grubbs*, 542 So.2d at 930-931.

Plaintiff simply cannot escape the preclusive effect of the twenty year Rule of Repose. Recently, two Alabama courts have concluded that the Rule of Repose bars claims substantially similar to those asserted by Plaintiffs. *See Ellen Moore v. Liberty National Life Ins. Co.*, 108 F. Supp. 2d 1266 (N.D. Ala. 2000) (Exhibit C hereto); *Walter Moore v. Liberty National Life Ins. Co.*, CV-00-306, Circuit Court of Dallas County, Alabama (Exhibit D hereto). Plaintiff's claims are similarly barred by the Rule of Repose.

The *Ellen Moore v. Liberty National* case is directly on point. *See* Exhibit C hereto. In that case, plaintiffs alleged that Liberty National Insurance Company had engaged in a systematic practice of race discrimination in the pricing of industrial life insurance policies to African-Americans dating from the early 1940's until the present. In response, Liberty National filed a motion for judgment on the pleadings. Although the plaintiffs claimed continuing violations over a period of time up to the present, the Court dismissed the plaintiffs' claims because they were barred by the Rule of Repose. *Id.* at 1274-75. The Court explained that the rule's purpose is to prevent inquiry into claims that are obscured by the passage of time and the deaths of necessary witnesses. *Id.*; *see also May v. Washington National Insurance* Company, 1995 U.S. Dist. LEXIS 9071 (S.D. Ala. June 9, 1995) (Exhibit E hereto) (granting summary judgment based on the Rule of Repose to insurance company on fraud claims relating to insurance policy that the plaintiff had purchased more

than 20 years before the civil action was filed even though the plaintiffs had continued to pay premiums on the policy until shortly before the suit was filed); *Barrett*, 518 So.2d at 1257-1258 (holding that plaintiff could not contest the validity of a divorce decree where she relied on the judgment and made no effort to ascertain its validity for 26 years); *Davison v. Lowery*, 526 So.2d 2, 4 (Ala. 1988) (plaintiffs' claim for interest in land owned by the defendant was barred by the Rule of Repose where the final judgment and sale occurred more than 20 years before the action was filed). Accordingly, just like the defendant insurer in *Ellen Moore*, American General is entitled to a judgment on the pleadings.

*Walter Moore v. Liberty National* is another case where a lower court concluded the plaintiffs' claims, arising from allegedly racially discriminatory life insurance policies, were barred by the Rule of Repose. *See* Exhibit D hereto. In that case, plaintiff alleged that he purchased burial insurance from an insurer (Liberty National) at a price that was racially discriminatory. He purchased three policies in 1969 and one policy in 1973. Although the Court indicated that it was not convinced as to the race-based nature of the premiums, it simply assumed the fact of racially discriminatory premiums as true, and ruled that the Rule of Repose barred all of the plaintiffs' claims. *Id.* at 6, 12-13.

This Court should follow the two courts in Alabama that have addressed the exact issues in this case and grant American General's motion for judgment on the pleadings on all of Plaintiff's claims. It is undisputed from the pleadings that in the twenty years preceding the filing of the Plaintiff's complaint she did not purchase a policy with racially discriminatory premiums. Consequently, like the plaintiffs in the *Moore* cases, Alabama's strict twenty-year Rule of Repose

bars Plaintiff from maintaining her claims. Accordingly, Plaintiff's claims are time-barred, and this matter is due to be dismissed with prejudice.

**CONCLUSION**

For the foregoing reasons, American General respectfully requests this Court to grant its Motion for Judgment on the Pleadings on all of Plaintiff's claims.

Lee E. Bains, Jr. (BAI006)
Michael D. Mulvaney (MUL012)
J. Alan Baty (BAT029)
Attorneys for Defendant American General Life
And Accident Insurance Company

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, Alabama 35203-2602
(205) 254-1000

33A

33B

33C

108 F.Supp.2d 1266
(Cite as: 108 F.Supp.2d 1266)
C

**Page 1**

United States District Court,
N.D. Alabama,
Southern Division.

Ellen Gayle MOORE, Fannie McConnell, Spencer
Williams, and Anita Bowers, on
behalf of themselves and all others similarly situated,
Plaintiffs,
v.
LIBERTY NATIONAL INSURANCE COMPANY,
Defendant.

No. CV 99-BU-3262-S.

June 22, 2000.

African-American insureds brought variety of state
and federal claims against insurer, based on insurer's
alleged discriminatory rate-setting practices in its
provision of industrial life insurance. After insurer's
motion for judgment on the pleadings was granted on
the ground of untimeliness of the federal claims,
insureds moved for reconsideration and sought to
amend their complaint. The District Court, Buttram,
J., held that: (1) insureds' proposed amended
complaint met requirements of rule that fraud must be
pled with particularity; (2) Alabama rule of repose
barred all but one of insureds' state-law claims; (3)
Alabama's common-law rule of repose was not
applicable to federal civil rights claims; (4)
discrimination claims were not reverse preempted by
state insurance law under the McCarran-Ferguson
Act; and (5) court would not abstain from hearing the
case under *Burford* abstention doctrine.

Motion granted in part and denied in part.

West Headnotes

[1] Federal Civil Procedure ⬤═833
170Ak833

[1] Federal Civil Procedure ⬤═1838
170Ak1838

Though court is to take permissive approach to
granting amendment of complaint in lieu of dismissal,
its liberality is to be tempered by attentiveness to the
presence of undue delay, bad faith or dilatory motive
on part of movant, repeated failure to cure
deficiencies by amendments previously allowed,
undue prejudice to opposing party by virtue of
allowance of the amendment, or futility of

amendment.  Fed.Rules Civ.Proc.Rule 12, 28
U.S.C.A.

[2] Federal Courts ⬤═427
170Bk427

Equitable tolling principles to be applied in
determining whether the statute of limitations has run
are those provided under relevant state law, as
modified by countervailing policies of federal law.

[3] Limitation of Actions ⬤═104(1)
241k104(1)

Under Alabama law allowing plaintiff to allege that
his claims have been fraudulently concealed from him
to toll running of statute of limitations, statute of
limitations does not begin to run until plaintiff,
utilizing ordinary care, should have discovered the
fraudulent concealment.  Ala.Code 1975, § 6-2-3.

[4] Limitation of Actions ⬤═179(2)
241k179(2)

Under Alabama law allowing plaintiff to allege that
his claims have been fraudulently concealed from him
to toll running of statute of limitations, plaintiff must
plead with particularity the fraudulent concealment
and must state the time period within which he
discovered the concealment of his claim.  Ala.Code
1975, § 6-2-3.

[5] Federal Civil Procedure ⬤═636
170Ak636

Federal rule requiring allegations of fraud to be stated
with particularity applies not only to claims of fraud,
but also to allegations of fraudulent concealment of
claims.  Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

[6] Federal Civil Procedure ⬤═636
170Ak636

In the Eleventh Circuit, a complaint satisfying
requirements of federal rule that fraud must be pled
with particularity must plead four things: (1) the
precise statements or omissions made by defendant,
(2) time and place of each such statement and person
responsible for the statement, (3) content of statements
and manner in which they misled plaintiff, and (4)
what defendant obtained as a result of the fraud;  in
determining whether complaint satisfactorily alleges
each of these four items, Federal District Court must

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

108 F.Supp.2d 1266
(Cite as: 108 F.Supp.2d 1266)

attend to the prescription that plaintiff need only plead a short, plain statement of grounds on which he is entitled to relief. Fed.Rules Civ.Proc.Rules 8(a), 9(b), 28 U.S.C.A.

[7] Federal Civil Procedure ☞636
170Ak636

Insureds' proposed amended complaint against insurer met Eleventh Circuit's requirements for pleading fraud with particularity where complaint described the manner used to conceal sale of industrial insurance policies at different rates to African-Americans than to whites, relevant time period of the statements that were made was identified as time at which policies were purchased, insurer was explicitly credited with authoring the misleading language used to characterize its allegedly race-biased rates, insureds made clear that the misleading rate labeling disguised from them the racially discriminatory nature of the rates, and insureds indicated that insurer avoided litigation by describing rates to be received by African-Americans as "standard," and insureds alleged relevant time frame for the discovery of the fraudulent concealment that brought them over hurdle interposed by the statute of limitations. Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

[8] Limitation of Actions ☞165
241k165

Under Alabama law, the "rule of repose" is a judicially-created doctrine that provides the outer limits of time within which action may be maintained, regardless of whether that action is barred by statute of limitations.

[9] Limitation of Actions ☞165
241k165

Under Alabama law, while a statute of limitations is a procedural device that sets forth time period within which action is deemed to have accrued and that is capable of being waived or tolled, a rule of repose is substantive doctrine of the State, eliminating a cause of action, irrespective of its date of accrual.

[10] Limitation of Actions ☞165
241k165

Under Alabama law, application of the rule of repose has only one element, which is the passage of 20 years time from moment that actions giving rise to claim occurred, and if that time has elapsed, no claim

can be pursued.

[11] Limitation of Actions ☞58(1)
241k58(1)

Under Alabama law, rule of repose barred insureds' state-law claims, which alleged a systematic, institutional practice of race discrimination in insurer's provision of industrial life insurance to African-Americans, where events giving rise to those claims occurred more than 20 years in the past.

[12] Federal Courts ☞425
170Bk425

Alabama's common-law rule of repose was not applicable to federal civil rights claims brought by African-American insureds against insurer that allegedly practiced discriminatory rate-setting for its industrial life insurance policies. 42 U.S.C.A. §§ 1981, 1982.

[13] Civil Rights ☞210
78k210

[13] Insurance ☞3566
217k3566

Even assuming that doctrine of laches imposed by Alabama law was applicable to federal claims generally, doctrine would still not bar federal claims brought by African-American insureds alleging discrimination by insurer, where insureds alleged facts demonstrating that any delay by them in filing their claims was excusable.

[14] Insurance ☞1103
217k1103

[14] States ☞18.41
360k18.41

Discrimination claims brought by African-American insureds, alleging that insurer set discriminatory rates for its industrial life insurance policies, were not reverse preempted by state insurance law under the McCarran-Ferguson Act, where claims did not conflict with or frustrate Alabama's scheme of insurance regulation, but rather, the application of the civil rights laws merely bolstered Alabama's statutory anti-discrimination policy. McCarran- Ferguson Act, § 2(b), 15 U.S.C.A. § 1012(b); 42 U.S.C.A. §§ 1981 , 1982; Ala.Code 1975, § 27-12-11.

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

108 F.Supp.2d 1266
(Cite as: 108 F.Supp.2d 1266)

[15] Federal Courts ⬥41
170Bk41

Federal district court should be hesitant to apply
doctrine of *Burford* abstention to a case, as it is an
extraordinary and narrow exception to the duty of a
district court to adjudicate a controversy properly
before it and may be invoked only in those exceptional
circumstances in which surrendering jurisdiction
would clearly serve important countervailing interest.

[16] Federal Courts ⬥48
170Bk48

Federal district court would not apply the    *Burford*
abstention doctrine to case involving African-
American's claims that insurer engaged in
discriminatory rate setting where any relief potentially
ordered by federal court would not be entangled in a
skein of state law that would have to be untangled
before the federal case could proceed, and federal
court, prior to determining whether insurer's rate-
setting practices violated federal civil rights laws, did
not have to examine their relation to state law, and
federal action did not upset any state administrative
efforts to provide uniform insurance scheme.

*1268 Herman A. Watson, Rebekah Keith, Watson,
Jimmerson, PC, Huntsville, John J. Stoia, Jr.,
Timothy G. Blood, Susan Collyer, Andrew W.
Hutton, Thomas R. Merrick, Milberg, Weiss,
Bershad, Hynes & Lerach, LLP, San Diego, CA, Joe
R. Whatley, Jr., Charlene P. Cullen, Whatley &
Drake, LLC, Birmingham, W. Christian Hoyer,
Christa Collins, James, Hoyer, Newcomer, Forizs &
Smiljanich, PA, Tampa, FL, Ron Parry, Arnzen,
Parry & Wentz, PSC, Covington, KY, Andrew S.
Friedman, H. Sullivan Bunch, Signal *1269 Mountan,
TN Office, Bonnett, Fairbourn, Friedman & Balint
PC, Phoenix, AX, for Plaintiffs.

William J. Baxley, William C. Barclift, Baxley,
Dillard, Dauphin & McKnight, James Walker May,
Michael R. Pennington, Bradley, Arant, Rose &
White, Birmingham, Floyd D. Gaines, Gaines &
Davis LLC, Birmingham, for Defendants.

Memorandum Opinion

BUTTRAM, District Judge.

Now pending is a motion to alter or amend the
judgment of the Court and for leave to file an
amended complaint filed by Ellen Gayle Moore
("Moore"), Fannie McConnell ("McConnell"),

Spencer Williams ("Williams"), and Anita Bowers
("Bowers") on April 24, 2000. In that motion, the
Plaintiffs seek to have this Court (1) permit them to
amend their complaint in order that they may
surmount any challenge by Liberty National Insurance
Company ("Liberty National") to their claims
grounded in the statute of limitations and (2) reinstate
their action by amending its earlier order dismissing
their section 1981 claims as time-barred and
dismissing their remaining state law claims for lack of
original jurisdiction. Liberty National responds that
this Court should disallow the Plaintiffs an amended
complaint and that it should not depart from its earlier
order dismissing the action.

Background

Moore, McConnell, Williams and Bowers filed their
initial complaint on, 1999, alleging a systematic,
institutional practice of race discrimination in the
provision of industrial life insurance to African-
Americans, lasting from the early 1940's into the
present. This ongoing practice, attributed to Liberty
National and its predecessor, subsidiary, or acquired
companies, formed the foundation of the Plaintiffs'
complaint, supporting claims under the section 1 of
the Civil Rights Act of 1866 prohibiting
discrimination in contractual relations, most recently
amended by the Civil Rights Act of 1991, and
codified at 42 U.S.C. § 1981, and a host of state law
claims, brought only on the named Plaintiffs' behalf,
but on behalf of a nationwide class of African-
American purchasers of Liberty National's industrial
insurance products. Liberty national responded to the
complaint by filing a motion for more definite
statement on January 3, 2000; the motion was denied
by the Court on the following day. On the 14th of
January, 2000, the earlier motion of Liberty national
was succeeded by a motion to dismiss the Plaintiffs'
complaint. The Court denied the second- pre-answer
motion, stating that the matters raised in it should
have accompanied the earlier motion for more definite
statement. An answer was filed by Liberty National
on January 27, 2000, contemporaneous with a motion
for judgment on the pleadings that reiterated the
grounds for dismissal contained in the motion to
dismiss. The motion was granted by the Court, which
determined that the Plaintiffs had failed to overcome a
timeliness bar posed by Alabama's two year statute of
limitations to their federal section 1981 claims. The
section 1981 claims were dismissed, with prejudice,
and the state-law claims were dismissed, without
prejudice for the Plaintiffs to proceed in state court.

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

Page 4
108 F.Supp.2d 1266
(Cite as: 108 F.Supp.2d 1266, *12_.)

Hoping to revive their case in federal court, the Plaintiffs moved for reconsideration of the motion for judgment on the pleadings and for the opportunity to file an amended complaint. The amended complaint that the Plaintiffs propose to file in place of the original complaint purports to repair the pleading deficiencies that caused the Court to earlier dismiss the action, first, by adding allegations tending to demonstrate that the Plaintiffs had no knowledge of the racially discriminatory practices of Liberty National until shortly prior to the filing of this action and second, by adding to their complaint another theory of recovery under the provisions against discrimination in the maintenance of property under section 1 of the Civil Rights Act of 1866, as codified at 42 U.S.C. § 1982.

*1270 In response to letters requesting oral argument, the Court held a hearing on June 20, 2000, to hear argument on the matters raised by the parties. That argument was informative, clarifying many questions of concern to the Court.

Much of the proposed amended complaint is unchanged from the original complaint; factual allegations, both broad and particular, remain as they were in the prior complaint. This being so, the Court need not recount many of those allegations in detail here, as they are canvassed in its earlier order dismissing this action. Rather, the Court confines its account of the allegations expressed in the proposed amended complaint to the general claims and their history.

As a putative class action, this case is brought by Moore, McConnell, Williams, and Bowers on behalf of all African-Americans who purchased industrial life insurance policies from Liberty National or any of its predecessor, subsidiary or acquired companies. [FN1] According to the Plaintiffs, for nearly sixty years, Liberty National sold to African-Americans, including themselves, industrial life insurance in which the proportion of premiums to cash value and benefits was greater than the proportion for similarly situated white individuals — that is, the premiums on each industrial life insurance policy sold to an African-American were realized in a lower cash value or benefit amount than would have been the case were the same premiums paid by a white individual. The sale of these allegedly discriminatory premiums was accomplished through the use of debit routes, territories assigned to agents of Liberty National who would collect premiums and encourage the purchase of more discriminatorily-priced insurance products.

FN1. The term "industrial life insurance" is commonly applied to small insurance policies purchased mainly by working-class individuals so that upon their deaths a funeral can be afforded by their relatives. "Industrial Life Insurance is a life insurance product with relatively low face value which is typically, although not always, less than $ 20,000, and premium payments which are intentionally designed to appear to the policy holder to be modest premiums." Plaintiffs' First Amended Class Action Complaint at ¶ 9. As employed by the Plaintiffs, the term "industrial life insurance" has a broader reach than it does in common usage, covering, in addition to burial insurance, any life insurance and health and accident insurance, the value of which was calculated, at least in part, on the basis of race.

Central to the Plaintiffs' motion for reconsideration is an account contained in the proposed amended complaint attempting to explain why the Plaintiffs, and allegedly all purported class members, were unaware of the Defendant's purportedly discriminatory rate setting policies. The Plaintiffs assert that, while the Defendant calculated policy rates based upon whether a purchaser of insurance was African-American or white, it would intentionally disguise the basis of its rate-setting through the use of neutral-seeming descriptions of those rates: Liberty national employed the term "standard rates" to refer to insurance rates applicable to African-Americans and the term "premium rates" to refer to insurance rates available only to white individuals. Thus, an African-American, when sold an insurance policy, would be told that the proportion of premiums to benefits in the policy was determined according to the "standard" rate, rather than that her insurance rates were tied to her race. In addition, Liberty National allegedly encouraged its agents to sell discriminatory policies to African-Americans, first, by instructing those agents not to reveal to African-American customers that they were charged higher rates than whites and second, by tying commissions to the type and amount of insurance sold. Because a revelation that rates varied on the basis of race would decrease an agent's African-American customers, Plaintiffs allege, each agent had a disincentive to reveal that the pricing of the policies was discriminatory. Finally, the Plaintiffs aver that Liberty National, after ceasing to make explicit, race-based *1271 distinctions among individuals in setting policy rates, nonetheless continued to sell racially-discriminatory policies by including in the calculation of policy rates factors often directly correlated with race, such as

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

108 F.Supp.2d 1266
(Cite as: 108 F.Supp.2d 1266, *1471)

employment in certain occupations or residence in "undesirable" neighborhoods. Plaintiffs claim that they did not learn of these practices of Liberty National until shortly before the filing of this action and, in any case, less than two years before the action was filed, though they do not specify a particular date on which each named Plaintiff discovered the allegedly discriminatory manner in which insurance rates were set.

Contentions & Analysis

Liberty National first contends that the Court should not permit the proposed amendment to the Plaintiffs' complaint because, even if amendment is permitted, the claims contained in the amended complaint would still run afoul of the statute of limitations. Regarding its argument that the statute of limitations would act as a bar, even to the proposed amended complaint, Liberty National contends, one, that nothing in the proposed amended complaint changes the date on which the Plaintiffs' section 1981 claims accrued and that the addition of the section 1982 claims to their case does not fix the Plaintiffs' timeliness problem because the Plaintiffs' claims under section 1982 accrued at the same time as the section 1981 claims. Next, Liberty National contends, nothing in the proposed amended complaint requires the Court to revisit its determination that the Plaintiffs' federal law claims arise from a continuing violation allowing them to avoid the statute of limitations bar. Liberty National argues, three, that because, in their proposed amended complaint, the Plaintiffs fail to adequately plead fraudulent concealment in compliance with Federal Rule of Civil Procedure 9(b), the Plaintiffs are not entitled to argue that their claims were tolled until recently discovered.

The remaining arguments against amendment are drawn from Liberty National's motion for judgment on the pleadings, incorporated by reference into Liberty National's opposition to the Plaintiffs' motion for reconsideration. Only four of the arguments in that motion have particular relevance to the issue of whether amendment would be futile, defeating reinstatement of the Plaintiffs' case. The remainder of Liberty National's arguments are not directed at eradicating all of the Plaintiffs' claims, only parts thereof, and, as such, have no direct bearing on the propriety of amendment and reinstatement of the Plaintiffs' case. In the briefs filed in support of its motion for judgment on the pleadings, Liberty National argues that the Plaintiffs' claims, first, are barred under the Alabama common law rule of repose

and, second, are barred by the equitable doctrine of laches. Third, Liberty National asserts that the McCarran-Ferguson Act, 15 U.S.C. § 1012(b), which limits the application of federal law to certain state regulations of insurance, prohibits the Plaintiffs' section 1981 and 1982 claims. In its fourth argument against permitting amendment drawn from the motion to dismiss, Liberty National argues that this Court should abstain from deciding this case under the *Burford* abstention doctrine.

While the remaining arguments of Liberty National do not bear on the propriety of amendment, they are determinative of what claims remain in this action. These arguments are, first, that all claims of the Plaintiffs related to the concealment of the cash value of policies of insurance should be dismissed; second, that all claims based upon the discontinuance of the debit route system are due to be dismissed; third, that all claims involving burial insurance are barred by *res judicata* and release; fourth, that all claims involving cancer insurance are barred by *res judicata* and release; fifth, that the Plaintiffs' state law claim for money had and received is non-cognizable and runs afoul of the statute of limitations; sixth, that Plaintiffs' are incapable of stating a basis for declaratory or injunctive *1272 relief; seventh, that the Plaintiffs' claims for unjust enrichment are barred by the existence of contracts between them and Liberty National; eighth, that the Plaintiffs' tort claims of negligent hiring, supervision and retention by Liberty National of its agents and employees are not maintainable and barred by the statute of limitations; ninth, that the Plaintiffs' claims of breach of contract fail as a matter of law; and tenth, that the Plaintiffs' claims of breach of fiduciary duty are barred by the statute of limitations.

The argument on the motion for reconsideration has focused on the viability of the federal claims, both on paper and in the June 20, 2000, hearing. Further, arguments against maintenance of the state-law claims need not be addressed unless the Plaintiffs are entitled to proceed on their proposed amended complaint. It is, therefore, to Liberty National's arguments for disallowing amendment of the complaint that the Court first turns.

WHETHER THE PLAINTIFFS CAN AMEND THEIR COMPLAINT.

In *Bank v. Pitt*, 928 F.2d 1108, 1111 (11th Cir.1991), the Eleventh Circuit Court of Appeals stated that, in response to a motion to dismiss or for judgment on the

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

103 F.Supp.2d 1266
(Cite as: 108 F.Supp.2d 1266, *1272)

pleadings under Federal Rule of Civil Procedure 12, "[w]here it appears a more carefully drafted complaint might state a claim upon which relief can be granted, we have held that a district court should give a plaintiff an opportunity to amend his complaint instead of dismissing it." See also *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1308 (11th Cir.1999). Unless a substantial reason exists to deny such a motion to amend, it should be freely granted. See *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir.1988). This is true not only when a plaintiff requests leave to amend her complaint in the face of a motion to dismiss, but also when a plaintiff moves the court for reconsideration of an earlier dismissal and the opportunity to amend her complaint in the wake of dismissal. *Id.* [FN2]

> FN2. Liberty National, in its oral argument, appeared to relinquish any contention that the Plaintiffs should be given the opportunity to amend their complaint if such amendment would not be futile. To the extent that Liberty National seeks to have this Court deny the Plaintiffs the opportunity to amend on the grounds that in amending, the Plaintiffs should not be permitted to raise new argument or present new theories of recovery, its argument is not well taken. Restricting reconsideration and amendment solely to those cases in which the arguments and theories contained in the original complaint are adequate to support a claim runs counter to the permissiveness with which this Court is to allow amendment in the face of dismissal. This memorandum opinion instead focuses only on the arguments given by Liberty National that permitting amendment in the instant case would be "futile."

[1] Though the court is to take a permissive approach to granting amendment of a complaint in lieu of dismissal, its liberality is to be tempered by attentiveness to the presence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment...." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). See *McKinley v. Kaplan*, 177 F.3d 1253, 1258 (11th Cir.1999). Liberty National asserts that, even were the Court to permit the Plaintiffs to file the proposed amended complaint attached to their motion, that amendment would be futile, as sufficient reasons remain for dismissal of the complaint. "'A proposed amendment is futile if the complaint, as amended, would be subject to dismissal.'" *Galindo v. ARI Mut. Ins. Co.*, 203 F.3d 771, 777 n. 10 (11th Cir.2000)

(quoting *Jefferson County School Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir.1999)). Therefore, as a matter preliminary to permitting amendment, the Court must examine the proposed amended complaint to determine whether, in spite of its revised allegations, *1273 it collapses under the weight of the same deficiencies extant in its predecessor.

As earlier noted, Liberty National offers five arguments in support of its position that any amendment of the complaint would be futile: that under the amended complaint (1) the federal (and state) claims would be barred by the statute of limitations; (2) the claims would be barred by the doctrine of repose; (3) the claims would be barred by the doctrine of laches; (4) the McCarren-Ferguson Act prohibits the section 1981 and 1982 claims of the Plaintiffs; and (5) *Burford* abstention bars this Court from considering the Plaintiffs' claims.

A. Statute of limitations.

Liberty National contends that even under the amended complaint, the statute of limitations continues to bar the Plaintiffs' claims. This is so, it argues, because each Plaintiff's claims accrued on the date that a policy was obtained by him or her and the claims are not subject to equitable tolling principles. The Plaintiffs counter that the actions of Liberty National upon which each of their claims under sections 1981 and 1982 are premised constitute a continuing violation of those statutes and as such, each of their claims continued to accrue each day from the date of the purchase of each policy up to the present. In addition, the Plaintiffs argue that even if their claims do not arise from continuing violations of sections 1981 and 1982 by Liberty National and each claim accrued at the time of the purchase of each policy, because of the fraudulent concealment of their claims by Liberty National, all of their claims were equitably tolled until their recent discovery.

[2] While it may be the case that a federal claims accrual rule would provide a basis for concluding that the Plaintiffs' federal claims did not accrue until their actual discovery, the Court need not and does not alter its conclusion that each of the Plaintiffs' claims came into existence at the moment when each policy of insurance was purchased in the fifties, sixties and seventies nor address for a second time the Plaintiffs' arguments attempting to convince this Court to revisit its conclusions concerning continuing violations. [FN3] This is so because the proposed amended

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

108 F.Supp.2d 1266
(Cite as: 108 F.Supp.2d 1266, *1273)

complaint contains allegations supporting the existence of fraudulent concealment by Liberty National of the Plaintiffs' claims, equitably tolling the statute of limitations under § 6-2-3 of the Alabama Code of 1975. [FN4]

> FN3. Even were the Court to accept the Plaintiffs' argument regarding the accrual rule, the original complaint did not plead facts that would have permitted the inference that the federal claims accrued within the limitations period.

> FN4. Equitable tolling principles to be applied in determining whether the statute of limitations has run are those provided under relevant state law, as modified by countervailing policies of federal law. *Johnson v. Railway Exp. Agency, Inc.*, 421 U.S. 454, 464-65, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).

[3][4] Section 6-2-3 of the Alabama Code of 1975 allows a plaintiff alleging that his claims have been fraudulently concealed from him to toll the running of the statute of limitations; "the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action." As such, the statute of limitations does not begin to run until the plaintiff, utilizing ordinary care, should have discovered the fraudulent concealment. *Lott v. Tarver*, 741 So.2d 394, 397 (Ala.1999). To have the benefit of section 6-2-3, however, the plaintiff must plead with particularity the fraudulent concealment and must state the time period within which he discovered the concealment of his claim.

[5][6] Federal Rule of Civil Procedure 9(b) requires allegations of fraud to be stated "with particularity." This requirement applies not only to claims of fraud, but also to allegations of fraudulent concealment of claims. *Summer v. Land & *1274 Leisure, Inc.*, 664 F.2d 965, 970 (5th Cir. Unit B 1981). In its earlier opinion, the Court quoted the opinion of the Eleventh Circuit Court of Appeals in *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, (11th Cir.1997), as explicating the pleading requirements contained in Rule 9(b). In that case, the Court of Appeals stated that a complaint satisfying the requirements of Rule 9(b) must plead four things: (1) the precise statements or omissions made by the defendant, (2) the time and place of each such statement and the person responsible for the statement, (3) the content of the statements and the manner in which they misled the plaintiff, and (4)

what the defendant obtained as a result of the fraud. *Id.* In determining whether a complaint satisfactorily alleges each of these four items, a district court must attend to Rule 8(a) prescription that the plaintiff need only plead a short, plain statement of the grounds on which he is entitled to relief. *Id.*

[7] The Plaintiffs' proposed amended complaint adequately meets all four of the Rule 9(b) factors required in this Circuit. The proposed complaint describes specifically the manner used to conceal the sale of industrial insurance polices at different rates to African-Americans than to whites under the rubric of "standard" and "premium" rates. The time period in which the statements are made is also demonstrable from the complaint as the time at which the insurance polices were purchased. Liberty National is explicitly credited with authoring the misleading language used to characterize its allegedly race-biased rates. The Plaintiffs make clear that the labeling of the rates paid by them as "standard" rates rather than "African-American" rates effectively disguised from them the racially discriminatory nature of those rates. Finally, the Plaintiffs have clearly indicated that the Defendant avoided litigation of the kind presently filed with this Court by describing the insurance rates to be received by African-Americans as "standard." In addition, the Plaintiffs have alleged a relevant time frame for the discovery of the fraudulent concealment that brings them over the hurdle interposed by the statute of limitations. [FN5]

> FN5. While it would have been useful for each of the Plaintiffs to state a particular date on which he or she discovered the existence of his or her claims, the allegation in the complaint that the fraudulent concealment was discovered on a date nearly incumbent with the filing of the action is sufficient to comply with the pleading requirements of Federal Rules of Civil Procedure 8 & 9.
> Further, the Court finds that the tolling principles alleged regarding their federal and state discrimination-type claims are inapplicable to the breach of contract claim arising from Liberty National's cessation of its weekly debit collection system. The cessation of this system would clearly be known to the Plaintiffs when it was ended. While there is no allegation as to when this system was dismantled by Liberty National, Liberty National's counsel admitted in the June 20, 2000 hearing that the debit route collection system was dismantled in 1995 or 1996. As such, the Plaintiffs will be ORDERED to amend their complaint to set forth such claim again, stating the date on which the debit collection system was dismantled, alleging such claim to escape bar by the statute of limitations.

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

108 F.Supp.2d 1266
(Cite as: 108 F.Supp.2d 1266, *1274)

Otherwise, such claim will be DISMISSED, with prejudice.

## B. Rule of repose.

[8][9][10][11] Under Alabama law, the rule of repose is a judicially-created doctrine that provides the outer limits of time within which an action may be maintained, regardless of whether that action is barred by the statute of limitations. See *Barrett v. Wedgeworth*, 518 So.2d 1256, 1257 (Ala.1987). [FN6] In this sense, Alabama's rule of repose is of a different kind than its various *1275 statutes of limitations: While a statute of limitations is a procedural device that sets forth the time period within which an action is deemed to have accrued and that is capable of being waived or tolled, a rule of repose is substantive doctrine of the State, eliminating a cause of action, irrespective of its date of accrual. See *May v. Illinois Nat. Ins. Co.*, 190 F.3d 1200, 1206 (11th Cir.1999); *Kaplan v. Shure Bros., Inc.*, 153 F.3d 413, 422 (7th Cir.1998) and *Weeks v. Remington Arms Co., Inc.*, 733 F.2d 1485, 1487 n. 2 (11th Cir.1984). The rule's purpose "is to prevent inquiry into claims, such as this, where the evidence is obscured by the passage of time and the deaths of necessary witnesses." *Barrett*, 518 So.2d at 1257. Application of the rule of repose has only one element — the passage of twenty years time from the moment that the actions giving rise to the claim occurred — and, if that time has elapsed, no claim can be pursued. See *Tierce v. Ellis*, 624 So.2d 553, 554 (Ala.1993). This rule clearly bars all of the Plaintiffs' state-law claims except the breach of contract claims based upon the termination of the debit routes, as the events giving rise to those claims occurred more than twenty years in the past. [FN7] Important for the revival of the Plaintiffs' section 1981 claims and the assertion of their section 1982 claims, however, is the issue of whether, like Alabama's statute of limitations, Alabama's judicially-created rule of repose is applicable to those federal claims.

FN6. The Court is aware of two senses of the term "rule of repose." The first is applicable to all statutes that work to time-bar an action, including statutes of limitations. Cf. *Board of Regents of University of State of N. Y. v. Tomanio*, 446 U.S. 478, 490, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). The second sense refers only to rules that cut off all claims accruing outside of a certain time period, regardless of whether a statute of limitations bar exists. It is this second sense of a rule of repose to which the discussion of the Court pertains.

FN7. As such, those claims will be DISMISSED, with prejudice.

[12] The Court concludes that Alabama's common-law rule of repose is not applicable to the federal law claims of the Plaintiffs. *Johnson v. Railway Exp. Agency, Inc.*, 421 U.S. at 462, 95 S.Ct. 1716, as later amended by *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), and *Owens v. Okure*, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989), stated that the rule that the state statute of limitations for general or residual personal injury tort claims is applicable to claims brought pursuant to the federal civil rights acts, was grounded on the premise that section 1981 lacks a statute of limitations, an essential feature of any right of action, federal or state. By contrast, blanket repose rules barring all federal claims after a period of time has passed do not exist to bar federal actions; such rules appear sparingly among federal statutes. Failure to create a rule of repose concerning a particular statute is not an invitation to apply a state law rule of repose in its absence, as such rules do not form a regular feature of the landscape in the prosecution of federal rights. [FN8]

FN8. Liberty National has not shown that a rule of repose such as that existing in the State of Alabama exists in a majority of states. The Court is of the opinion that Alabama and its citizens should not be able to opt-out of federal claims from which other States and their citizens cannot opt-out merely because Alabama has put in place a rule terminating all state-law claims after a certain number of years.

## C. Doctrine of laches.

[13] The defendant next asserts that the state-law doctrine of laches bars the Plaintiffs' federal and state law claims. Assuming that the doctrine of laches imposed by state law is applicable to the federal claims generally, the doctrine would still not bar those claims, as the Plaintiffs have alleged facts demonstrating that any delay by them in filing their claims was excusable. See *Ex parte Grubbs*, 542 So.2d 927, 929 (Ala.1989) (stating that to show undue delay, it must be the case that the plaintiff "delayed in asserting his right or claim, that his delay was [inexcusable], and that his delay caused the [defendant] undue prejudice").

## D. McCarran-Ferguson Act.

The Defendant next argues that the McCarran-

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

108 F.Supp.2d 1266
(Cite as: 108 F.Supp.2d 1266, *1275)

Ferguson Act bars the type of section 1981 and section 1982 claims at issue in this suit. Section 2 of the McCarran- *1276 Feguson Act provides that "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance. ..." 15 U.S.C. § 1012(b). "The McCarran-Ferguson Act thus precludes application of a federal statute in face of state law 'enacted ... for the purpose of regulating the business of insurance,' if the federal measure does not 'specifically relat[e] to the business of insurance,' and would 'invalidate, impair, or supersede' the State's law." *Humana Inc. v. Forsyth,* 525 U.S. 299, 307, 119 S.Ct. 710, 142 L.Ed.2d 753 (1999). See *BancOklahoma Mortg. Corp. v. Capital Title Co., Inc.,* 194 F.3d 1089, 1098 (10th Cir.1999) ("the Act bars the application of a federal statute if (1) the federal statute does not specifically relate to the business of insurance; (2) a state statute has been enacted for the purpose of regulating the business of insurance; and (3) the federal statute would invalidate, impair, or supersede the state statute"). There is no question here that neither section 1981 nor section 1982 of Title 28 specifically relates to the "business of insurance," as considered by the Act. See *United States Dept. of Treasury v. Fabe,* 508 U.S. 491, 497, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993), and *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982). Further, Liberty National contends, Alabama has enacted a statute related to the business of insurance that proscribes what it terms "unfair discrimination" in the provision of such insurance:

(a) No person shall make or permit any unfair discrimination between individuals of the same class and equal expectation of life in the rates charged for any contract of life insurance or of life annuity, or in the dividends or other benefits payable thereon or in any other of the terms and conditions of such contract.

(b) No person shall make or permit any unfair discrimination between amount of premium, policy fees or rates charged for any policy or contract of disability insurance, or in the benefits payable thereunder, or in any of the terms or conditions of such contract or in any other manner whatever. Ala. Code § 27-12-11.

[14] Therefore, the relevant question before this Court is whether the section 1981 and 1982 claims that the Plaintiffs seek to bring would "invalidate, impair, or supersede" the State statute. Interpreting what the Act meant by "invalidate, impair, or supersede", the Supreme Court, in *Forsyth,* held that "[t]he following formulation seems to us to capture that meaning and to construe, most sensibly, the text of § 2(b): *When federal law does not directly conflict with state regulation, and when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime, the McCarran-Ferguson Act does not preclude its application.* " 525 U.S. at 310, 119 S.Ct. 710 (emphasis added). This Court concludes that the type of discrimination claims brought by the Plaintiffs in this action do not conflict with or frustrate Alabama's scheme of insurance regulation. Rather, the application of the civil rights laws in this context merely bolsters the State's anti-discrimination laws, set forth in § 27- 12-11 of the Alabama Code of 1975. See also *Mackey v. Nationwide Ins. Companies,* 724 F.2d 419, 421 (4th Cir.1984). As such, the Plaintiffs claims are not reverse preempted by state insurance law under the McCarran-Ferguson Act.

E. *Burford* abstention.

[15] Liberty National finally asserts that the federal claims should be dismissed under the *Burford* abstention doctrine. In *Boyes v. Shell Oil Products Co.,* 199 F.3d 1260, 1265 (11th Cir.2000), the Eleventh Circuit Court of Appeals provided the following explanation of *Burford* abstention:

The decision that gave Burford abstention its name is *Burford v. Sun Oil Co.,* *1277 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). In a later case, the Supreme Court summarized Burford abstention as follows:

Where timely and adequate state-court review is available, a federal court sitting in equity may decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (citations and internal quotations omitted). The purpose of Burford abstention is to "protect [ ] complex state administrative processes from undue federal interference. ..." *Id.* at 362, 109 S.Ct. 2506.

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

108 F.Supp.2d 1266
(Cite as: 108 F.Supp.2d 1266, *1271)

However, a district court should be hesitant to apply the doctrine of *Burford* abstention to a case, as it is "'an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it' and may be invoked only in those 'exceptional circumstances' in which surrendering jurisdiction 'would clearly serve an important countervailing interest.'" *International College of Surgeons v. City of Chicago*, 153 F.3d 356, 360 (7th Cir.1998), *on remand from City of Chicago v. International College of Surgeons*, 522 U.S. 156, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997). The central concern of *Burford* abstention is to prevent federal courts "from deciding unsettled questions of state law that relate to a complex state regulatory scheme." *Id.* at 361.

[16] Here abstention is not appropriate. First, any relief potentially ordered by this Court would not be "'in any way entangled in a skein of state law that must be untangled before the federal case can proceed,'" *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. at 361, 109 S.Ct. 2506 (quoting *McNeese v. Board of Ed. for Community Unit School Dist. 187*, 373 U.S. 668, 674, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963)). The Court, prior to determining whether Liberty National's rate-setting practices violated sections 1981 and 1982 of Title 28, need not examine their relation to state law. Nor would federal action in this case upset State administrative efforts to provide a uniform scheme of the provision of insurance. See *id.* There is no state administrative action being challenged in the case, but rather the alleged decision of the Defendant in this action to price its insurance products in a discriminatory fashion.

Conclusion

This Court finds that amendment of the complaint by the Plaintiffs would not be futile, not withstanding Defendant's challenge at the present stage of this litigation. Accordingly, the Court will GRANT the motion to alter or amend the judgment and to permit amendment of the complaint to state claims under sections 1981 and 1982. Further, if the Plaintiffs can assert facts demonstrating that their breach of contract claims arising out of the discontinuance of the debit

route system for collecting premiums are timely, they may amend their complaint to allege such claims. Failure to appropriately re-plead the breach of contract claims will result in dismissal of those claims. Finally, upon reconsideration, the Court finds that the remaining claims of the Plaintiffs, while not barred by the statute of limitations, are barred by Alabama's rule of repose. As such, they are due to be DISMISSED, with prejudice.

If either party desires, the Court will enter a final judgment on the dismissed claims under Federal Rule of Civil Procedure 54(b). A party seeking the entry of *1278 final judgment on those claims shall file a motion to that effect with the Court on or before July 3, 2000.

Order

In accordance with a memorandum opinion filed contemporaneously herewith, the motion to alter or amend the judgment of the Court and for leave to file an amended complaint filed by Ellen Gayle Moore ("Moore"), Fannie McConnell ("McConnell"), Spencer Williams ("Williams"), and Anita Bowers ("Bowers") on April 24, 2000, is GRANTED, in part and DENIED, in part. The Plaintiffs are hereby ORDERED, on or before June 8, 2000, to file an amended complaint in this action, setting forth their claims under 28 U.S.C. §§ 1981 & 1982. Also, if the claims are timely, the Plaintiffs shall set forth in the amended complaint any state-law claims for breach of contract related to the discontinuance of the debit route collection system. However, because the Plaintiffs' remaining state-law claims are barred by Alabama's common-law rule of repose, those claims are DISMISSED, with prejudice, and without opportunity to amend, as any attempt at amendment would be futile.

If either party so desires, the Court will enter a final judgment under Federal Rule of Civil Procedure 54(b) on those claims dismissed with prejudice. A party seeking the entry of final judgment on those claims shall file a motion to that effect with the Court on or before June 15, 2000.

END OF DOCUMENT

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

33D

IN THE CIRCUIT COURT OF DALLAS COUNTY, ALABAMA

WALTER MOORE and GRACE )
MOORE, )
)
    Plaintiffs, )
)
v. )                    CIVIL ACTION NO. CV-00-305
)
LIBERTY NATIONAL LIFE )
INSURANCE COMPANY, et al., )
)
    Defendants. )

## MEMORANDUM OPINION, ORDER, AND FINAL JUDGMENT

This matter coming on to be heard on defendant Liberty National Life Insurance Company's Consolidated Motion to Dismiss, or in the Alternative, for Summary Judgment; the Court having considered all pleadings, motions, affidavits, briefs, and evidentiary submissions filed by the respective parties; and the Court having heard extensive oral argument on said motion at a hearing in open court on January 10, 2001, the Court hereby issues its decision, makes the following Findings of Fact and Conclusions of Law, and Orders as follows:

1. Plaintiffs commenced this action on September 20, 2000 by filing a complaint and later a First Amended Complaint, alleging, inter alia, various tort claims, contract claims, and statutory violations based upon allegations that Liberty National (through its former Service Insurance Company division) sold

certain burial insurance policies to plaintiffs which, allegedly unknown to plaintiffs, were unfairly designed, economically unbeneficial, and priced differently according to the race of the insured. Specifically, plaintiffs purchased three policies of merchandise burial insurance in 1969, and one policy of merchandise burial insurance in 1973. Though the Complaint includes counts for both fraud and suppression, counsel for plaintiffs acknowledged at the January 10 hearing that the claims at issue stem from alleged non-disclosures as opposed to any affirmative oral representations by sales agents. No federal civil rights claims are asserted, and plaintiffs expressly disclaim any reliance whatsoever upon any provision of federal law. Moreover, the complaint does not allege that Liberty National priced any insurance sold within the last 20 years on a race-distinct basis.

2.    In response to the Complaint and Amended Complaint, on December 4, 2000 Liberty National filed its Consolidated Motion to Dismiss, or in the Alternative, for Summary Judgment. This Court has treated and is treating this motion as a summary judgment motion, since the motion was supported by substantial evidentiary materials, the policies and applications at issue, an affidavit from Liberty National's president, a narrative summary of undisputed facts, and extensive briefing. Although the facts of these transactions were clearly within the knowledge of the

2

plaintiffs themselves, plaintiffs offered no factual affidavits or other evidentiary materials to contradict the factual submissions of Liberty National. Instead, at the hearing, plaintiffs merely relied upon their pleadings and a motion to strike Liberty National's evidentiary submissions. Compare Booker v. United American Life Ins. Co., 700 So. 2d 1333 (Ala. 1997) (once party moves for summary judgment, nonmoving party may not rest on pleadings but must come forward with substantial evidence to defeat the motion). Well after the duly noticed hearing on the motion for summary judgment, plaintiff's counsel filed a belated affidavit purporting to invoke Rule 56(f) in conclusory fashion. The Court finds that that affidavit is not only untimely, but is too vague to satisfy Rule 56(f), and utterly fails to identify any discovery which could conceivably alter the facts material to this motion or this Court's findings and conclusions herein.

3.    It is undisputed that the 1969 policies were paid up in 1981, and the 1973 policy was paid up in 1983, and that no premiums have been paid on any of the policies by any of the plaintiffs since that time.

4.    The policies at issue are in evidence, as are the applications for those policies. None of the applications contains any questions as to the race of the applicant. However, each

3

application contains a box entitled "PREMIUM" with two separate boxes, one of which is to be checked as part of the application process. On each of the relevant applications, the box labeled "S" is checked, and the box labeled "P" is not checked. It is undisputed that at the time the policies at issue were sold, Liberty National had two separate premium categories for policies of this type - "Standard" premium rates and "Preferred" premium rates. Plaintiffs do not allege in their complaints (and have submitted no affidavits claiming) that either of them ever inquired as to the difference between the two premium categories, even though the applications were plainly sufficient to put any reasonable person on notice that two premium categories existed.

5.     Liberty National has submitted to this Court as part of its evidentiary submissions its rate books applicable to each of the policies in question. These rate books plainly show that the "Standard" and "Preferred" premium categories were based upon occupational and socio-economic criteria applicable to the head of the household of the insured. The "Standard" rates were the higher of the two premium categories.

6.     The plaintiffs' policies submitted to the Court clearly specify the premium installments required under the

4

policies, the period of time for which premiums would be payable, and the benefits provided by each of the policies.

7.   It is clear from the face of the policies that the amount of premiums and the duration of premiums were "locked in" at the moment the policies were sold.  In other words, from the time the policies were purchased, plaintiffs were on notice of what the premium would be for each installment period, what the total premiums would be over the life of the policies, when each premium installment would be due, and what benefits were available under the policies.  The policies did not provide that the premium or premium period could be changed once the policy was issued.

8.   No plaintiff is alleged to have made any inquiry of Liberty National or any of its representatives at any time as to Liberty National's rate-making criteria, the difference between the "Premium" and "Standard" premium classifications, the reasons why the application contained two separate boxes labeled "P" and "S" under the heading "Premium", why the "S" box was checked on each plaintiff's application instead of the "P" box, or any other information regarding the factors which were utilized by Liberty National in determining which of the two premium categories was to be applied.

9.   This Court is not convinced that the policies purchased by plaintiffs were in fact priced on a race-distinct basis.   The evidence submitted by Liberty National in fact indicates without contradiction that the policies were priced based upon occupational, socio-economic, and similar factors pertaining to the head of the household.   Nevertheless, for purposes of Liberty National's motion and this Memorandum Opinion and Order, the Court will assume that the policies at issue were priced differently according to the race of the insured, as plaintiffs have alleged.   This renders moot any need for discovery as to that issue for purposes of the present motion.

10.   Liberty National has submitted to the Court abundant evidence of public mortality studies, United States Census statistics, and other publicly available evidentiary materials clearly showing that African-Americans, as a group, have shorter average life expectancies than non-African-Americans in the United States.   This fact is troubling, just as the differences in life expectancy between men and women are troubling, but it remains a fact. Whatever the cause, shorter life expectancy for a particular group clearly equates to greater risk for the insurer, since the benefits of a life insurance policy will, on average, have to be paid out sooner for such groups than for groups with longer life expectancies.   Whatever the reasons for this difference in average

life expectancy - a multitude of societal, economic, and other factors may well play a role - the fact that there is an average life expectancy difference cannot seriously be disputed.

11. Liberty National has submitted to the Court uncontroverted evidence that plaintiffs and the public in general were on constructive notice of the widespread use by the insurance industry in general, and Liberty National in particular, of race-distinct mortality in the pricing of insurance products throughout the better part of the twentieth century. For example, Liberty National points out that Alabama Department of Insurance regulations required Liberty National's rate books to be filed with the Alabama Department of Insurance prior to 1977. The policies at issue here were sold in 1969 and 1973. Moreover, in a certified federal class action entitled *Battle v. Liberty National Life Insurance Company*, CV 70-H-752-S (now 70-J-752-S), filed in 1970 in the United States District Court for the Northern District of Alabama, one of the complaints in three consolidated and certified burial insurance class actions specifically alleged that Liberty National maintained racially distinct marketing structures throughout the time period at issue here; that Liberty National's Service Insurance Company division marketed insurance to black insureds, while Liberty National policies were marketed separately to white insureds. It is undisputed that each of the plaintiffs in

7

this case was a member of the certified burial insurance policyholder class in the Battle litigation.

12. In addition to the foregoing, Liberty National has shown without contradiction that the United States Congress conducted numerous public hearings over several years beginning in 1979 on the question of whether to ban the insurance industry's widespread use of race-distinct mortality in the pricing of insurance, but never chose to do so. Liberty National has also submitted abundant other information indicating that the insurance industry's use of race-distinct mortality throughout much of the twentieth century was public knowledge, including numerous newspaper and magazine articles, lawsuits, books, and other publications. Even more significant is the fact that Liberty National has produced evidence that race-distinct pricing of industrial burial insurance was actually mandated by the Alabama Department of insurance throughout the 1940's and 50's. These and the other evidentiary materials contained in the record are plainly sufficient to place both plaintiffs and the public at large on at least constructive notice of the use of race-distinct mortality to the extent it occurred. Certainly, there were sufficient facts available both in the transactions in question and in the public record to place plaintiffs and others on at least inquiry notice regarding the subject of race-distinct pricing and the use or

8

potential use of race-specific mortality statistics in setting premiums.

13. In light of the foregoing facts, the Court need not address any defense raised by Liberty National other than the doctrine of repose, for it is clearly dispositive of plaintiffs' claims. Although the doctrine of repose has its origins in the early common law, it remains a fundamental part of the law of Alabama, and provides that the period of 20 years is a complete bar to long-dormant claims. The rule of repose is not subject to tolling of any kind, except when there have been affirmative acts of a defendant explicitly and unambiguously acknowledging the existence and validity of the plaintiff's claim. Ex parte Grubbs, 542 So. 2d 927, 930-31 (Ala. 1989); Boshell v. Keith, 418 So. 2d 89, 91 (1982); Snodgrass v. Snodgrass, 176 Ala. 276, 280-81, 58 So. 201, 201-02 (1912). There is no evidence of any such affirmative acknowledgment by Liberty National to these plaintiffs.

14. The purpose of the doctrine of repose is to prevent defendants from having to defend, and the courts from having to adjudicate, claims that are too stale for facts to be ascertained with the degree of reliability which fundamental fairness and justice require. Plaintiffs' claims, which relate to four merchandise burial insurance policies sold approximately 30 years

9

ago, are therefore legally barred, because the First Amended Complaint on its face attempts to assert claims regarding alleged frauds and improprieties that occurred well beyond the period of repose. See, e.g., Grubbs, 542 So. 2d at 930.

15. Both the Alabama Supreme Court and federal courts in Alabama have held that the rule of repose operates to bar fraud claims just as it bars other types of claims. In Barrett v. Wedgeworth, 518 So. 2d 1256 (Ala. 1987), the ex-wife of a deceased man attempted to challenge the granting of letters of administration on the grounds that a divorce granted more than twenty-six years prior to the decedent's death was void due to fraud. The ex-wife claimed that the court did not have jurisdiction over her in the 1959 divorce proceedings because she was served by notification even though her then-husband knew where she was and fraudulently chose not to inform the court of her whereabouts. The Alabama Supreme Court, citing Snodgrass v. Snodgrass, 176 Ala. 276, 280-81, 58 So. 201, 202 (1912), held that the plaintiff's claim was barred by the rule of repose. The Barrett Court quoted Snodgrass, supra, as follows:

> As a matter of public policy, and for the repose of society, it has long been the settled policy of this state, of others, that antiquated demands will not be considered by the courts, and that, without regard to any statute of limitations, there must be a time beyond which human transactions will not be inquired into.... The consensus of opinion in the present day is that such presumption is conclusive, and the period of 20 years...

10

[is] a complete bar; and, as said in an early case, 'the presumption rests not only on the want of diligence in asserting rights, but on the higher ground that it is necessary to suppress frauds, to avoid long dormant claims, which, it has been said, have often more of cruelty than of justice in them, that it conduces to peace of society and the happiness of families, and relieves courts from the necessity of adjudicating rights so obscure by the lapse of time and the accidents of life that the attainment of truth and justice is next to impossible.'" (Citations omitted).

Barrett, 519 So. 2d at 1257.

16. In 1995, the United States District Court for the Southern District of Alabama applied the rule of repose to a fraud action in May v. Washington National Insurance Company, 1995 U.S. Dist. LEXIS 9071 (1995). In May, the plaintiff claimed that an agent for the defendant insurance company made certain misrepresentations regarding an insurance policy in 1963. The plaintiff further alleged that he relied on the misrepresentations in purchasing a policy from the defendant. The plaintiff filed a fraud action in 1994. The court held that the plaintiff's claims were barred by the rule of repose. The court stated that Alabama had recognized the rule of repose since 1858, and that the rule provided that an action not instituted for more than twenty years was absolutely barred. The court noted that the suit was based on fraudulent misrepresentations "which were allegedly made in 1963, and thus the right of action would have accrued in 1963." May, at page 5. Because more than twenty years had passed since the right

11

of action first existed, the action was deemed barred pursuant to the rule of repose. Id.

17. Race-based torts or civil rights claims are not exempt from the rule of repose. In Ex parte Grubbs, 542 So. 2d 927 (Ala. 1989), the Alabama Supreme Court denied relief on the grounds of repose to an African-American applicant for admission to the Alabama Bar who claimed that he was discriminated against because graduates of the University of Alabama School of Law, prior to August 31, 1965, were admitted to the Alabama Bar without being required to pass the bar exam, but prior to that time, as a matter of state law, African-Americans were not even allowed to attend the University of Alabama School of Law simply because of their race. Because the action was filed more than twenty years after it first could have been asserted, however, the Alabama Supreme Court found the plaintiffs' causes of action barred under the doctrine of repose.

18. In this case, plaintiffs purchased each of the policies identified in the First Amended Complaint more than twenty years ago. Consequently, their claims of fraud, breach of fiduciary duty, outrage, deceit, conversion, suppression, or any other alleged misconduct in the sale of the policies are clearly barred by the doctrine of repose, as are any and all claims

13

regarding allegedly "unfair" design or discriminatory sale or pricing of the policies.  Indeed, any doubt that claims such as those at issue here are barred under the doctrine of repose was recently laid to rest on virtually identical facts by the United States District Court for the Northern District of Alabama.  In a purported class action against Liberty National involving the same types of policies at issue here (including policies sold in the same time frame as those at issue here), the Honorable Dean Buttram held that all state law claims of fraud, suppression, unjust enrichment, and the like were absolutely barred under the doctrine of repose.  Ellen Gayle Moore v. Liberty National Life Insurance Co., 108 F. Supp. 2d 1266 (N.D. Ala. 2000).

19.  Although the Court recognizes that Judge Buttram's opinion recited above is not binding on this Court as to matters of state law, the Court finds Judge Buttram's opinion highly persuasive, and worthy of being followed here.  Moreover, the Court has reviewed the Complaint and Amended Complaint from the federal litigation in Judge Buttram's court, and is satisfied that the material allegations and state law causes of action in those federal complaints are substantially identical to those asserted here.

13

20.  In seeking to avoid application of the doctrine of repose despite the foregoing facts, plaintiffs claim that Liberty National was under an affirmative duty to disclose the use of race-distinct mortality in its pricing, and that each time Liberty National collected a premium from plaintiff which was allegedly based upon race-distinct pricing, Liberty National violated this duty.  However, the law in Alabama is clear: an insurer has no duty to disclose its rate-making methods or rate-making criteria in the absence of a specific inquiry by the customer.  See, e.g., State Farm Fire and Casualty Co. v. Owen, 729 So. 2d 834, 837 (Ala. 1998); Barnett v. Funding Plus of America, Inc., 740 So. 2d 1069, 1073 (Ala. 1999).  Cf. State Farm v. Slade, 747 So. 2d 293, 323 (Ala. 1999).  Consequently, plaintiffs' theory that the mere payment of premiums by plaintiffs pursuant to the original terms of the policies, which were "locked in" at the time of sale, somehow creates a new cause of action each time the premium is paid, or otherwise saves this case from the doctrine of repose, is to no avail.  An analogous theory was rejected in Home Ins. Co. v. Stuart-McCorkle, Inc., 285 So. 2d 468, 473 (1973) ("If the act of which the injury is the natural sequence is of itself a legal injury to plaintiff, a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, be the actual damage then apparent however slight, and the statute will operate to bar a recovery not only for present damages but for

14

damages developing subsequently and not actionable at the time of
the wrong done . . . .).

    21.  Plaintiffs also claim that the Alabama Insurance
Code's Trade Practices Law set forth in Ala. Code § 27-12-11 is
sufficient to create an affirmative duty to disclose Liberty
National's rate-making criteria each time plaintiffs paid a
premium.  This is true, plaintiffs say, because Alabama's Trade
Practices Law flatly prohibits the use of race-distinct pricing of
insurance.  As a matter of law, plaintiffs are wrong.  Ala. Code
§ 27-12-11 reads as follow:

> (a)  No person shall make or permit any *unfair
> discrimination* between individuals of the same class and
> *equal expectation of life* in the rates charged for any
> contract of life insurance or of life annuity, or in the
> dividends or other benefits payable thereon or in any
> other of the terms and conditions of such contract.

Ala. Code § 27-12-11 (emphasis supplied).  Thus, in order to prove
a violation of Ala. Code § 27-12-11 under the plain and unambiguous
language of the statute, plaintiffs would have to show not only
that Liberty National charged them higher rates on the basis of
race, but also that African Americans as a class have the same
average life expectancy as non-African-Americans.  Liberty National
has submitted abundant unrebutted evidence, including United States
Census statistics, publicly available actuarial and mortality
studies and other publicly available evidence clearly and
consistently demonstrating without contradiction that African-

15

Americans do not enjoy the same average life expectancy as non-African-Americans.    Whatever may be the reasons for this unfortunate but well-documented phenomenon and whether they are a product of differences in access to or utilization of healthcare or any number of other possible factors, average life expectancies are clearly beyond life insurance company's ability to increase or decrease.    In any event, the fact that there is a difference in average life expectancy by race precludes any conclusion that the charging of race-distinct premiums is a violation of Ala. Code § 27-12-11.[1]  The Supreme Court of Massachusetts reached a similar conclusion regarding sex-distinct premiums under that state's "unfair discrimination" statute in Telles v. Commissioner of Insurance, 410 Mass. 560, 574 N.E.2d 359 (Ma. 1991).

22.   For the foregoing reasons, this Court concludes that all of plaintiffs' claims are barred by Alabama's common law doctrine of repose.    Forcing the courts and litigants to speculatively reconstruct historical events this long after they

---

[1] The Court's discussion of Ala. Code § 27-12-11 herein is intended solely to address the issue of whether that statute created any duty to disclose.  The Court does not mean to imply or conclude that any private cause of action is available under Ala. Code § 27-12-11.  See, e.g., Farlow v. Union Central Life Ins. Co., 874 F.2d 791 (11th Cir. 1989); Allen v. State Farm Fire & Cas. Co., 59 F. Supp. 2d 1217 (S.D. Ala. 1999).  Cf. Dryden v. SunLife Assurance of Canada, 737 F. Supp. 1058, 1064 (S.D. Ind. 1989).  In fact, plaintiffs' counsel conceded at the January 10, 2001 hearing that there is no private cause of action for violation of Ala. Code § 27-12-11.

16

took place, with the uncertainties, inaccuracies, and faded memories that inevitably result from the attempt to do so after the passage of so much time, is precisely what the doctrine of repose is designed to prevent. While the Court acknowledges that the other grounds asserted by Liberty National could well be equally dispositive of this action, the Court expressly declines to rule upon these additional defenses and grounds for summary judgment asserted by Liberty National at this time. Instead, the Court reserves the right to revisit these additional defenses and grounds for summary judgment at a later time should it become necessary to do so.

WHEREFORE, the Court having considered the totality of the record, all submissions of the parties, all arguments presented at the hearing of the pending motion, and the totality of the facts and circumstances, it is hereby ORDERED, ADJUDGED AND DECREED that, there being no genuine dispute of material fact regarding the application of the doctrine of repose, as a matter of law Liberty National is entitled to and is hereby GRANTED summary judgment with respect to each and every count of the First Amended Complaint. This action is therefore dismissed in its entirety, with prejudice, costs taxed to plaintiffs. Plaintiffs' motion challenging Liberty National's evidentiary submission is OVERRULED.

17

DONE AND ORDERED this the 8th day of February,

2001.

_____
CIRCUIT JUDGE

18

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Defendant American General Life and Accident Insurance Company's Motion for Judgment on the Pleadings and Memorandum of Law in Support Thereof has been served upon the following counsel by placing same in the United States Mail, first class postage paid and addressed to:

David M. Cowan
Mann & Cowan, P.C.
Suite 601
2000B SouthBridge Parkway
Birmingham, AL 35209

Robert S.W. Given
BURR & FORMAN LLP
SouthTrust Tower, Suite 3100
420 20th Street North
Birmingham, AL 35203

on this the _5th_ day of _October_, 2001

OF COUNSEL

00711810.1